1  TERRY ROSS, CASB No. 58171
   terry.ross@kyl.com
2  AUDETTE PAUL MORALES, CASB No. 216631
   audette.morales@kyl.com
3  KEESAL, YOUNG & LOGAN
   A Professional Corporation
4  400 Oceangate, P.O. Box 1730
   Long Beach, California  90801-1730
5  Telephone:  (562) 436-2000
   Facsimile:  (562) 436-7416
6
   Attorneys for Defendants
7  WACHOVIA SECURITIES, LLC and MARK WIELAND

8  GILBERT R. SEROTA, No. 75305
   gserota@howardrice.com
9  HOWARD RICE NEMEROVSKI
        CANADY FALK & RABKIN
10 A Professional Corporation
   Three Embarcadero Center, 7th Floor
11 San Francisco, California  94111-4024
   Telephone:  (415) 434-1600
12 Facsimile:  (415) 217-5910

13 Attorneys for Defendants
   JOSEPH E. BARATTA and TBIG FINANCIAL
14 SERVICES, INC.

15

16              UNITED STATES DISTRICT COURT

17            NORTHERN DISTRICT OF CALIFORNIA

18                   SAN JOSE DIVISION

19

20 VIOLETTA ETTARE,                    )  Case No. C-07-04429-JW (PVT)
                                       )
21                    Plaintiff,       )
                                       )  **DEFENDANTS' JOINT NOTICE OF**
22        vs.                          )  **MOTION AND MOTION FOR LEAVE**
                                       )  **TO AMEND NOTICE OF REMOVAL;**
23 JOSEPH E. BARATTA, an individual,   )  **MEMORANDUM OF POINTS AND**
   TBIG FINANCIAL SERVICES, INC., form )  **AUTHORITIES IN SUPPORT**
24 of business unknown, WACHOVIA       )  **THEREOF**
   SECURITIES, LLC, a Delaware Limited )
25 Liability Company, MARK WIELAND, an )  **[F.R.C.P. 15(a); 28 U.S.C. § 1653]**
   individual, and DOES 1-25,          )
26                                     )  Date:  Monday, December 3, 2007
                      Defendants.      )  Time:  9:00 a.m.
27 _____  )  Place:  Courtroom 8, 4th Floor

28 ///

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE that on December 3, 2007, or at such other date,

3  time and place as may be set by this court, at 9:00 a.m., or as soon thereafter as the

4  parties may be heard, Defendants WACHOVIA SECURITIES, LLC, MARK WIELAND,

5  TBIG FINANCIAL SERVICES, INC., and JOSEPH E. BARATTA will move this Court,

6  at the United States Courthouse located at 280 S. First Street, San Jose, California

7  95113, Courtroom 8, 4th Floor, for leave to file an Amended Notice of Removal.

8         Defendants move this Court for an order under Rule 15(a) of the Federal

9  Rules of Civil Procedure and 28 U.S.C. § 1653 granting Defendants leave to file the

10  Amended Notice of Removal that is attached to this motion as Exhibit A.

11         This motion is based on this Notice of Motion and Motion, the accompany-

12  ing declarations of Joseph E. Baratta, Paul Waldman, and Kenneth Meister, the accom-

13  panying Memorandum of Points and Authorities, and the pleadings and papers on file in

14  this action.

15

16                                         Respectfully submitted,

17  DATED:  October 29, 2007            /s/ Terry Ross
                                        TERRY ROSS
18                                      AUDETTE PAUL MORALES
                                        KEESAL, YOUNG & LOGAN
19                                      Attorneys for Defendants
                                        WACHOVIA SECURITIES, LLC and
20                                      MARK WIELAND

21

22
    DATED:  October 29, 2007            /s/
23                                      GILBERT R. SEROTA
                                        HOWARD RICE NEMEROVSKI CANADY
24                                          FALK & RABKIN
                                        Attorneys for Defendants
25                                      JOSEPH E. BARATTA and TBIG
                                        FINANCIAL SERVICES, INC.
26

27

28

NOT./MOT. & MOT./LV./AMEND NOT./REMOVAL; MEMO./P'S & A'S IN SUPPORT THEREOF

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................ii

I.    INTRODUCTION ....................................................................................1

II.   STATEMENT OF ISSUES TO BE DECIDED .........................................2

III.  STATEMENT OF FACTS.........................................................................3

IV.   ARGUMENT .............................................................................................5

    A.    THE REMOVAL NOTICE'S ALLEGATIONS REGARDING WACHOVIA'S CITIZENSHIP CAN BE AMENDED. ...........................5

        1.    Defendants' Motion for Leave to Amend the Removal Notice is Timely Under 28 U.S.C. § 1653. .........................5

        2.    The Removal Notice's Allegations Regarding Wachovia's Citizenship are Merely "Defective" Allegations Requiring Clarification. ....................................6

        3.    This Court Can Consider Later Filed Declarations Which Clarify the Removal Notice's Defective Allegations Regarding Wachovia's Citizenship. ................8

    B.    TBIG HAD LEGAL CAPACITY TO JOIN IN DEFENDANT'S REMOVAL NOTICE BECAUSE REVOCATION DOES NOT TERMINATE A CORPORATION'S EXISTENCE.........................10

    C.    THE REINSTATEMENT OF TBIG'S CORPORATE STATUS IN NEVADA IS RETROACTIVE AND VALIDATES ITS JOINDER IN THE REMOVAL NOTICE. ....................................................................11

    D.    THIS COURT CAN CONSIDER BARATTA'S LATER FILED DECLARATIONS WHICH CLARIFIES ANY DOUBTS CONCERNING TBIG'S NEVADA CITIZENSHIP.......................12

V.    CONCLUSION.........................................................................................13

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

Barrow Development Co. v. Fulton Insurance Co.,
    418 F.2d 316 (9th Cir. 1969)....................................................................2, 5-7

C.T. Carden v. Arkoma Associates,
    494 U.S. 185 (1990)..........................................................................................9

Clipper Air Cargo Inc. v. Aviation Products Int'l, Inc.
    981 F. Supp. 956 (D.S.C. 1997)....................................................................10

Gaus v. Miles,
    980 F.2d 564 (9th Cir. 1992)...........................................................................8

Harmon v. Oki System,
    115 F.3d 477 (7th Cir. 1997)...................................................................7, 8, 12

Johnson v. Columbia Properties Anchorage, L.P.,
    437 F.3d 894 (9th Cir. 2006)...........................................................1, 6, 7, 10

Miller v. Grgurich,
    763 F.2d 372 (9th Cir. 1985)...........................................................................8

National Audubon Society v. Department of Water & Power of the City of L.A.,
    496 F. Supp. 499 (E.D. Cal. 1980)..................................................................8

Smiley v. Citibank (S.D.), N.A.,
    863 F. Supp. 1156 (C.D. Cal. 1993)...............................................................6

Stortek Corp. v. Air Transport Association of America,
    300 F.3d 1129 (9th Cir. 1986)........................................................................13

United Computer System, Inc. v. AT&T Corp.,
    298 F.3d 756 (9th Cir. 2002)..........................................................................10

Wild v. Subscription Plus, Inc.,
    292 F.3d 526 (7th Cir. 2002)..........................................................................10

Willingham v. Morgan,
    395 U.S. 402 (1969)..........................................................................................8

## FEDERAL STATUTES

28 U.S.C. § 1332...................................................................................................6

KYL_LB1117543

NOT./MOT. & MOT./LV./AMEND NOT./REMOVAL; MEMO./P'S & A'S IN SUPPORT THEREOF

28 U.S.C. § 1653.................................................................................1, 2, 5, 6, 8, 12

**STATE STATUTES**

2007 Nevada Laws Ch. 456 (S.B. 483)...........................................................11

Nevada Revised Statute § 78.180(5).........................................................2, 11

**MISCELLANEOUS**

2 SCHWARZER, TASHIMI & WAGSTUTTE, Federal Civil Procedure Before Trial
    § 2:1096 (2007)...........................................................................................8

16A WILLIAM M. FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS,
    § 3844 (2007)..............................................................................................10

61B AM. JUR. 2D *Pleading* § 806 (2007).......................................................5

KYL_LB1117543

NOT./MOT. & MOT./LV./AMEND NOT./REMOVAL; MEMO./P'S & A'S IN SUPPORT THEREOF

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

3      Defendants WACHOVIA SECURITIES, LLC ("Wachovia"), MARK

WIELAND ("Wieland"), TBIG FINANCIAL SERVICES, INC. ("TBIG") and JOSEPH E.

4

BARATTA ("Baratta") (collectively, "Defendants") hereby move this Court pursuant to

5

Rule 15(a) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1653 for leave to

6

amend Wachovia's and Wieland's Notice of Removal ("Removal Notice"), in which TBIG

7

and Baratta joined.  A copy of the Defendants' proposed Joint Amended Notice of

8

Removal is attached to this motion as Exhibit A.

9

10

**I.**

11

**INTRODUCTION**

12

On or about July 13, 2007, Plaintiff Dr. VIOLETTA ETTARE ("Plaintiff" or

13

"Dr. Ettare") filed a complaint against Defendants in the Santa Clara County Superior

14

Court.  On August 27, 2007, Defendants filed the Removal Notice removing Dr. Ettare's

15

state court action to this Court.  Dr. Ettare has moved to remand this action on the

16

following grounds:  (1) Wachovia failed to allege the citizenship of each of its members as

17

required by the Ninth Circuit's recent opinion in <u>Johnson v. Columbia Properties</u>

18

<u>Anchorage, L.P.</u>, 437 F.3d 894 (9th Cir. 2006); (2) TBIG did not have the legal capacity to

19

join in the Removal Notice; and (3) TBIG potentially has a principal place of business in

20

California.[1]  Based on these grounds, Dr. Ettare claims Defendants failed to meet their

21

burden of establishing complete diversity of citizenship of the parties and requests this

22

Court to remand this action to the Santa Clara County Superior Court.

23

The Removal Notice's failure to allege the citizenship of Wachovia's mem-

24

bers is curable under 28 U.S.C. § 1653.  The Removal Notice's allegations regarding

25

Wachovia's members' citizenship are merely defective; they set forth the proper

26

27      _____

[1] Plaintiff did not challenge the Removal Notice's allegations concerning Wieland's and

28      Baratta's citizenship.

1  statutory basis and legal theory for removal but failed to specify all the necessary facts

2  to support the removal. However, the facts necessary to support the removal existed at

3  both the time Dr. Ettare filed her complaint in the Santa Clara County Superior Court

4  and when the Removal Notice was filed, namely, that Dr. Ettare and each of Wachovia's

5  members are citizens of different states. To remand this case would prioritize form and

6  "legal flaw-picking" over the "orderly disposition of cases properly committed to federal

7  courts." See Barrow Dev. Co. v. Fulton Ins. Co., 418 F.2d 316, 318 (9th Cir. 1969).

8        Dr. Ettare's claim that TBIG did not have the legal capacity to join in the

9  Removal Notice has no grounds. TBIG has since reinstated its status as a Nevada corpo-

10  ration. This reinstatement "relates back to the date on which the corporation forfeited

11  its right to transact business . . . and reinstates the corporation's right to transact busi-

12  ness as if such right had at all times remained in full force and effect." NEV. REV. STAT.

13  § 78.180(5). Finally, any questions raised by Dr. Ettare concerning TBIG's Nevada

14  citizenship can be clarified. Accordingly, this Court should grant Defendants leave to

15  amend the Removal Notice.

16

17  ## II.

18  ## STATEMENT OF ISSUES TO BE DECIDED

19        1.    Whether Defendants' allegations regarding Wachovia's citizenship

20  are merely defective allegations that can be cured under 28 U.S.C. § 1653.

21        2.    Whether TBIG had capacity to join in the Removal Notice.

22        3.    Whether the reinstatement of TBIG's corporate status in Nevada is

23  retroactive and validates TBIG's joinder in the Removal Notice.

24        4.    Whether TBIG has met its burden of demonstrating it is a Nevada

25  citizen.

26  ///

27

28  ///

KYL_LB1117543

NOT./MOT. & MOT./LV./AMEND NOT./REMOVAL; MEMO./P'S & A'S IN SUPPORT THEREOF

# III.

## STATEMENT OF FACTS

As noted in Defendants' Removal Notice, at the time the above captioned action was commenced on July 13, 2007, and the time Defendants filed the Removal Notice on August 27, 2007, and at all times thereafter, Wachovia was and is a limited liability company under the laws of Delaware, having its principal place of business in Richmond, Virginia. (See Declaration of Terry Ross in Support of Amended Notice of Removal of Action ("Ross Decl."), ¶ 5, filed concurrently herewith; see also Declaration of Paul Waldman in Support of Opposition to Plaintiff's Motion to Remand and Motion for Leave to Amend Removal Notice ("Waldman Decl.") ¶ 3, filed concurrently herewith.) Wachovia is, and has been since before July 13, 2007, 100% owned by Wachovia Securities Financial Holdings, LLC ("WSFH"). (Waldman Decl., ¶ 4.) Since before July 13, 2007, Wachovia's sole member, WSFH, was a citizen of a state other than California. WSFH was organized under the laws of the State of Delaware. (Waldman Decl., ¶ 5.) WSFH's principal place of business is located in Richmond, Virginia. (Waldman Decl., ¶ 5.)

Since before July 13, 2007, and at all relevant times, WSFH consisted of two members: Wachovia Securities Holdings LLC ("WSH") and Prudential Securities Group, Inc. ("PSG"). (Waldman Decl., ¶ 6; see also Declaration of Kenneth Meister in Support of Opposition to Plaintiff's Motion to Remand and Motion for Leave to Amend Removal Notice ("Meister Decl.,") ¶¶ 2, 3, filed concurrently herewith.) WSH and PSG were and are citizens of states other than California. First, WSH has been organized under the laws of the State of Delaware since before July 13, 2007. (Waldman Decl., ¶ 7.) WSH's principal place of business is located in Charlotte, North Carolina. (Waldman Decl., ¶ 7.) Second, PSG was incorporated under the laws of the State of Delaware. (Meister Decl., ¶ 4.) PSG's principal place of business is located in New York. (Meister Decl., ¶ 4.)

///

KYL_LB1117543

NOT./MOT. & MOT./LV./AMEND NOT./REMOVAL; MEMO./P'S & A'S IN SUPPORT THEREOF

1    Since before July 13, 2007, WSH has been owned entirely by Everen

2  Capital Corporation ("Everen"). (Waldman Decl., ¶ 8.)  Everen, WSH's sole member, has

3  been a citizen of state other than California since before July 13, 2007.  Everen was

4  incorporated under the laws of the State of Delaware and its principal place of business

5  is located in Charlotte, North Carolina. (Waldman Decl., ¶ 9.)

6    At the time the above captioned action was commenced on July 13, 2007,

7  and the time Defendants filed the Removal Notice, and at all times thereafter, Baratta

8  has been a citizen of the State of Nevada residing in Incline Village, Nevada, and TBIG

9  has been a Nevada corporation having its principal place of business in Incline Village,

10  Nevada. (See Declaration of Joseph E. Baratta in Support of Opposition to Plaintiff's

11  Motion to Remand and Motion for Leave to Removal Notice ("Baratta Decl.") ¶¶ 2, 5,

12  filed concurrently herewith.)

13    Baratta and his wife bought their home in Nevada in 2000, and although

14  they still own a second home in California, it is currently leased, and they have been

15  Nevada residents since 2001. (Baratta Decl., ¶ 3.)  Baratta files his and TBIG's taxes in

16  Nevada, is registered to vote with the State of Nevada, his daughter attends school full

17  time at the Lake Tahoe School in Incline Village, Nevada, and Baratta is a member of

18  the Board of Trustees and Chairman of the Finance Committee for his daughter's school.

19  (Baratta Decl., ¶¶ 3, 4.)

20    TBIG is a corporation incorporated under the laws of the State of Nevada,

21  having its principal place of business at 756 Lakeshore Boulevard, Incline Village,

22  Nevada. (Baratta Decl., ¶ 5.)  Although TBIG had been a California corporation, it

23  ceased to be so on November 27, 2000, when it merged into the Nevada corporation.

24  (Baratta Decl., ¶¶ 5, 6; Exhibits A, B and C.)  Baratta is the sole officer and director of

25  TBIG. (Baratta Decl., ¶ 7.)

26    TBIG's form ADV lists a 650 area code cellular phone as TBIG's primary

27  contact information because that number works internationally, whereas TBIG's

28  original 877 number did not. (Baratta Decl., ¶ 8.)  That 650 cellular phone is billed to

KYL_LB1117543

NOT./MOT. & MOT./LV./AMEND NOT./REMOVAL; MEMO./P'S & A'S IN SUPPORT THEREOF

1  Baratta's address in Nevada. (Baratta Decl., ¶ 8.) The two 650 telephone and fax

2  numbers on Schedule D, page 1 of the form ADV attached as Exhibit A to Cooke's

3  Declaration relate to the location where TBIG kept certain books and records other than

4  its principal place of business. (Baratta Decl., ¶ 8.) Those numbers are no longer

5  utilized by TBIG. (Baratta Decl., ¶ 8.)

6     Baratta was served with Plaintiff's complaint on August 3, 2007 at his

7  home in Nevada. (Baratta Decl., ¶ 9.) At some point soon thereafter, Baratta became

8  aware that TBIG had inadvertently failed to make certain filings required by the

9  Nevada Secretary of State and that TBIG's status as a Nevada corporation had been

10  revoked on November 1, 2002. (Baratta Decl., ¶ 9.) Baratta immediately took the steps

11  necessary to reinstate TBIG's corporate charter, which was accomplished by August 31,

12  2007. (Baratta Decl., ¶ 9, Exhibit C.)

13

14  <div align="center">

**IV.**

15  **ARGUMENT**

16  A. **THE REMOVAL NOTICE'S ALLEGATIONS REGARDING**

17    **WACHOVIA'S CITIZENSHIP CAN BE AMENDED.**

18    1. **Defendants' Motion for Leave to Amend the Removal Notice**

19      **is Timely Under 28 U.S.C. § 1653.**

</div>

20     "Defective allegations of jurisdiction may be amended, upon terms, in the

21  trial or appellate courts." 28 U.S.C. § 1653. In other words, "28 U.S.C. § 1653 *does not*

22  *impose any time limitations* on the allowance of amendments correcting jurisdictional

23  allegations, and in fact authorizes such amendments in the appellate courts." 61B Am.

24  Jur. 2d *Pleading* § 806 (2007) (emphasis added). Furthermore, 28 U.S.C. § 1653 applies

25  to removed actions. <u>Barrow</u>, supra, 418 F.2d at 317. Therefore, under 28 U.S.C. § 1653,

26  a notice of removal can be amended to "clarify defective allegations of jurisdiction previ-

27  ously made" at any time. <u>See id.</u> Therefore, Defendants' request for leave to amend the

28  Removal Notice is timely.

KYL_LB1117543

NOT./MOT. & MOT./LV./AMEND NOT./REMOVAL; MEMO./P'S & A'S IN SUPPORT THEREOF

2.    **The Removal Notice's Allegations Regarding Wachovia's Citizenship are Merely "Defective" Allegations Requiring Clarification.**

Defective allegations arise when "the defendant sets forth the proper statutory basis and legal theory of removal, but fails to specify all the facts necessary to support such removal." Smiley v. Citibank (S.D.), N.A., 863 F. Supp. 1156, 1161 (C.D. Cal. 1993) (citations omitted).  Accordingly, Defendants' allegations regarding Wachovia's citizenship are merely defective.  Defendants set forth the proper statutory basis for removal, 28 U.S.C. § 1332, and the legal theory for removal, i.e., that Wachovia and Plaintiff were citizens of different states.  However, the Removal Notice failed to specify all the necessary facts to support the removal, namely, the citizenship of each of Wachovia's members as required by the Ninth Circuit's recent opinion in Johnson.

Barrow is particularly instructive on why Defendants should be permitted to cure the Removal Notice's failure to allege each of Wachovia's members' citizenship.  In Barrow, defendant corporation (the "Corporation") removed a state court case on diversity grounds.  418 F.2d at 317.  The Corporation's removal petition only alleged the Corporation was a New York citizen and that plaintiff (another corporation) was an Alaskan citizen.  Id. at n.1.  However, the Corporation failed to allege either parties' respective states of incorporation and principal places of business.  Id.  On appeal, the Ninth Circuit questioned the sufficiency of the Corporation's showing of diversity.  Id. at 317.  The Corporation sought leave to amend its removal petition under 28 U.S.C. § 1653.  Id.  The Corporation's motion to amend and attached exhibits directly showed the plaintiff and the Corporation were incorporated respectively in Alaska and New York and that each had its principal place of business in its state of incorporation.  See id. (noting plaintiff/appellant did not dispute facts appearing in verified exhibits appended to Corporations' motion).

The Ninth Circuit found the Corporation's allegation regarding the parties' citizenships merely defective and allowed the amendment.  Id., 418 F.2d at 318.  The

KYL_LB1117543

NOT./MOT. & MOT./LV./AMEND NOT./REMOVAL; MEMO./P'S & A'S IN SUPPORT THEREOF

1    court conceded the Corporation's removal petition's failure to allege each party's state of

2    incorporation and principal place of business was inadequate under the legal standards

3    for alleging corporate citizenship. Id. Nonetheless, the court treated the Corporation's

4    allegations "as defective in form but not so lacking in substance as to prevent their

5    amendment." Id. The court refused to follow authority either requiring strict construc-

6    tion of removal statutes against the Corporation or treating the Corporation's allegations

7    "as legal nullities and hence not susceptible to amendment." Id. (citations omitted). In

8    doing so, the Barrow court explained:

> We are not unmindful of numerous district court opinions
> which question the power to allow such amendments under
> varying circumstances after the time for initially filing
> removal petitions has expired. But if applied to circumstances
> comparable to those of the present case, we believe that their
> reasoning would be too grudging with reference to the control-
> ling statute, too prone to equate imperfect allegations of
> jurisdiction with the total absence of jurisdictional founda-
> tions, *and would tend unduly to exalt form over substance and
> legal flaw-picking over the orderly disposition of cases properly
> committed to federal courts.*

15   418 F.2d at 318 (emphasis added) (citations omitted).

16         In other words, the Ninth Circuit concluded that since complete diversity of

17   the parties existed in fact, it would permit amendment. See also, Harmon v. Oki Sys.,

18   115 F.3d 477, 479 (7th Cir. 1997) (explaining an allegation which fails to "*demonstrate*

19   diversity" is only defective if the "record discloses [a] dispute that [diversity] in fact

20   *existed.*") (citing In re Allstate Ins. Co., 8 F.3d 219, 221 (5th Cir. 1993) (emphasis in

21   original).

22         Under these principles, this Court should grant Defendants leave to amend

23   the Removal Notice's allegations regarding the citizenship of Wachovia's members since

24   it is clear that at all pertinent times diversity existed in fact with respect to Plaintiff and

25   Wachovia under the Johnson standard. See 437 F.3d at 899.

26   ///

27

28   ///

                                            KYL_LB1117543

3.    **This Court Can Consider Later Filed Declarations Which Clarify the Removal Notice's Defective Allegations Regarding Wachovia's Citizenship.**

When reviewing amendments to notices of removal under 28 U.S.C. § 1653, courts should consider evidence that "sheds light on the situation which existed when the case was removed." Harmon, 115 F.3d at 479–80 (finding plaintiff's argument that court's review of defendant's amended removal papers under 28 U.S.C. § 1653 was limited to the evidence in the record when removal is sought "imprudent"). Furthermore, limiting a district court's review under 28 U.S.C. § 1653 to the notice of removal and the motion to amend the notice is "erroneous." Nat'l Audubon Soc'y v. Dep't of Water & Power of the City of L.A., 496 F. Supp. 499, 503 (E.D. Cal. 1980). Thus districts courts can review later filed declarations which serve to amend a notice of removal. See id. (explaining how under 28 U.S.C. § 1653 it is proper to treat a notice of removal as if it had been amended to include the relevant information contained in the later-filed affidavits) (citing Willingham v. Morgan, 395 U.S. 402, 407 n.3 (1969)).[2]

///

---

[2] Some Ninth Circuit cases suggest that when ruling on a remand motion, courts generally determine removability from the complaint and removal notice as they exited at the time of removal. See 2 SCHWARZER, TASHIMI & WAGSTUTTE, FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 2:1096 (2007) (citing Gaus v. Miles, 980 F.2d 564, 567 (9th Cir. 1992), and Miller v. Grgurich, 763 F.2d 372, 373 (9th Cir. 1985)). Neither Gaus nor Miller apply to Defendants' motion to amend the Removal Notice. First, neither case reviewed motions to amend removal notices under 28 U.S.C. § 1653. See Gaus, 980 F.2d at 565–66 (in response to court's concerns regarding defendant's "amount in controversy" allegation, defendant only responded that Nevada Rule of Civil Procedure 8(a) prohibited plaintiff's demand for a specific amount above $10,000); see also, Miller, 763 F.2d at 373. Second, a closer review of the cases reveals they support a court's review of post-removal evidence. See, Gaus, 980 F.2d at 567 ("If [a party's jurisdictional allegations] are challenged by his adversary . . . he must support them by *competent proof*.") (emphasis added). Notably, in Miller, even though the Ninth Circuit found that "on the face of the pleadings in [that] case [that there were] substantial [questions] concerning the plaintiff's citizenship at the time of removal," the Ninth Circuit remanded the case to the District Court (not the state court) to determine whether "diversity" had been established. Miller, 763 F.2d at 373.

KYL_LB1117543

NOT./MOT. & MOT./LV./AMEND NOT./REMOVAL; MEMO./P'S & A'S IN SUPPORT THEREOF

1    Therefore, this Court should consider Paul Waldman and Kenneth

2  Meister's Declarations in Support of Opposition to Plaintiff's Motion to Remand and

3  Motion for Leave to Amend Removal Notice, filed concurrently herewith.  These

4  Declarations "shed light" on Wachovia's relevant citizenship that existed when Plaintiff

5  filed her state court action and when Defendants removed the same.

6    As is plainly evident by Paul Waldman and Kenneth Meister's Declarations

7  in Support of Opposition to Plaintiff's Motion to Remand and Motion for Leave to Amend

8  Removal Notice, on and before both July 13, 2007 and August 27, 2007, Wachovia's sole

9  member, WSFH, was a citizen of state other than California.  WSFH was organized

10  under the laws of the State of Delaware.  (Waldman Decl., ¶ 5.)  WSFH's principal place

11  of business is located in Richmond, Virginia.  (Waldman Decl., ¶ 5.)  Furthermore, on

12  since before July 13, 2007, WSFH's two members, WSH and PSG were non-California

13  citizens.  First, WSH has been organized under the laws of the State of Delaware since

14  before July 13, 2007.  (Waldman Decl., ¶ 7.)  WSH's principal place of business is located

15  in Charlotte, North Carolina.  (Waldman Decl., ¶ 7.)  Second, PSG was incorporated

16  under the laws of the State of Delaware.  (Meister Decl., ¶ 4.)  PSG's principal place of

17  business is located in New York.[3]  (Meister Decl., ¶ 4.)  Additionally, WSH's sole mem-

18  ber, Everen, has been a citizen of state other than California since before July 13, 2007.

19  Everen was incorporated under the laws of the State of Delaware and its principal place

20  of business is located in Charlotte, North Carolina.[4]  (Waldman Decl., ¶ 9.)  In short,

21  none of these entities, the corporate parents of Wachovia, are citizens of California.

22  ///

23    [3] As PSG is a corporation, the analysis ends here as to this member.  There is no need to

24  look further and examine the citizenship of PSG's members.  See United Computer Sys.,
    Inc. v. AT&T Corp., 298 F.3d 756, 763 (9th Cir. 2002) ("a corporation shall be deemed to

25  be a citizen of any State by which it has been incorporated and of the State where it has
    its principal place of business.") (citations omitted); C.T. Carden v. Arkoma Associates,

26  494 U.S. 185, 188–189 (1990) (confirming the well established rule that a corporation

27  may be considered a citizen of the state which created it).

28    [4] As Everen is a corporation, the analysis of its citizenship ends here.

NOT./MOT. & MOT./LV./AMEND NOT./REMOVAL; MEMO./P'S & A'S IN SUPPORT THEREOF

1        Critically, Paul Waldman and Kenneth Meister's Declarations in Support of

2  Opposition to Plaintiff's Motion to Remand and Motion for Leave to Amend Removal

3  Notice provide the same evidence which the Ninth Circuit found sufficient to support

4  diverse citizenship of an LLC in <u>Johnson</u>. <u>See</u> 437 F.3d at 899 (finding affidavit of LLC's

5  officer regarding LLC's members' states of incorporation and principal places of business

6  evidence of diverse citizenship). Therefore, through Paul Waldman and Kenneth

7  Meister's Declarations, Defendants have met their burden of proving removal of

8  Plaintiff's state court action was appropriate. <u>See id.</u>; <u>see also</u>, <u>United Computer Sys.,</u>

9  <u>Inc. v. AT&T Corp.</u>, 298 F.3d 756, 764 (9th Cir. 2002) (holding affidavits of knowledge-

10  able company officials specifying the state of incorporation and principal place of busi-

11  ness supported district court's denial of motion to remand). Accordingly, this Court

12  should grant the Defendants' request for leave to amend the Removal Notice to clarify

13  the defective allegations regarding Wachovia's members' citizenship.

**B.**    <u>**TBIG HAD LEGAL CAPACITY TO JOIN IN DEFENDANT'S**</u>
        <u>**REMOVAL NOTICE BECAUSE REVOCATION DOES NOT**</u>
        <u>**TERMINATE A CORPORATION'S EXISTENCE.**</u>

18        The revocation of a corporation's charter by a state's administration does

19  not preclude that company from being sued and defending itself in a lawsuit. In <u>Clipper</u>

20  <u>Air Cargo Inc. v. Aviation Products Int'l, Inc.</u>, the case applying Nevada law cited by

21  Plaintiff, the court held that "revocation does not immediately terminate the corpora-

22  tion's existence." 981 F. Supp. 956 (D.S.C. 1997). It held that a revoked corporation

23  should be treated as a dissolved corporation, which retains the capacity to sue and be

24  sued. <u>Id.</u> at 958–59 & n.3–5. Therefore, TBIG had capacity to appear in this matter and

25  join in the Removal Notice. <u>See Wild v. Subscription Plus, Inc.</u>, 292 F.3d 526, 528–29

26  (7th Cir. 2002) (finding that the revocation of Subscription Plus's corporate charter did

27  not affect its status for diversity purposes, and that "[m]ost states sensibly permit a

28  corporation whose charter has been revoked to continue nevertheless to operate as a cor-

1  poration, specifically for the purpose of suing and being sued."); see also 16A WILLIAM M.

2  FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS, § 3844 (2007).

3       If Dr. Ettare were correct in her allegation at page 5 of the Memorandum of

4  Points and Authorities in Support of Motion to Remand, and "TBIG was incapable of

5  filing a notice of joinder, or otherwise participating in this litigation," including TBIG in

6  this suit would be meaningless.  In that case, it would be irrelevant that TBIG did not

7  have legal capacity to join in the Removal Notice, complete diversity of the parties would

8  still exist, and removal to this court would be appropriate.

9

10  **C.**     **<u>THE REINSTATEMENT OF TBIG'S CORPORATE STATUS IN</u>**

11  **<u>NEVADA IS RETROACTIVE AND VALIDATES ITS JOINDER IN</u>**

12  **<u>THE REMOVAL NOTICE.</u>**

13       Under Nevada law, even if TBIG lacked capacity to join in Defendants'

14  Notice of Removal on August 27, 2007, the reinstatement of TBIG's Nevada corporate

15  status on August 31, 2007 operates retroactively and validates TBIG's joinder in the

16  Removal.  See NEV. REV. STAT. § 78.180(5).[5]

17       Nevada Revised Statute section 78.180(5) establishes that reinstatement of

18  a corporation pursuant to that statute "relates back to the date on which the corporation

19  forfeited its right to transact business under the provisions of this chapter and reinstates

20  the corporation's right to transact business as if such right had at all times remained in

21  full force and effect."  Thus, the reinstatement of TBIG's corporate status on August 31,

22  2007 relates back to November 1, 2002, the date it was revoked, and validates TBIG's

23  acts as if the corporation had never fallen out of status—including its joining the TBIG

24  corporate charter now has been reinstated.  Therefore, it is fully capable of joining

25  Defendants' request for leave to amend the Removal Notice.

26  ///

27  _____

[5] Subsection (5) of Nevada Revised Statute section 78.180 was approved by the Governor

28  of Nevada on June 13, 2007.  See 2007 Nevada Laws Ch. 456 (S.B. 483).

KYL_LB1117543

NOT./MOT. & MOT./LV./AMEND NOT./REMOVAL; MEMO./P'S & A'S IN SUPPORT THEREOF

1    **D.    THIS COURT CAN CONSIDER BARATTA'S LATER FILED**

2    **DECLARATIONS WHICH CLARIFIES ANY DOUBTS CONCERNING**

3    **TBIG'S NEVADA CITIZENSHIP.**

4         Baratta's Declaration in Support of Defendants' Opposition and Motion for

5    Leave to Amend the Removal Notice clarifies any doubts raised by Dr. Ettare concerning

6    TBIG's citizenship.  Again, when reviewing amendments to notices of removal under

7    28 U.S.C. § 1653, courts should consider evidence that "sheds light on the situation

8    which existed when the case was removed."  Harmon, 115 F.3d at 479–80, supra.

9         TBIG is a citizen of Nevada, and Nevada only, because it is both incorpo-

10   rated under the laws of that state and maintains its principal place of business in Incline

11   Village, Nevada.  (Baratta Decl., ¶¶ 5, 6; Exhibits A, B and C.)  TBIG does not, and has

12   not in a very long time, conducted its business from California.  In fact, TBIG's

13   California corporation merged into the Nevada corporation in November 2000, and

14   Baratta has been a Nevada resident since at least 2001.  (Baratta Decl., ¶¶ 3, 6, and

15   Exhibit C.)

16        Like TBIG's corporate filings with the State of Nevada, TBIG's form ADV

17   sets forth its principal place of business in Incline Village, Nevada.  (Baratta Decl.,

18   Exhibit B.)  The fact that the form ADV lists a 650 area code number is irrelevant.  That

19   is a cellular phone billed to Baratta's address in Nevada, which works internationally

20   and replaced TBIG's previous 877 number.  (Baratta Decl., ¶ 8.)  The 650 numbers

21   contained on Schedule D, page 1 of the form ADV, attached as Exhibit A to Cooke's

22   Declaration, relate to the location where TBIG kept certain books and records—not its

23   principal place of business.  Those numbers are no longer utilized by TBIG.  (Baratta

24   Decl., ¶ 8.)

25        Dr. Ettare alleges she first met TBIG and Baratta in California is not

26   surprising since she resides in California and Baratta spent considerable time there in

27   2001 when she opened her Wachovia account.  But that bears no relevance to TBIG's or

28   Baratta's citizenship at the time the Dr. Ettare complaint was filed and on the date

NOT./MOT. & MOT./LV./AMEND NOT./REMOVAL; MEMO./P'S & A'S IN SUPPORT THEREOF

1 | removal was sought.  See Stortek Corp. v. Air Transp. Ass'n of Am., 300 F.3d 1129, 1131
2 | (9th Cir. 1986).

3 | To the extent this court considers that the Declaration of Gilbert R. Serota

4 | in Support of Baratta's and TBIG's joinder in the Removal Notice insufficient to set forth

5 | TBIG's Nevada citizenship, this Court should grant the Defendants' request for leave to

6 | amend the Removal Notice to clarify any doubts concerning TBIG's citizenship raised by

7 | Dr. Ettare.

8

## V.

## CONCLUSION

11 | For the foregoing reasons, this Court should grant the Defendants' request

12 | for leave to amend the Removal Notice.

Respectfully submitted,

DATED:  October 29, 2007

/s/ Terry Ross
TERRY ROSS
AUDETTE PAUL MORALES
KEESAL, YOUNG & LOGAN
Attorneys for Defendants
WACHOVIA SECURITIES, LLC and
MARK WIELAND

DATED:  October 29, 2007

/s/
GILBERT R. SEROTA
HOWARD RICE NEMEROVSKI CANADY
    FALK & RABKIN
Attorneys for Defendants
JOSEPH E. BARATTA and TBIG
FINANCIAL SERVICES, INC.

- 13 -

1  TERRY ROSS, CASB No. 58171
   terry.ross@kyl.com
2  AUDETTE PAUL MORALES, CASB No. 216631
   audette.morales@kyl.com
3  KEESAL, YOUNG & LOGAN
   A Professional Corporation
4  400 Oceangate, P.O. Box 1730
   Long Beach, California 90801-1730
5  Telephone:  (562) 436-2000
   Facsimile:   (562) 436-7416
6
   Attorneys for Defendants
7  WACHOVIA SECURITIES, LLC and MARK WIELAND
8  GILBERT R. SEROTA, No. 75305
   gserota@howardrice.com
9  HOWARD RICE NEMEROVSKI
       CANADY FALK & RABKIN
10 A Professional Corporation
   Three Embarcadero Center, 7th Floor
11 San Francisco, California 94111-4024
   Telephone:  (415) 434-1600
12 Facsimile:   (415) 217-5910
13 Attorneys for Defendants
   JOSEPH E. BARATTA and TBIG FINANCIAL
14 SERVICES, INC.
15
16              UNITED STATES DISTRICT COURT
17            NORTHERN DISTRICT OF CALIFORNIA
18                   SAN JOSE DIVISION
19
20 VIOLETTA ETTARE,                    )  Case No. C-07-04429-JW (PVT)
                                       )
21              Plaintiff,             )
                                       )  **[PROPOSED] DEFENDANTS' JOINT
22        vs.                          )  AMENDED NOTICE OF REMOVAL**
                                       )
23 JOSEPH E. BARATTA, an individual,   )  **[28 U.S.C. §§ 1332(a), 1441(a), 1441(b)]**
   TBIG FINANCIAL SERVICES, INC., form )
24 of business unknown, WACHOVIA       )  Date:   Monday, December 3, 2007
   SECURITIES, LLC, a Delaware Limited )  Time:   9:00 a.m.
25 Liability Company, MARK WIELAND, an )  Place:  Courtroom 8, 4th Floor
   individual, and DOES 1-25,          )
26                                     )
                                       )
27              Defendants.            )
   _____  )
28 ///

EXHIBIT "A"

KYL_LB1117555

1  TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE

2  NORTHERN DISTRICT OF CALIFORNIA:

3         PLEASE TAKE NOTICE that Defendants WACHOVIA SECURITIES, LLC

4  ("Wachovia"), MARK WIELAND ("Wieland"), TBIG FINANCIAL SERVICES, INC.

5  ("TBIG"), and JOSEPH E. BARATTA ("Baratta") (collectively "Defendants") submit the

6  following Amended Notice of Removal to this Court relating to the state court action

7  described below.

8         1.    Defendants were named as parties in a civil action filed on July 13,

9  2007, in the Superior Court of the State of California for the County of Santa Clara,

10  Case No. 107CV089814, entitled <u>VIOLETTA ETTARE v. JOSEPH E. BARATTA, an</u>

11  <u>individual, TBIG FINANCIAL SERVICES, INC., a form of business unknown,</u>

12  <u>WACHOVIA SECURITIES, LLC, a Delaware Limited Liability Company, MARK</u>

13  <u>WIELAND, an individual, and DOES 1–25</u> (the "Complaint"). A true and correct copy of

14  the Complaint is attached hereto as Exhibit 1.

15         2.    Wachovia was served with a copy of the Summons and a copy of the

16  Complaint on or about July 26, 2007. (Declaration of Terry Ross in Support of Amended

17  Notice of Removal of Action ("Ross Decl."), ¶ 2, filed concurrently herewith.)

18         3.    Wieland was served with a copy of the Summons and a copy of the

19  Complaint on or about August 1, 2007. (Ross Decl., ¶ 3.)

20         4.    Defendants are informed and believe that TBIG and Baratta were

21  served with a copy of the Summons and a copy of the Complaint on or about August 3,

22  2007. (Ross Decl., ¶ 4 and Declaration of Joseph E. Baratta in Support of Opposition to

23  Plaintiff's Motion to Remand and Motion for Leave to Amend Removal Notice ("Baratta

24  Decl."), ¶ 9, filed concurrently herewith).

25         5.    Since before the time said action was commenced on July 13, 2007,

26  and at all times thereafter, Wachovia has been a limited liability company organized

27  under the laws of Delaware, having its principal place of business in Richmond, Virginia.

28  (Ross Decl., ¶ 5; <u>see also</u> Declaration of Paul Waldman in Support of Opposition to

[PROPOSED] DEFENDANTS' JOINT AMENDED NOT./REMOVAL – Case No. C-07-04429-JW (PVT)

1  Plaintiff's Motion to Remand and Motion for Leave to Amend Removal Notice

2  ("Waldman Decl."), ¶ 3, filed concurrently herewith.)

3        6.     Since before the time said action was commenced on July 13, 2007,

4  and at all times thereafter, Wachovia has been owned entirely by Wachovia Securities

5  Financial Holdings, LLC ("WSFH").  (Waldman Decl., ¶ 4.)

6        7.     Since before the time said action was commenced on July 13, 2007,

7  and at all times thereafter, WSFH has been organized under the laws of the State of

8  Delaware in and has had its principal place of business in Richmond, Virginia.

9  (Waldman Decl., ¶ 5.)

10        8.     Since before the time said action was commenced on July 13, 2007,

11  and at all times thereafter, WSFH has consisted of two members:  Prudential Securities

12  Group Inc. ("PSG"), which has a 38% interest in WSFH, and Wachovia Securities

13  Holdings, LLC ("WSH"), which has a 62% interest in WSFH.  (Waldman Decl., ¶ 6; see

14  also Declaration of Kenneth Meister in Support of Opposition to Plaintiff's Motion to

15  Remand and Motion for Leave to Amend Removal Notice ("Meister Decl."), ¶¶ 2, 3, filed

16  concurrently herewith.)

17        9.     Since before the time said action was commenced on July 13, 2007,

18  WSH has been organized under the laws of the State of Delaware and has had its

19  principal place of business in Charlotte, North Carolina.  (Waldman Decl., ¶ 7.)

20       10.    Since before the time said action was commenced on July 13, 2007,

21  PSG was and is incorporated under the laws of the State of Delaware and has had its

22  principal place of business in New York.  (Meister Decl., ¶ 4.)

23       11.    Since before the time said action was commenced on July 13, 2007,

24  WSH has been owned entirely by Everen Capital Corporation ("Everen").  (Waldman

25  Decl., ¶ 8.)

26       12.    Since before the time said action was commenced on July 13, 2007,

27  Everen was and is incorporated under the laws of the State of Delaware and has had its

28  principal place of business in Charlotte, North Carolina.  (Waldman Decl., ¶ 9.)

KYL_LB1117555

1       13.    At the time said action was commenced and at all times thereafter,

2  Wieland was a citizen of the State of Pennsylvania. (Ross Decl., ¶ 6.)

3       14.    Defendants are informed and believe that at the time said action was

4  commenced at all times thereafter, TBIG is a corporation incorporated under the laws of

5  Nevada, having its principal place of business in Incline Village, Nevada. (Ross Decl.,

6  ¶ 7 and Baratta Decl., ¶ 5.)

7       15.    Defendants are informed and believe that at the time said action was

8  commenced at all times thereafter, Baratta is and has been a citizen of the State of

9  Nevada. (Ross Decl., ¶ 7, and Baratta Decl., ¶¶ 2–4.)

10       16.    Defendants are informed and believe that Plaintiff was at all times

11  relevant hereto a citizen of the State of California and resident of Santa Clara County.

12  (Ross Decl., ¶ 8.)

13       17.    Although fictitiously designated defendants (Does 1–25, inclusive)

14  are referred to in the Complaint, such fictitious defendants are to be disregarded for

15  purposes of this petition pursuant to 28 U.S.C. § 1331(a).

16       18.    This action is a civil action over which this Court has original juris-

17  diction pursuant to 28 U.S.C. § 1332(a) and is one which Defendants are entitled to

18  remove to this Court pursuant to 28 U.S.C. §§ 1441(a) and (b) in that the action is

19  between citizens of different states and the matter in controversy exceeds the sum of

20  $75,000, exclusive of interest and costs. (Ross Decl., ¶¶ 4–9; Waldman Decl., ¶¶ 3–9;

21  Meister Decl., ¶¶ 2–4; Baratta Decl., ¶¶ 2–5.)

22       19.    No further proceedings have been had in the above-referenced state

23  court action. (Ross Decl., ¶ 10.)

24       20.    The original Notice of Removal was filed within 30 days from the

25  service of the Complaint on Defendants. (Ross Decl., ¶¶ 2–4 and 11; Baratta Decl., ¶ 9.)

26       21.    Defendants provided the original Notice of Removal to the Clerk of

27  the Superior Court of the State of California for the County of Santa Clara on or about

28  ///

KYL_LB1117555

1 | August 27, 2007. A true and correct copy of that Notice is attached hereto as Exhibit 2.

2 | (Ross Decl., ¶ 12.)

3 |      22.    Defendants will provide the Amended Notice of Removal to the Clerk

4 | of the Superior Court of the State of California for the County of Santa Clara once this

5 | Court has granted Defendants leave to amend their Notice of Removal. (Ross Decl.,

6 | ¶ 13.)

7 |      WHEREFORE, Defendants pray that the above-referenced action pending

8 | in the Superior Court of the State of California for the County of Santa Clara, be

9 | removed therefrom to this Court.

10

11

12 | DATED: October 29, 2007

/s/ Terry Ross
TERRY ROSS
AUDETTE PAUL MORALES
KEESAL, YOUNG & LOGAN
Attorneys for Defendants
WACHOVIA SECURITIES, LLC and
MARK WIELAND

13

14

15

16

17 | DATED: October 29, 2007

/s/
GILBERT R. SEROTA
HOWARD RICE NEMEROVSKI CANADY
    FALK & RABKIN
Attorneys for Defendants
JOSEPH E. BARATTA and TBIG
FINANCIAL SERVICES, INC.

18

19

20

21

22

23

24

25

26

27

28

KYL_LB1117555

[PROPOSED] DEFENDANTS' JOINT AMENDED NOT./REMOVAL – Case No. C-07-04429-JW (PVT)

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

<div style="float:right; border:1px solid">
FOR COURT USE ONLY<br/>
(SOLO PARA USO DE LA CORTE)



ENDORSED FILED

2007 JUL 17 A 7 54

KIRI TORRE, CLERK OF THE SUPERIOR COURT<br/>
COUNTY OF SANTA CLARA CALIFORNIA    FUJIHARA

BY_____<br/>
DEPUTY CLERK
</div>

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
JOSEPH E. BARATTA, TBIG FINANCIAL SERVICES, INC.,
WACHOVIA SECURITIES LLC, MARK WIELAND and DOES 1
through 25

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
VIOLETTA ETTARE

---

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

---

| The name and address of the court is:<br/>*(El nombre y dirección de la corte es):*<br/>Santa Clara County Superior Court<br/>191 N. First Street<br/>San Jose, CA 95113 | CASE NUMBER:<br/>*(Número del Caso):*    107CV089814 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Christopher Cooke and Stephen Wu, COOKE KOBRICK & WU LLP
177 Bovet Rd., Suite 600, San Mateo, CA 94402, Tel. No. (650) 638-2370    C. FUJIHARA

| DATE:<br/>*(Fecha)* JUL 1 7 2007 | Kiri Torre | Clerk, by<br/>*(Secretario)* | , Deputy<br/>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Wachovia Securities LLC

    under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
         ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
         ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
         ☒ other *(specify):* limited liability company
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br/>Judicial Council of California<br/>SUM-100 [Rev. January 1, 2004] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br/>American LegalNet, Inc.    www.USCourtForms.com |
|---|---|---|



EXHIBIT 1

CHRISTOPHER C. COOKE, ESQ. (#142342)
STEPHEN S. WU, ESQ. (#205091)
**COOKE KOBRICK & WU LLP**
177 Bovet Road, Suite 600
San Mateo, CA 94402
Telephone: (650) 638-2370
Facsimile: (650) 341-1395

Attorneys for Plaintiff VIOLETTA ETTARE

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SANTA CLARA - UNLIMITED CIVIL JURISDICTION

VIOLETTA ETTARE,

        Plaintiff,

    v.

JOSEPH E. BARATTA, an individual, TBIG
FINANCIAL SERVICES, INC., form of
business unknown, WACHOVIA SECURITIES,
LLC, a Delaware Limited Liability Company,
MARK WIELAND, an individual, and DOES 1-
25,

        Defendants.

CASE NO.: **107CV089814**
(Unlimited Civil)

**COMPLAINT FOR:**

1) **Fraud**
2) **Breach of Fiduciary Duty**
3) **Breach of Oral Contract**
4) **Negligence**
5) **Securities Fraud [Violations of Corp. Code 25,400]**
6) **Unfair Business Practices [Violation of California Business & Professions Code § 17200 et seq.]**

Plaintiff VIOLETTA ETTARE alleges as follows:

1.    At all times relevant to this Complaint, Plaintiff has been a resident of Morgan Hill, Santa Clara County, California.

2.    Defendant Joseph E. Baratta ("BARATTA"), at all times relevant herein, has resided in the Town of Los Altos Hills, Santa Clara County, California and in Incline Village, Nevada.

3.    Plaintiff is informed and believes that Defendant TBIG Financial Services, Inc. ("TBIG") at all relevant times, has been an investment advisory firm, registered with the United States Securities & Exchange Commission, operating from BARATTA's residences in Los Altos Hills, Santa Clara County, California and Incline Village, Nevada. TBIG was, until 1998, a

-1-
**COMPLAINT**

California Corporation; its present form of business organization is unknown.

4. Plaintiff is informed and believes that Defendant Wachovia Securities LLC, ("WACHOVIA") is Delaware Limited Liability Company that maintains its headquarters in Richmond, Virginia. WACHOVIA is securities brokerage firm registered with the United States Securities & Exchange Commission and the National Association of Securities Dealers, Inc. ("NASD"), and is a member of the New York Stock Exchange.

5. Plaintiff is informed and believes that defendant Mark Wieland ("WIELAND"), at all relevant times, has been a resident of Pennsylvania and, until some date in 2007, was the registered representative (i.e. "stock broker") employed by WACHOVIA who oversaw Plaintiff's account at WACHOVIA.

6. Defendants DOES 1 through 25, inclusive, are sued herein by such fictitious names in that Plaintiff does not at this time know their true names, capacities, nor specific activities of said Defendants, but alleges that each of said Defendants is or may be legally liable to Plaintiff, and therefore Plaintiff prays that the true names, capacities and activities of these Defendants may be inserted herein when the same is ascertained.

7. Plaintiff is informed and believe and thereon allege that at all times herein mentioned, each Defendant was an agent, servant, franchisee, joint venturer, partner, employee, and/or co-conspirator of the other Defendants herein named, and at all said times, each of said Defendants was acting within the course and scope of said agency, service, franchise, joint venture, partnership, employment and/or conspiracy.

## GENERAL ALLEGATIONS

8. Plaintiff is a widow whose husband died in 2001. When her husband died, Plaintiff received $1 million death benefit from a life insurance policy that her husband had purchased and which named her as the beneficiary.

9. Defendant BARATTA is a relative of a close personal friend of Plaintiff, and through that relative, BARATTA met Plaintiff and socialized with her and her husband before her husband died. BARATTA held himself out to Plaintiff as an expert on securities and investments, and presented himself as a highly successful money manager.

-2-
COMPLAINT

10.     After BARATTA learned that Plaintiff was to receive substantial life insurance proceeds from the death of her husband, BARATTA repeatedly sought to have Plaintiff invest this money with his firm, TBIG, an investment advisory firm.

11.     Plaintiff was initially reluctant to invest with TBIG and BARATTA. Plaintiff is an unsophisticated investor and is unfamiliar with the stock market, securities, or investment matters. Defendant BARATTA, however, repeatedly assured Plaintiff that he could obtain a much better rate of return for her than what her funds would earn at a bank (where Plaintiff had intended to hold the insurance proceeds), because of BARATTA's expertise and success in investing in the stock market for other clients.

12.     In or about November 2001, Plaintiff agreed to become a client of TBIG and BARATTA and transferred $900,000 to a stock brokerage account that BARATTA had opened in Plaintiff's name at FIRST UNION SECURITIES INC. ("FIRST UNION"), a stock brokerage firm that became WACHOVIA during 2001, following a corporate merger. The stock broker on Plaintiff's account when it was opened at FIRST UNION was WIELAND, who continued as Plaintiff's stock broker after the merger.

13.     Due to Plaintiff's lack of familiarity with the securities markets, her other limited financial resources, and her aversion to risk, she explicitly instructed BARATTA and TBIG that they should invest no more than $100,000 of Plaintiff's funds (11 percent) in the stock market and that the rest of her funds should be invested in safe, low risk investments that would preserve capital and provide her with a moderate return.

A.     **Defendants' Unsuitable and Highly Speculative Investment Purchases**

14.     Contrary to Plaintiff's instructions, and without her knowledge or consent, defendants TBIG and BARATTA, with the knowledge and assistance of WACHOVIA and WIELAND, used Plaintiff's funds to purchase and sell millions of dollars of highly risky, speculative securities that were unsuitable for Plaintiff, in light of her stated investment objectives, financial situation, and ability to tolerate financial risk.

15.     Among other speculative and unsuitable trades, BARATTA and TBIG, with assistance of WACHOVIA and WIELAND, caused Plaintiff's account to:

-3-
COMPLAINT

    a.  take significant short positions in volatile technology securities, which exposed Plaintiff's account to risk of loss if the price of the securities increased[1]

    b.  purchase short-term "call" or "put" option contracts in securities, which exposed Plaintiff's account to market risk with the respect to the security for which the option contract was written, and to the risk of loss of the entire investment in the option contract, in the event that the security for which the option contract was issued declined in price (for the call options) or rose in price (for the put options) and/or if the option contract was not exercised or sold prior to the contract's expiration date.[2]

    c.  take short positions in put and call options, which exposed the account to the risk of loss if the price of the security for which the option contract was issued declined in price (for the short put option positions) or rose in price (for the short call option positions).

16.   Defendants compounded the risk to Plaintiff's investments and magnified the losses that she suffered by opening a margin account for Plaintiff with WACHOVIA, and using funds borrowed from WACHOVIA through this margin account in order to effect many of these trades. By using borrowed funds to effect these trades, Defendants TBIG and BARATTA caused Plaintiff's account to take larger positions in the stocks and options than the cash position in her account would have permitted, and thereby risked a larger financial loss to Plaintiff if the trades made with these borrowed funds turned out to be unprofitable. The margin debt that Defendants caused Plaintiff's account to incur further drained Plaintiff's account due to substantial interest charges on the funds borrowed from WACHOVIA.

17.   In addition, Defendants TBIG and BARATTA allowed options contracts in Plaintiff's account to expire without selling or exercising them prior to option contract's expiration

---

[1] A "short position" is a sale of a security by an account holder who does not own the security; the account holder "borrows" the security and is essentially making a bet that the price will decline by the time he or she must repay the "loan" by purchasing the underlying security that he or she sold "short").

[2] An option contract is the right to buy or sell a security at a specified price, for a certain period of time. A "call" option is the right to buy the security at a specified price; a "put" option is the right to sell the security at a specified price.

date, and thereby caused Plaintiff to lose her entire investment in these option contracts.

18.     Moreover, Defendants TBIG and BARATTA consistently exceeded Plaintiff's instructions not to invest more than $100,000 of her funds in the stock market, and thereby subjected her investment account to much greater risk inherent in investing in the stock market than Plaintiff was willing to assume.

19.     Although the exact date in which defendants TBIG and BARATTA began making these improper and unsuitable investments for Plaintiff is not known to Plaintiff, Defendants' highly improper and unsuitable investments occurred throughout 2005 and 2006.

**B.     Defendants' Churning of Plaintiff's Portfolio**

20.     In addition to making unsuitable investments for Plaintiff and exceeding plaintiff's express directions not to invest more than $100,000 of her account in the stock market, Defendants TBIG and BARATTA, with the assistance and knowledge of WACHOVIA and WIELAND, also "churned" the stocks and options positions in Plaintiff's account during 2005 and continued this improper practice during 2006.

21.     "Churning" is the practice of excessively trading securities in an investment account, often for the purpose of generating commissions for the stock broker and firm who execute the trades. It is considered a form of securities fraud under federal and state laws applicable to stock brokers and investment advisers (such as Defendants).

22.     During 2005, for example, TBIG and BARATTA, with the knowledge and assistance of WACHOVIA and WIELAND, caused Plaintiff's account to purchase over $4 million in securities, and to sell over $4.3 million in securities. During 2006, TBIG and BARATTA, with the knowledge and assistance of WACHOVIA and WIELAND, caused Plaintiff's account to purchase over $3.2 million in securities and to sell over $3.6 million in securities.

23.     Although TBIG and BARATTA have not admitted to Plaintiff why they "churned" her account, Plaintiff is informed and believes, based upon the commission rates that WACHOVIA charged Plaintiff for the trades in her account, that TBIG and BARATTA were receiving substantial "soft dollars" from WACHOVIA as a result of the trading in Plaintiff's account, and were motivated to place these trades to obtain such soft dollars from WACHOVIA. WIELAND and

WACHOVIA, by contrast, profited enormously from TBIG and BARATTA's churning of Plaintiff's accounts due to the commissions they received from the many trades that they executed in the account.

24.    "Soft dollars" are credits that an investment adviser (such as TBIG) receives from stock brokerage firms (such as WACHOVIA) as a result of securities trades that the investment adviser places through the stock brokerage firms. "Soft dollars" can be used by the investment adviser, in lieu of cash, to pay for many services that the investment adviser wishes for its business. The SEC requires registered investment advisers to disclose their policies on, and receipt of, soft dollars to their clients. Despite these requirements, TBIG and BARATTA never disclosed to Plaintiff whether they received soft dollars from WACHOVIA.

25.    Plaintiff is informed and believes, based on information she learned only this month, that WACHOVIA had reviewed TBIG's and BARATTA's investment advisory accounts during 2002, and had placed restrictions TBIG's and BARATTA's ability to trade their investment adviser clients' accounts. WACHOVIA had discovered that TBIG and BARATTA had "churned" another WACHOVIA customer's account. Plaintiff is informed and believes that WACHOVIA, despite knowing of BARATTA and TBIG's history of churning, lifted these restrictions on BARATTA and TBIG in late 2004.

26.    The impact of Defendants' misconduct on Plaintiff's account has been devastating. For example, as of December 31, 2004, Plaintiff's investment account at WACHOVIA had total net assets of $1,151,790, with stocks and options valued at $230,452 (excluding preferred stocks, and mutual fund investments), and the majority invested in fixed income securities. By December 31, 2006, Plaintiff's account had total net assets of $368,271, with unrealized losses on stocks and options of $196,801. By July 2007, when Plaintiff closed her account with WACHOVIA, her portfolio had less than $315,000 in assets (after deducting the margin debt and losses on her options positions).

27.    Plaintiff's first hint that anything was wrong with her account and that Defendants' handling of her investments had been improper, came in July 2006, when she received a letter from a Senior Vice President of WACHOVIA. This letter, which was dated July 13, 2006, advised

Plaintiff that the market value of her account was $319,491 that her account had incurred

"significant trading losses in 2005 and 2006," and that BARATTA had been employing "extremely

risky" uncovered options trading strategies in her account. The letter asked Plaintiff to sign a

statement acknowledging that she was aware of this information and had approved of the strategies

employed by BARATTA. Plaintiff has been informed and believes that WACHOVIA sent this

letter to her because its compliance department had become concerned about BARATTA's and

WIELAND's handling of Plaintiff's and other customers accounts WACHOVIA, and had

undertaken a review of all of such accounts.

28.    Upon receipt of this letter, Plaintiff called BARATTA, her friend of many years. Far

from admitting that he had employed "risky" trading strategies that had decimated her life savings,

BARATTA dismissed the truth of letter's allegations by telling Plaintiff that WACHOVIA was

"just trying to get you" to sue him, and that the losses only existed on paper and did not matter if

she kept her funds invested in the market for the long-term.

## FIRST CAUSE OF ACTION
### [Fraud Against All Defendants]

29.    Plaintiff hereby incorporates the allegations set forth in Paragraphs 1 through 28 as

though fully alleged herein.

30.    TBIG, BARATTA, WIELAND and WACHOVIA made repeated false

representations to, and concealed material information from, Plaintiff, when Defendants

(a) misrepresented to Plaintiff that they would adhere to her conservative investment goals,

and failed to disclose to Plaintiff the unsuitable, improper and highly investments they were, in fact,

causing her account to make (as described in paragraphs 13 through 19 above);

(b) failed to disclose to Plaintiff that many of the trades in her account were financed using

"borrowed" funds (via the margin account) that magnified the risks and substantial costs involved

in using a margin account to effect such trades ( as described in paragraph 16 above);

(c) failed to disclose that Defendants had ignored Plaintiff's express instructions to invest no

more than $100,000 (11 percent) of her funds in the stock market, and had invested much more than

that amount in stocks and options ( as described in paragraph 18 above);

-7-
COMPLAINT

1   (d) failed to disclose that the trading in Plaintiff's account, especially during 2005 and 2006,

2   was excessive, given her conservative investment goals, financial circumstances, and low risk

3   tolerance, and the substantial transaction costs involved in trading her account so frequently, and

4   that WACHOVIA had placed restrictions on BARATTA and TBIG during 2002, because of prior

5   acts of churning (as described in paragraphs 20 through 22 above);

6   (e) failed to disclose TBIG and BARATTA's receipt of "soft dollars" from WACHOVIA

7   resulting from the trades in her account, and the conflict of interest that this created (as described in

8   paragraphs 23 through 25 above); and

9   (f) misrepresented the nature of BARATTA and TBIG's conduct and mislead Plaintiff by

10  BARATTA's urging of Plaintiff to ignore the letter from WACHOVIA about Defendants' risky

11  trading strategy and losses in her account (as decribed in Paragraphs 27 and 28 above)

12  31.     Defendants knew that these representations were false at the time the representations

13  were made, or Defendants recklessly disregarded the truth or falsity of the statements. Defendants

14  further knew that they were withholding material facts from Plaintiff regarding her account.

15  Defendants made these representations, and withheld material facts, so that Plaintiff would continue

16  to keep her funds invested with Defendants, permitting them to continue their trading activity, and

17  otherwise to defraud Plaintiffs as set out herein.

18  32.     Plaintiff did not know the representations were false when they were made, and did

19  not know of the material information concealed from her regarding her account, and justifiably and

20  reasonably relied upon these representations by, among other things, transferring $900,000 to

21  WACHOVIA, maintaining these funds at WACHOVIA from November 2001 until July 2007.

22  33.     Plaintiff was not aware that Defendants' representations were false when they were

23  made to Plaintiffs, nor was Plaintiff aware that material information concerning her account, TBIG

24  and BARATTA, and TBIG/BARATTA's relationship with WACHOVIA was being concealed

25  from her. Had Plaintiffs been aware of the true facts, Plaintiffs would have closed her account at

26  WACHOVIA before she incurred the substantial losses that she did during 2005 and 2006.

27  34.     As a direct and proximate result of Defendants' misrepresentations, failures to

28  disclose, and concealment of facts, Plaintiffs have suffered damages in an amount which will be

07/26/2007 THU 9:19 FAX 415 957 0195 SPECIALIZED LEGAL SERV @011/021

1  proven at trial, but in excess of $700,000.00.

2  35.  In doing the above acts, Defendants, and each of them, acted with malice, fraud,

3  oppression, or in conscious disregard of the rights of Plaintiff, thereby entitling Plaintiff to an award

4  of exemplary and punitive damages.

5

6  **SECOND CAUSE OF ACTION**
   **(Breach of Fiduciary Duty)**
   **(Against All Defendants)**

7

8  36.  Plaintiff incorporates the allegations set forth in Paragraphs 1 through 35 as though

9  fully alleged herein.

10  37.  Based on the relationship which developed between Plaintiff, on the one hand, and

11  TBIG, BARATTA, WACHOVIA, and WIELAND, on the other hand (as described above), each

12  Defendant owed Plaintiff the duties of a fiduciary, including, but not limited to, the following:

13  a)  The duty to deal fairly and honestly with Plaintiff, to act with the highest good faith

14  toward Plaintiffs and to put Plaintiffs' interests over their own;

15  b)  The duty to manage Plaintiff's accounts in the best interest of Plaintiff;

16  c)  To only recommend to Plaintiff the purchase of suitable investments for Plaintiff;

17  d)  To only purchase investments, and otherwise use Plaintiff's funds, as authorized by

18  Plaintiff;

19  e)  To trade Plaintiff's account in a manner that is reasonable and appropriate in light of

20  Plaintiff's conservative investment goals, financial circumstances, and low risk tolerance;

21  f)  To inform Plaintiff of all material facts regarding the investments that TBIG and

22  BARATTA purchased for Plaintiff;

23  g)  To tell Plaintiff if TBIG, BARATTA, WACHOVIA, or WIELAND believed

24  Plaintiff, or any of the Defendants, may be taking actions which may be hazardous or extremely

25  risky to Plaintiff; and

26  h)  To disclose all material conflicts of interest which exist in their relationship with

27  Plaintiff.

28  38.  TBIG, BARATTA, WACHOVIA, and WIELAND breached their fiduciary duty to

-9-
COMPLAINT

Plaintiff by, among other things:

     a)    Failing to deal fairly and honestly with Plaintiff, and not acting in good faith or placing Plaintiff's interests above their own;

     b)    Failing to manage Plaintiff's money in the best interest of Plaintiff;

     c)    Recommending and purchasing investments for Plaintiff which were unsuitable for Plaintiff;

     d)    Failing to disclose material facts regarding the churning of Plaintiff's account, the margin debt, the risky and unsuitable nature of the stocks and options that TBIG and BARATTA were purchasing for Plaintiff's account, the soft dollars that WACHOVIA paid to TBIG and BARATTA, TBIG and BARATTA's prior excessive trading of other customers' accounts and the restrictions WACHOVIA placed on TBIG and BARATTA during 2002 because of this improper trading, and not expressly warning Plaintiff that TBIG and BARATTA were exceeding her express instructions to invest her funds conservatively and not to invest more than $100,000 of such funds in the stock market; and

     e)    Churning Plaintiff's account by engaging in securities trading that was excessive light of Plaintiff's assets, conservative investment goals, financial circumstances and low risk tolerance, and the substantial transactions costs involved with such trading.

     39.    As a direct and proximate result of TBIG's, BARATTA's, WACHOVIA's and WIELAND's breaches of their fiduciary duties to Plaintiff, Plaintiff has suffered damages in an amount greater than $700,000.00. Because of Defendants' callousness toward their client, and wanton disregard for Plaintiff's rights and welfare, and in that Defendants' actions rose to the level of fraud, Plaintiff requests an award of exemplary and punitive damages against each Defendant.

<div align="center">

**THIRD CAUSE OF ACTION**
**(Breach of Oral Contract)**
**(Against Defendants TBIG and BARATTA)**

</div>

     40.    Plaintiff hereby incorporates the allegations set forth in Paragraphs 1 through 39 as though fully alleged herein.

     41.    As set out above, Plaintiff orally agreed to invest $900,000 she received from the

1 death benefit from her late husband's insurance policy with BARATTA and TBIG. In exchange,
2 TBIG and BARATTA agreed to invest her funds. As part of this agreement, TBIG/BARATTA
3 agreed that Plaintiff's funds would be invested in safe low risk investments, with no more than
4 $100,000 invested in stock market, and in a manner that was suitable for her, given her aversion to
5 risk and her financial situation.

6     42.    Plaintiff has performed all conditions, covenants and promises required by her on
7 her part to be performed in accordance with the terms and conditions of the agreement.

8     43.    TBIG and BARATTA breached the agreement by, among other things, investing
9 more than $100,000 in the stock market, making highly risky, unsuitable investments for Plaintiff,
10 causing Plaintiff's account to accrue significant margin liabilities and to incur significant
11 commissions, and excessively trading Plaintiff's account.

12     44.    As a result of TBIG and BARATTA's breaches of the oral agreement, Plaintiff has
13 suffered damages, as she has lost most of her capital, and has further suffered consequential
14 damages related to not receiving the investment return that a prudent investment manager would
15 have earned for her.

**FOURTH CAUSE OF ACTION**
**(Negligence)**
**(Against All Defendants)**

16
17
18     45.    Plaintiff hereby incorporates the allegations set forth in Paragraphs 1 through 44 as
19 though fully alleged herein.

20     46.    TBIG and BARATTA owed Plaintiff a duty to invest her funds properly, in
21 accordance with the practices that a reasonably prudent investment adviser would employ in
22 handling the investments of a client with similar investment objectives and in similar financial
23 circumstances.

24     47.    As her stock broker, WACHOVIA and WIELAND owed Plaintiff a duty of care that
25 obligated them to insure that Plaintiff's funds were invested properly, in investments that were
26 suitable for her, and generally to follow practices that a reasonable stock broker would follow with
27 respect to like clients in her circumstances with similar investment objectives.

28     48.    TBIG and BARATTA breached their duty of care toward Plaintiff by making highly

-11-
COMPLAINT

1  risky trades with her funds, and by causing her account to incur substantial commission charges and

2  interest costs from the excessive trading and margin debt.

3       49.    WACHOVIA and WIELAND breached their duty of care toward Plaintiff by

4  executing the improper trades for TBIG and BARATTA, without advising Plaintiff of the

5  unsuitable nature of these trades for her, the substantial risks involved with these trades, and the

6  substantial commission and interest charges her account would incur due to the excessive trading

7  and margin debt.

8       50.    As a result of each Defendant's negligent conduct, Plaintiff has sustained damages,

9  in an amount to proven at trial.

10       51.    It was foreseeable that Plaintiff would suffer the type of damages she has suffered as

11  a result of the failure of each Defendant to act as a reasonably prudent investment professional with

12  respect to Plaintiff's account, and each Defendant's actions and omissions were the legal and

13  proximate cause of Plaintiff's damages.

14

15  **FIFTH CAUSE OF ACTION**
**(Violations of California Corporations Code Sections 25,400 et seq.)**
**(Against All Defendants)**

16

17       52.    Plaintiff hereby incorporates the allegations set forth in Paragraphs 1 through 51

18  above as though fully alleged herein.

19       53.    By TBIG, BARATTA, WACHOVIA, and WIELAND's acts and omissions, as set

20  forth above, each defendant violated California Corporations Code Sections 25,400 et seq. in that

21  Defendants induced Plaintiff to purchase fraudulent investments by means of written or oral

22  communications containing false or misleading statements or omissions.

23       54.    As a consequence of Defendants' violations of Corporations Code Sections 25,400

24  et seq. as alleged herein, Plaintiff has been damaged in an amount to be proven at trial, but no less

25  than the sum of $700,000.00.

26       55.    In violating California Corporations Code Sections 25,400 et seq., Defendants have

27  acted with fraud, oppression, and malice, and evidenced a conscious disregard of Plaintiff's rights,

28  whereby Plaintiff is entitled to an award of punitive and exemplary damages according to proof at

1   the time of trial.

2                           **SIXTH CAUSE OF ACTION**
3              **(Violation of California Business & Professions Code**
               **Section 17200, et seq.)**
4                        **[Against All Defendants]**

5          56.    Plaintiff hereby incorporates the allegations set forth in Paragraphs 1 through 55
6   above as though fully alleged herein.

7          57.    The acts of BARATTA, TBIG, WACHOVIA and WIELAND alleged in Paragraphs
8   1 through 55 above were unlawful, unfair and/or fraudulent business acts or practices as defined in
9   California Business & Professions Code Section 17200 et seq.

10         58.    As a direct, proximate and foreseeable result of Defendants' conduct, Plaintiff has
11  been harmed as set forth herein.

12         WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

13         **As to the First, Second, and Fifth Cause of Action:**

14         1)     For general damages according to proof at the time of trial.

15         2)     For interest on Plaintiff's capital from the dates of loss.

16         3)     For exemplary and punitive damages according to proof at the time of trial.

17         4)     For costs of suit herein incurred.

18         5)     For such other and further relief as the Court may deem just and proper.

19         **As to the Third Cause of Action:**

20         1)     For general damages according to proof at the time of trial.

21         2)     For interest on Plaintiffs' capital from the dates of loss.

22         3)     For consequential economic losses according to proof at the time of trial.

23         4)     For costs of suit herein incurred.

24         5)     For such other and further relief as the Court may deem just and proper.

25         **As to the Fourth Cause of Action:**

26         1)     For actual damages in an amount according to proof;

27         2)     For prejudgment interest;

28         3)     For costs of suit incurred herein; and,

                                   -13-
                                 COMPLAINT

4)     For such other and further relief as the Court may deem just and proper.

**As to the Sixth Cause of Action:**

1)     For any order or judgment as may be necessary to prevent the use of the practices alleged herein which constitute unfair competition.

2)     For any order or judgment as may be necessary to restore to Plaintiff any money or property which may have been acquired by means of such unfair competition.

3)     For attorney's fees as provided by California Business & Professions Code section 17200 et seq.; and

4)     For such other and further relief as the Court may deem just and proper.

Dated: July 13, 2007

COOKE KOBRICK & WU LLP

By _____
CHRISTOPHER COOKE

Attorneys for Plaintiff
VIOLETTA ETTARE

-14-
**COMPLAINT**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| Christopher Cooke (SBN 142342)<br>COOKE KOBRICK & WU LLP<br>177 Bovet Road, Suite 600, San Mateo, CA 94402<br>TELEPHONE NO.: (650) 638-2370   FAX NO.: (650) 341-1395<br>ATTORNEY FOR *(Name):* Plaintiff Violetta Ettare | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Santa Clara |
|---|
| STREET ADDRESS: 191 North First Street |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: San Jose, CA 95113 |
| BRANCH NAME: Downtown |

| CASE NAME: |
|---|
| Ettare v. Baratta, et al. |

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: 107CV089814 |
|---|---|---|---|---|
| ☑ Unlimited<br>(Amount demanded exceeds $25,000) | ☐ Limited<br>(Amount demanded is $25,000 or less) | ☐ Counter | ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

**1.** Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | ☐ Antitrust/Trade regulation (03) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | ☐ Other collections (09) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Insurance coverage (18) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | ☐ Other contract (37) | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | **Real Property** | ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| ☐ Other PI/PD/WD (23) | ☐ Eminent domain/Inverse condemnation (14) | |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | **Enforcement of Judgment** |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | ☐ Enforcement of judgment (20) |
| ☐ Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| ☐ Defamation (13) | ☐ Commercial (31) | ☐ RICO (27) |
| ☑ Fraud (16) | ☐ Residential (32) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | **Miscellaneous Civil Petition** |
| ☐ Professional negligence (25) | **Judicial Review** | ☐ Partnership and corporate governance (21) |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Other petition *(not specified above)* (43) |
| **Employment** | ☐ Petition re: arbitration award (11) | |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

**2.** This case ☐ is  ☑ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:

a. ☐ Large number of separately represented parties
b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. ☐ Substantial amount of documentary evidence
d. ☐ Large number of witnesses
e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. ☐ Substantial postjudgment judicial supervision

**3.** Remedies sought *(check all that apply):* a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☑ punitive
**4.** Number of causes of action *(specify):*  Six
**5.** This case ☐ is  ☑ is not  a class action suit.
**6.** If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date:   July 13, 2007

Christopher Cooke
(TYPE OR PRINT NAME)                               (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov
American LegalNet, Inc.

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice— Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

# CIVIL LAWSUIT NOTICE

**Superior Court of California, County of Santa Clara**
**191 N. First St., San Jose, CA 95113**

CASE NUMBER: **107 C V 0 8 9 8 1 4**

ATTACHMENT A

### READ THIS ENTIRE FORM

*PLAINTIFFS* (the person(s) suing): Within 60 days after filing the lawsuit, you must serve each defendant with the *Complaint, Summons,* an *Alternative Dispute Resolution (ADR) Information Sheet,* and a copy of this *Civil Lawsuit Notice,* and you must file written proof of such service.

---

*DEFENDANTS* (the person(s) being sued): **You must do each of the following to protect your rights:**

1. You must file a **written response** to the Complaint, in the clerk's office of the Court, within **30 days** of the date the *Summons* and *Complaint* were served on you;

2. You must send a copy of your written response to the plaintiff; and

3. You must attend the first Case Management Conference.

**Warning: If you do not do these three things, you may automatically lose this case.**

---

*RULES AND FORMS:* You must follow the California Rules of Court (CRC) and the Santa Clara County Superior Court Local Civil Rules and use proper forms. You can get legal information, view the rules and get forms, free of charge, from the Self-Service Center at 99 Notre Dame Avenue, San Jose (408-882-2900 x-2926), or from:

- State Rules and Judicial Council Forms: www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms: www.sccsuperiorcourt.org/civil/rule1toc.htm
- Rose Printing, 49 N. First St., San Jose (408-293-8177)

For other local information, visit the Court's Self-Service website www.scselfservice.org and select "Civil."

*CASE MANAGEMENT CONFERENCE (CMC):* You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC. You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC. You or your attorney must appear at the CMC. You may ask to appear by telephone — see Local Civil Rule 8.

---

*Your Case Management Judge is:* Joseph Huber _____ *DEPT:* 8

*The first CMC is scheduled as follows:* (Completed by Clerk of Court)
　　　　　　*Date:* 11/20/07　*Time:* 1:30 PM *Dept.:* 8

*The next CMC is scheduled as follows:* (Completed by party if the first CMC was continued or has passed)
　　　　　　*Date:* _____ *Time:* _____ *Dept.:* _____

---

*ALTERNATIVE DISPUTE RESOLUTION (ADR):* If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2156) for a list of ADR providers and their qualifications, services, and fees.

*WARNING:* Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

Form CV-5012
Rev. 1/01/04

**CIVIL LAWSUIT NOTICE**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
## ALTERNATIVE DISPUTE RESOLUTION
### INFORMATION SHEET / CIVIL DIVISION

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

*What is ADR?*

ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

*What are the advantages of choosing ADR instead of litigation?*

ADR can have a number of advantages over litigation:

< **ADR can save time.** A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

< **ADR can save money.** Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

< **ADR provides more participation.** Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

< **ADR provides more control and flexibility.** Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

< **ADR can reduce stress.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

*What are the main forms of ADR offered by the Court?*

< Mediation is an informal, confidential process in which a neutral party (the mediator) assists the parties in understanding their own interests, the interests of the other parties, and the practical and legal realities they all face. The mediator then helps the parties to explore options and arrive at a mutually acceptable resolution of the dispute. The mediator does not decide the dispute. The parties do.

< Mediation may be appropriate when:
    < The parties want a non-adversary procedure
    < The parties have a continuing business or personal relationship
    < Communication problems are interfering with a resolution
    < There is an emotional element involved
    < The parties are interested in an injunction, consent decree, or other form of equitable relief

*-over-*

---

**ALTERNATIVE DISPUTE RESOLUTION INFORMATION SHEET/ CIVIL DIVISION**

CV-5003 REV 5/06

< **Arbitration** is a normally informal process in which the neutral (the arbitrator) decides the dispute after hearing the evidence and arguments of the parties. The parties can agree to binding or non-binding arbitration. Binding arbitration is designed to give the parties a resolution of their dispute when they cannot agree by themselves or with a mediator.   If the arbitration is non-binding, any party can reject the arbitrator's decision and request a trial.

   Arbitration may be appropriate when:
   <    The action is for personal injury, property damage, or breach of contract
   <    Only monetary damages are sought
   <    Witness testimony, under oath, is desired
   <    An advisory opinion is sought from an experienced litigator (if a non-binding arbitration)

< **Neutral evaluation** is an informal process in which a neutral party (the evaluator) reviews the case with counsel and gives a non-binding assessment of the strengths and weaknesses on each side and the likely outcome. The neutral can help parties to identify issues, prepare stipulations, and draft discovery plans. The parties may use the neutral's evaluation to discuss settlement.

   Neutral evaluation may be appropriate when:
   <    The parties are far apart in their view of the law or value of the case
   <    The case involves a technical issue in which the evaluator has expertise
   <    Case planning assistance would be helpful and would save legal fees and costs
   <    The parties are interested in an injunction, consent decree, or other form of equitable relief

< **Special masters and referees** are neutral parties who may be appointed by the court to obtain information or to make specific fact findings that may lead to a resolution of a dispute.

   Special masters and referees can be particularly effective in complex cases with a number of parties, like construction disputes.

< **Settlement conferences** are informal processes in which the neutral (a judge or an experienced attorney) meets with the parties or their attorneys, hears the facts of the dispute, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations.

   Settlement conferences can be effective when the authority or expertise of the judge or experienced attorney may help the parties reach a resolution.

*What kind of disputes can be resolved by ADR?*

   Although some disputes must go to court, almost any dispute can be resolved through ADR.  This includes disputes involving business matters; civil rights; corporations; construction; consumer protection; contracts; copyrights; defamation; disabilities; discrimination; employment; environmental problems; harassment; health care; housing; insurance; intellectual property; labor; landlord/tenant; media; medical malpractice and other professional negligence; neighborhood problems; partnerships; patents; personal injury; probate; product liability; property damage; real estate; securities; and sports, among other matters.

*Where can you get assistance with selecting an appropriate form of ADR and a neutral for your case, for information about ADR procedures, or for other questions about ADR?*

   **Contact:**
   Santa Clara County Superior Court          Santa Clara County DRPA Coordinator
   ADR Administrator                          408-792-2704
   408-882-2530

---

**ALTERNATIVE DISPUTE RESOLUTION INFORMATION SHEET/ CIVIL DIVISION**

CV-5003 REV 6/06

```
 1 │ TERRY ROSS, CASB No. 58171
   │ terry.ross@kyl.com
 2 │ AUDETTE PAUL MORALES, CASB No. 216631
   │ audette.morales@kyl.com
 3 │ KEESAL, YOUNG & LOGAN
   │ A Professional Corporation
 4 │ 400 Oceangate, P.O. Box 1730
   │ Long Beach, California  90801-1730
 5 │ Telephone:   (562) 436-2000
   │ Facsimile:    (562) 436-7416
 6 │
 7 │ Attorneys for Defendants
   │ WACHOVIA SECURITIES, LLC and MARK WIELAND
 8 │
```

ENDORSED
FILED

2007 AUG 27  A 11: 43

KIRI TORRE, CLERK OF THE SUPERIOR COURT
COUNTY OF SANTA CLARA, CALIFORNIA
BY _____
          DEPUTY CLERK

```
 9 │            SUPERIOR COURT OF THE STATE OF CALIFORNIA
10 │   FOR THE COUNTY OF SANTA CLARA – UNLIMITED CIVIL JURISDICTION
11 │
12 │ VIOLETTA ETTARE,                    )  Case No. 107CV089814
13 │                                     )
   │                     Plaintiff,      )  Action Filed: July 13, 2007
14 │                                     )
   │           vs.                       )  ASSIGNED FOR ALL PURPOSES TO:
15 │                                     )     Judge Joseph Huber, Dept. 8
   │ JOSEPH E. BARATTA, an individual,   )
16 │ TBIG FINANCIAL SERVICES, INC., form )  NOTICE TO THE CLERK OF THE
   │ of business unknown,                )  SUPERIOR COURT OF THE FILING
17 │ WACHOVIA SECURITIES, LLC, a         )  OF REMOVAL AND REMOVAL OF
   │ Delaware Limited Liability Company, )  ACTION TO FEDERAL COURT
18 │  MARK WIELAND, an individual, and   )
   │ DOES 1-25,                          )
19 │                                     )  BY FAX
   │                     Defendants.     )
20 │ ────────────────────────────────────)
21 │ TO THE CLERK OF THE SUPERIOR COURT FOR THE STATE OF CALIFORNIA
22 │ FOR THE COUNTY OF SANTA CLARA:
23 │
24 │           PLEASE TAKE NOTICE that on August 27, 2007, the Notice of Filing of
25 │ Removal and the Notice of Removal attached hereto as Exhibit "A" were filed in the
26 │ United States District Court for the Northern District of California in connection with
27 │ the above-entitled action.
28 │ ///
```

- 1 -

KYL_LB1109564

EXHIBIT  2

1          PLEASE TAKE FURTHER NOTICE that pursuant to 28 U.S.C. § 1446(d),

2    the filing of the attached Notice of Removal with the federal court effects removal of this

3    action, and this Court may proceed no further unless and until the case is remanded.

4

5    DATED:  August 27, 2007

6                                                    TERRY ROSS
                                                     AUDETTE PAUL MORALES
7                                                    KEESAL, YOUNG & LOGAN
                                                     Attorneys for Defendants
8                                                    WACHOVIA SECURITIES, LLC and
                                                     MARK WIELAND

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KYL_LB1109564

NOT./CLERK/SUPERIOR COURT/FILING/REMOVAL & REMOVAL/ACTION TO FEDERAL COURT

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is Keesal, Young & Logan, 400 Oceangate, P.O. Box 1730, Long Beach, California 90801-1730.

     On August 27, 2007, I served the foregoing documents described as **NOTICE TO THE CLERK OF THE SUPERIOR COURT OF THE FILING OF REMOVAL AND REMOVAL OF ACTION TO FEDERAL COURT** on the parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

Christopher Cooke, Esq.
Cooke Kobrick & Wu LLP
177 Bovet Road
Suite 600
San Mateo, CA 94401
Tel: (650) 638-2370
Fax: (650) 341-1395

    ☒    BY U.S. MAIL: I enclosed the documents in a sealed envelope or package addressed to the above-named persons at the addresses exhibited therewith and (specify one):

    ☐    I deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

    ☒    I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Long Beach, California.

     Executed on August 27, 2007 at Long Beach, California.

     I declare under penalty of perjury under the laws of the State of California and United States of America that the foregoing is true and correct.

     I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

_____
PENNY VINING