NV LEGIS 456 (2007)                FOR EDUCATIONAL USE ONLY                                    Page 34
2007 Nevada Laws Ch. 456 (S.B. 483)
(Publication page references are not available for this document.)

the money is deposited after the entry of a judgment against the purchaser or account owner or the money will not be used by any beneficiary to attend a college or university.

13. All money and other benefits paid pursuant to the order of a court of competent jurisdiction for the support, education and maintenance of a child, whether collected by the judgment debtor or the State.

14. All money and other benefits paid pursuant to the order of a court of competent jurisdiction for the support and maintenance of a former spouse, including the amount of any arrearages in the payment of such support and maintenance to which the former spouse may be entitled.

15. A vehicle for use by you or your dependent which is specially equipped or modified to provide mobility for a person with a permanent disability.

16. A prosthesis or any equipment prescribed by a physician or dentist for you or your dependent.

17. Payments, in an amount not to exceed $16,150, received as compensation for personal injury, not including compensation for pain and suffering or actual pecuniary loss, by the judgment debtor or by a person upon whom the judgment debtor is dependent at the time the payment is received.

18. Payments received as compensation for the wrongful death of a person upon whom the judgment debtor was dependent at the time of the wrongful death, to the extent reasonably necessary for the support of the judgment debtor and any dependent of the judgment debtor.

19. Payments received as compensation for the loss of future earnings of the judgment debtor or of a person upon whom the judgment debtor is dependent at the time the payment is received, to the extent reasonably necessary for the support of the judgment debtor and any dependent of the judgment debtor.

20. Payments received as restitution for a criminal act.

These exemptions may not apply in certain cases such as proceedings to enforce a judgment for support of a child or a judgment of foreclosure on a mechanic's lien. You should consult an attorney immediately to assist you in determining whether your property or money is exempt from execution. If you cannot afford an attorney, you may be eligible for assistance through .................... (name of organization in county providing legal services to the indigent or elderly persons).

## PROCEDURE FOR CLAIMING EXEMPT PROPERTY

If you believe that the money or property taken from you is exempt or necessary for the support of you or your family, you must file with the clerk of the court on a form provided by the clerk a notarized affidavit claiming the exemption. A copy of the affidavit must be served upon the sheriff and the judgment creditor within 8 days after the notice of execution is mailed. The property must be returned to you within 5 days after you file the affidavit unless the judgment creditor files a motion for a hearing to determine the issue of exemption. If this happens, a hearing will be held to determine whether the property or money is exempt. The hearing must be held within 10 days after the motion for a hearing is filed.

IF YOU DO NOT FILE THE AFFIDAVIT WITHIN THE TIME SPECIFIED, YOUR PROPERTY MAY BE SOLD AND THE MONEY GIVEN TO THE JUDGMENT CREDITOR, EVEN IF THE PROPERTY OR MONEY IS EXEMPT.

If you received this notice with a notice of a hearing for attachment and you believe that the money or property which would be taken from you by a writ of attachment is exempt or necessary for the support of you or your family, you are entitled to describe to the court at the hearing why you believe your property is exempt. You may also file a motion with the court for a discharge of the writ of attachment. You may make that motion any time before trial. A hearing will be held on that motion.

Copr. © West 2007 No Claim to Orig. Govt. Works

Case 5:07-cv-04429-JW   Document 26   Filed 10/29/2007   Page 2 of 14

NV LEGIS 456 (2007)                FOR EDUCATIONAL USE ONLY                       Page 35
2007 Nevada Laws Ch. 456 (S.B. 483)
(Publication page references are not available for this document.)

IF YOU DO NOT FILE THE MOTION BEFORE THE TRIAL, YOUR PROPERTY MAY BE SOLD AND THE MONEY GIVEN TO THE PLAINTIFF, EVEN IF THE PROPERTY OR MONEY IS EXEMPT OR NECESSARY FOR THE SUPPORT OF YOU OR YOUR FAMILY.

Sec. 49. NRS 104.9501 is hereby amended to read as follows:

<< NV ST 104.9501 >>

104.9501 1. Except as otherwise provided in subsection 2, if the law of this State governs perfection of a security interest or agricultural lien, the office in which to file a financing statement to perfect the security interest or agricultural lien is:

(a) The office designated for the filing or recording of a mortgage on the real property, if:

(1) The collateral is as-extracted collateral or timber to be cut; or

(2) The financing statement is filed as a fixture filing and the collateral is goods that are or are to become fixtures; or

(b) The office of the Secretary of State in all other cases, including a case in which the collateral is goods that are or are to become fixtures and the financing statement is not filed as a fixture filing.

2. The office in which to file a financing statement to perfect a security interest in collateral, including fixtures, of a transmitting utility is the office of the Secretary of State[, or the county recorder of the appropriate county, as determined pursuant to chapter 105 of NRS]. The financing statement also constitutes a fixture filing as to the collateral indicated in the financing statement which is or is to become fixtures.

Sec. 50. NRS 107.080 is hereby amended to read as follows:

<< NV ST 107.080 >>

107.080 1. Except as otherwise provided in NRS 107.085, if any transfer in trust of any estate in real property is made after March 29, 1927, to secure the performance of an obligation or the payment of any debt, a power of sale is hereby conferred upon the trustee to be exercised after a breach of the obligation for which the transfer is security.

2. The power of sale must not be exercised, however, until:

(a) In the case of any trust agreement coming into force:

(1) On or after July 1, 1949, and before July 1, 1957, the grantor, or his successor in interest, a beneficiary under a subordinate deed of trust or any other person who has a subordinate lien or encumbrance of record on the property, has for a period of 15 days, computed as prescribed in subsection 3, failed to make good the deficiency in performance or payment; or

(2) On or after July 1, 1957, the grantor, or his successor in interest, a beneficiary under a subordinate deed of trust or any other person who has a subordinate lien or encumbrance of record on the property, has for a period of 35 days, computed as prescribed in subsection 3, failed to make good the deficiency in performance or payment;

(b) The beneficiary, the successor in interest of the beneficiary or the trustee first executes and causes to be recorded in the office of the recorder of the county wherein the trust property, or some part thereof, is situated a notice of the breach and of his election to sell or cause to be sold the property to satisfy the obligation; and

(c) Not less than 3 months have elapsed after the recording of the notice.

3. The 15- or 35-day period provided in paragraph (a) of subsection 2 commences on the first day following the day

upon which the notice of default and election to sell is recorded in the office of the county recorder of the county in which the property is located and a copy of the notice of default and election to sell is mailed by registered or certified mail, return receipt requested and with postage prepaid to the grantor, and to the person who holds the title of record on the date the notice of default and election to sell is recorded, at their respective addresses, if known, otherwise to the address of the trust property. The notice of default and election to sell must describe the deficiency in performance or payment and may contain a notice of intent to declare the entire unpaid balance due if acceleration is permitted by the obligation secured by the deed of trust, but acceleration must not occur if the deficiency in performance or payment is made good and any costs, fees and expenses incident to the preparation or recordation of the notice and incident to the making good of the deficiency in performance or payment are paid within the time specified in subsection 2.

4. The trustee, or other person authorized to make the sale under the terms of the trust deed or transfer in trust, shall, after expiration of the 3-month period following the recording of the notice of breach and election to sell, and before the making of the sale, give notice of the time and place thereof by recording the notice of sale and by:

(a) Providing the notice to each trustor and any other person entitled to notice pursuant to this section by personal service or by mailing the notice by registered or certified mail to the last known address of the trustor and any other person entitled to such notice pursuant to this section;

(b) Posting a similar notice particularly describing the property, for 20 days successively, in three public places of the township or city where the property is situated and where the property is to be sold; and

(c) Publishing a copy of the notice three times, once each week for 3 consecutive weeks, in a newspaper of general circulation in the county where the property is situated.

5. Every sale made under the provisions of this section and other sections of this chapter vests in the purchaser the title of the grantor and his successors in interest without equity or right of redemption. A ~~person who purchases property pursuant to this section is not a bona fide purchaser, and the~~ sale made pursuant to this section may be declared void by any court of competent jurisdiction in the county where the sale took place if the:

(a) The trustee or other person authorized to make the sale does not substantially comply with the provisions of this section-;

(b) Except as otherwise provided in subsection 6, an action is commenced in the county where the sale took place within 90 days after the date of the sale; and

(c) A notice of lis pendens providing notice of the pendency of the action is recorded in the office of the county recorder of the county where the sale took place within 30 days after commencement of the action.

6. If proper notice is not provided pursuant to subsection 3 or paragraph (a) of subsection 4 to the grantor, to the person who holds the title of record on the date the notice of default and election to sell is recorded, to each trustor or to any other person entitled to such notice, the person who did not receive such proper notice may commence an action pursuant to subsection 5 within 120 days after the date on which the person received actual notice of the sale.

7. The sale of a lease of a dwelling unit of a cooperative housing corporation vests in the purchaser title to the shares in the corporation which accompany the lease.

Sec. 51. (Deleted by amendment.)

Sec. 52. NRS 87.003 is hereby repealed.

<< Repealed: NV ST 87.003 >>

Approved by the Governor June 13, 2007.

Copr. © West 2007 No Claim to Orig. Govt. Works

NV LEGIS 456 (2007)   FOR EDUCATIONAL USE ONLY   Page 37
2007 Nevada Laws Ch. 456 (S.B. 483)
**(Publication page references are not available for this document.)**

NV LEGIS 456 (2007)

END OF DOCUMENT

Copr. © West 2007 No Claim to Orig. Govt. Works

reinstates the charter, the proceedings must at once be dismissed and all property restored to the officers of the corporation.
    6. Where the assets are distributed, they must be applied in the following manner:
        (a) To the payment of the filing fee, penalties incurred and costs due the State;
        (b) To the payment of the creditors of the corporation; and
        (c) Any balance remaining, to distribution among the stockholders.
    [Part 5:180:1925; NCL § 1808]—(NRS A 1957, 152; 1959, 59; 1973, 1026; 1977, 606; 1979, 185; 1991, 1219; 1995, 1113; 2001, 1360, 3199; 2003, 20th Special Session, 32; 2007, 2645, effective July 1, 2008)

   **NRS 78.180  Defaulting corporations: Conditions and procedure for reinstatement. [Effective through June 30, 2008.]**
    1. Except as otherwise provided in subsections 3 and 4 and NRS 78.152, the Secretary of State shall reinstate a corporation which has forfeited or which forfeits its right to transact business pursuant to the provisions of this chapter and shall restore to the corporation its right to carry on business in this State, and to exercise its corporate privileges and immunities, if it:
        (a) Files with the Secretary of State:
            (1) The list required by NRS 78.150;
            (2) The statement required by NRS 78.153, if applicable; and
            (3) A certificate of acceptance of appointment signed by its resident agent; and
        (b) Pays to the Secretary of State:
            (1) The filing fee and penalty set forth in NRS 78.150 and 78.170 for each year or portion thereof during which it failed to file each required annual list in a timely manner;
            (2) The fee set forth in NRS 78.153, if applicable; and
            (3) A fee of $300 for reinstatement.
    2. When the Secretary of State reinstates the corporation, he shall issue to the corporation a certificate of reinstatement if the corporation:
        (a) Requests a certificate of reinstatement; and
        (b) Pays the required fees pursuant to subsection 8 of NRS 78.785.
    3. The Secretary of State shall not order a reinstatement unless all delinquent fees and penalties have been paid, and the revocation of the charter occurred only by reason of failure to pay the fees and penalties.
    4. If a corporate charter has been revoked pursuant to the provisions of this chapter and has remained revoked for a period of 5 consecutive years, the charter must not be reinstated.
    5. Except as otherwise provided in NRS 78.185, a reinstatement pursuant to this section relates back to the date on which the corporation forfeited its right to transact business under the provisions of this chapter and reinstates the corporation's right to transact business as if such right had at all times remained in full force and effect.
    [6:180:1925; A 1927, 42; NCL § 1809]—(NRS A 1959, 60; 1973, 1027; 1975, 477; 1977, 402; 1985, 234, 1871; 1991, 1220; 1993, 953; 1995, 1114; 1997, 2808; 2001, 1360, 3173, 3199; 2003, 20th Special Session, 33; 2007, 1316, 2416)

   **NRS 78.180  Defaulting corporations: Conditions and procedure for reinstatement. [Effective July 1, 2008.]**
    1. Except as otherwise provided in subsections 3 and 4 and NRS 78.152, the Secretary of State shall reinstate a corporation which has forfeited or which forfeits its right to transact business pursuant to the provisions of this chapter and shall restore to the corporation its right to carry on business in this State, and to exercise its corporate privileges and immunities, if it:
        (a) Files with the Secretary of State:
            (1) The list required by NRS 78.150;
            (2) The statement required by NRS 78.153, if applicable; and
            (3) The information required pursuant to NRS 77.310; and
        (b) Pays to the Secretary of State:
            (1) The filing fee and penalty set forth in NRS 78.150 and 78.170 for each year or portion thereof during which it failed to file each required annual list in a timely manner;
            (2) The fee set forth in NRS 78.153, if applicable; and
            (3) A fee of $300 for reinstatement.
    2. When the Secretary of State reinstates the corporation, he shall issue to the corporation a certificate of reinstatement if the corporation:
        (a) Requests a certificate of reinstatement; and
        (b) Pays the required fees pursuant to subsection 7 of NRS 78.785.
    3. The Secretary of State shall not order a reinstatement unless all delinquent fees and penalties have been paid, and the revocation of the charter occurred only by reason of failure to pay the fees and penalties.
    4. If a corporate charter has been revoked pursuant to the provisions of this chapter and has remained revoked for a period of 5 consecutive years, the charter must not be reinstated.
    5. Except as otherwise provided in NRS 78.185, a reinstatement pursuant to this section relates back to the date on which the corporation forfeited its right to transact business under the provisions of this chapter and reinstates the corporation's right to transact business as if such right had at all times remained in full force and effect.
    [6:180:1925; A 1927, 42; NCL § 1809]—(NRS A 1959, 60; 1973, 1027; 1975, 477; 1977, 402; 1985, 234, 1871; 1991, 1220; 1993, 953; 1995, 1114; 1997, 2808; 2001, 1360, 3173, 3199; 2003, 20th Special Session, 33; 2007, 1316, 2416, 2645, effective July 1, 2008)

   **NRS 78.185  Defaulting corporations: Reinstatement under old or new name; regulations.**
    1. Except as otherwise provided in subsection 2, if a corporation applies to reinstate or revive its charter but its name has been legally reserved or acquired by another artificial person formed, organized, registered or qualified pursuant to the provisions of this title whose name is on file with the Office of the Secretary of State or reserved in the Office of the

Secretary of State pursuant to the provisions of this title, the corporation shall in its application for reinstatement submit in writing to the Secretary of State some other name under which it desires its corporate existence to be reinstated or revived. If that name is distinguishable from all other names reserved or otherwise on file, the Secretary of State shall reinstate the corporation under that new name. Upon the issuance of a certificate of reinstatement or revival under that new name, the articles of incorporation of the applying corporation shall be deemed to reflect the new name without the corporation having to comply with the provisions of NRS 78.385, 78.390 or 78.403.

2. If the applying corporation submits the written, acknowledged consent of the artificial person having a name, or the person who has reserved a name, which is not distinguishable from the old name of the applying corporation or a new name it has submitted, it may be reinstated or revived under that name.

3. For the purposes of this section, a proposed name is not distinguishable from a name on file or reserved name solely because one or the other contains distinctive lettering, a distinctive mark, a trademark or a trade name, or any combination of these.

4. The Secretary of State may adopt regulations that interpret the requirements of this section.

[7:180:1925; NCL § 1810]—(NRS A 1961, 94; 1987, 1057; 1991, 1221; 1993, 953; 1997, 2809; 1999, 1582; 2003, 3086; 2003, 20th Special Session, 33; 2007, 1317, 2417)

## STOCK AND OTHER SECURITIES; DISTRIBUTIONS

**NRS 78.191 "Distribution" defined.** As used in NRS 78.191 to 78.307, inclusive, unless the context otherwise requires, the word "distribution" means a direct or indirect transfer of money or other property other than its own shares or the incurrence of indebtedness by a corporation to or for the benefit of its stockholders with respect to any of its shares. A distribution may be in the form of a declaration or payment of a dividend, a purchase, redemption or other acquisition of shares, a distribution of indebtedness, or otherwise.

(Added to NRS by 1991, 1185)

**NRS 78.195 Issuance of more than one class or series of stock; rights of stockholders.**

1. If a corporation desires to have more than one class or series of stock, the articles of incorporation must prescribe, or vest authority in the board of directors to prescribe, the classes, series and the number of each class or series of stock and the voting powers, designations, preferences, limitations, restrictions and relative rights of each class or series of stock. If more than one class or series of stock is authorized, the articles of incorporation or the resolution of the board of directors passed pursuant to a provision of the articles must prescribe a distinguishing designation for each class and series. The voting powers, designations, preferences, limitations, restrictions, relative rights and distinguishing designation of each class or series of stock must be described in the articles of incorporation or the resolution of the board of directors before the issuance of shares of that class or series.

2. All shares of a series must have voting powers, designations, preferences, limitations, restrictions and relative rights identical with those of other shares of the same series and, except to the extent otherwise provided in the description of the series, with those of other series of the same class.

3. Unless otherwise provided in the articles of incorporation, no stock issued as fully paid up may ever be assessed and the articles of incorporation must not be amended in this particular.

4. Any rate, condition or time for payment of distributions on any class or series of stock may be made dependent upon any fact or event which may be ascertained outside the articles of incorporation or the resolution providing for the distributions adopted by the board of directors if the manner in which a fact or event may operate upon the rate, condition or time of payment for the distributions is stated in the articles of incorporation or the resolution. As used in this subsection, "fact or event" includes, without limitation, the existence of a fact or occurrence of an event, including, without limitation, a determination or action by a person, the corporation itself or any government, governmental agency or political subdivision of a government.

5. The provisions of this section do not restrict the directors of a corporation from taking action to protect the interests of the corporation and its stockholders, including, but not limited to, adopting or signing plans, arrangements or instruments that grant rights to stockholders or that deny rights, privileges, power or authority to a holder of a specified number of shares or percentage of share ownership or voting power.

[11:177:1925; A 1929, 413; 1941, 374; 1931 NCL § 1610]—(NRS A 1961, 195; 1985, 1787; 1987, 577; 1989, 873; 1991, 1221; 1993, 954; 1995, 2097; 1999, 1582; 2001, 1361, 3199; 2003, 3086)

**NRS 78.1955 Establishment of matters regarding class or series of stock by resolution of board of directors.**

1. If the voting powers, designations, preferences, limitations, restrictions and relative rights of any class or series of stock have been established by a resolution of the board of directors pursuant to a provision in the articles of incorporation, a certificate of designation setting forth the resolution and stating the number of shares for each designation must be signed by an officer of the corporation and filed with the Secretary of State. A certificate of designation signed and filed pursuant to this section must become effective before the issuance of any shares of the class or series.

2. Unless otherwise provided in the articles of incorporation or the certificate of designation being amended, if no shares of a class or series of stock established by a resolution of the board of directors have been issued, the designation of the class or series, the number of the class or series and the voting powers, designations, preferences, limitations, restrictions and relative rights of the class or series may be amended by a resolution of the board of directors pursuant to a certificate of amendment filed in the manner provided in subsection 4.

3. Unless otherwise provided in the articles of incorporation or the certificate of designation, if shares of a class or series of stock established by a resolution of the board of directors have been issued, the designation of the class or series, the number of the class or series and the voting powers, designations, preferences, limitations, restrictions and relative rights of the class or series may be amended by a resolution of the board of directors only if the amendment is approved as provided in this subsection. Unless otherwise provided in the articles of incorporation or the certificate of designation, the proposed amendment adopted by the board of directors must be approved by the vote of stockholders holding shares in the corporation

Westlaw.

FLETCHER-CYC § 3844                                                                                                         Page 1
8 Fletcher Cyc. Corp. § 3844

Fletcher Cyclopedia of the Law of Corporations
Current through September 2007 update

William Meade Fletcher

Chapter 45. DE FACTO CORPORATIONS
II. EXISTENCE OF, AND ELEMENTS NECESSARY FOR, DE FACTO CORPORATION
E. EFFECT OF EXPIRATION OR FORFEITURE OF CHARTER

§ 3844. Forfeiture by affirmative act or decree of court

**West's Key Number Digest**

West's Key Number Digest, Corporations 28

No corporation de facto could exist under the common law where the corporation's charter had been revoked by judicial decree or statutory forfeiture.[FN1] Thus, for example, a de jure corporation whose charter had been expressly forfeited, by the terms of the governing statute, for nonpayment of a license tax, could not continue to function as a de facto corporation so as to validate its contracts made during the period of its forfeited charter and suspended powers.[FN2] Although collateral inquiry into de facto existence of a corporation generally was forbidden under the common law,[FN3] acts of corporations whose charters had been forfeited were subject to collateral attack.[FN4]

Since a corporation de facto had an actual and substantial legal existence under the common law, subject only to the right of the state to oust it from the exercise of corporate powers in a direct proceeding brought for that purpose, a judgment of ouster in such a proceeding could not relate back so as to affect the validity of transfers or other acts done or contracts made by it before its corporate existence was questioned. As to such acts, the rules in relation to de facto corporations applied notwithstanding the judgment of ouster.[FN5] For this reason, when a corporation de facto was ousted from the franchise of being a corporation in proceedings by the state, such ouster was no defense to a suit by a creditor of the corporation against shareholders to enforce payment of their subscriptions.[FN6] Nor could such ouster affect the validity of prior assessments by a reclamation district if it was a de facto corporation when they were levied,[FN7] nor destroy all the property held by the supposed corporation at the date of the judgment.[FN8]

Although a corporation dissolved by judicial decree or statutory forfeiture could not exist thereafter as a de facto corporation under the common law,[FN9] courts have interpreted modern corporation statutes providing for the forfeiture of a **delinquent corporation**'s charter as not extinguishing the corporate entity entirely, but leaving it with some characteristics of existence, such as the capacity to sue, and thus treating the entity as analogous to a de facto corporation during the period of its suspension.[FN10] Accordingly, if the applicable statute does not terminate the existence of the corporation upon the forfeiture of its charter, the most equitable approach would be to allow the suspended corporation to enforce its rights, absent any prejudice to the defendant in the action.[FN11] Thus, for example, where a corporation continues to operate, in all respects, as before its dissolution by proclamation for failure to pay taxes, it will be regarded as a de facto corporation in order that it may not avoid its responsibility to creditors simply by filing a new incorporation certificate.[FN12] If the suspended corporation is treated as a de facto corporation, the officers and directors are insulated from personal liability if they operated the corporation under a good-faith belief that its charter was still in effect.[FN13]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 3

[FN1]

**United States**
See Mother Bertha Music, Inc. v. Trio Music Co., 717 F Supp 157 (SD NY 1989).

Where there is a forfeiture of a corporation's charter, such as for nonpayment of franchise taxes under Mississippi statute, there can be neither a de facto nor a de jure corporation inasmuch as there can be no color of corporate existence after the corporate death. Chevron Oil Co. v. Clark, 291 F Supp 552.

**Missouri**
Beavers v. Recreation Assoc. of Lake Shore Estates, Inc., 130 SW3d 702 (Mo App 2004).

**West Virginia**
Peoria Coal Co. v. Ashcraft, 123 W Va 586, 17 SE2d 444; Jones v. Young, 115 W Va 225, 174 SE 885, quoting this treatise.

[FN2]

**California**
Van Landingham v. United Tuna Packers, 189 Cal 353, 208 P 973.

**West Virginia**
Jones v. Young, 115 W Va 225, 174 SE 885, quoting this treatise.

[FN3] See §§ 3846 et seq.

[FN4]

**California**
Van Landingham v. United Tuna Packers, 189 Cal 353, 208 P 973.

**Missouri**
Beavers v. Recreation Assoc. of Lake Shore Estates, Inc., 130 SW3d 702 (Mo App 2004).

**West Virginia**
Jones v. Young, 115 W Va 225, 174 SE 885.

[FN5]

**United States**
Shapleigh v. San Angelo, 167 US 646, 42 L Ed 310, 17 S Ct 957; Miller v. Perris Irr. Dist., 99 F 143.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FLETCHER-CYC § 3844  
8 Fletcher Cyc. Corp. § 3844

Page 3

See Hill v. City of Kahoka, 35 F 32.

**California**
McPhee v. Reclamation Dist. No. 765, 161 Cal 566, 119 P 1077.

**Indiana**
Farnsworth v. Drake, 11 Ind 101.

**Kansas**
Riley v. Garfield Tp., 58 Kan 299, 49 P 85.

**New York**
If plaintiff corporation, following its dissolution through alleged mistake by proclamation of secretary of state for nonpayment of taxes, had continued to carry on its affairs and to exercise its corporate powers in normal manner including entering into contract, it would be considered a de facto corporation and could maintain action on the contract since only the state could question its corporate existence. A.A. Sutain, Ltd. v. Montgomery Ward & Co., 22 AD2d 607, 257 NYS2d 724.

**Ohio**
Society Perun v. City of Cleveland, 43 Ohio St 481, 3 NE 357; Rowland v. Meader Furniture Co., 38 Ohio St 269; Gaff v. Flesher, 33 Ohio St 107, 453.

**Texas**
American Salt Co. v. Heidenheimer, 80 Tex 344, 15 SW 1038.

See also Ewing v. Commissioners' Court of Dallas Co., 83 Tex 663, 19 SW 280; White v. City of Quanah, 27 SW 839 (Tex Civ App).

**Wisconsin**
Gilkey v. Town of How, 105 Wis 41, 81 NW 120.

[FN6]

**Ohio**
Rowland v. Meader Furniture Co., 38 Ohio St 269; Gaff v. Flesher, 33 Ohio St 107, 115.

[FN7]

**California**
McPhee v. Reclamation Dist. No. 765, 161 Cal 566, 119 P 1077.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FLETCHER-CYC § 3844                                                                 Page 4
8 Fletcher Cyc. Corp. § 3844

[FN8]

**Connecticut**
New York, B. & E.R. Co. v. Motil, 81 Conn 466, 71 A 563.

[FN9]

**Colorado**
People v. Zimbelman, 194 Colo 384, 572 P2d 830, citing this treatise.

[FN10]

**United States**
City Communications, Inc. v. City of Detroit, 888 F2d 1081 (CA6 1989) (applying Michigan law).

**Colorado**
People v. Zimbelman, 194 Colo 384, 572 P2d 830.

**Michigan**
City Communications, Inc. v. City of Detroit, 888 F2d 1081 (CA6 1989).

**New York**
D&W Cent. Station Alarm Co., Inc. v. Copymasters, Inc., 122 Misc 2d 453, 471 NYS2d 463 (corporation dissolved for nonpayment of franchise taxes as de facto corporation estopped to deny existence and thereby avoid liability to creditors).

**Ohio**
See GMS Management Co. v. Axe, 5 Ohio Misc 2d 1, 449 NE2d 43.

Where the charter powers of a corporation are cancelled for failure to make its necessary reports and pay taxes, and later the corporation is reinstated by complying with the statute, during the time between such cancellation and reinstatement, the corporation is a de facto corporation, and one having contracted with it as such during such time cannot raise the question of its corporate capacity. Hines v. Board of Education of Cleveland City School Dist., 26 Ohio Misc 2d 15, 499 NE2d 39.
Administrative dissolution of corporations, see §§ 7997, 8112.10.

Reinstatement of corporations subject to administrative dissolution, see §§ 7998, 8112.30.

[FN11]

**United States**
City Communications, Inc. v. City of Detroit, 888 F2d 1081 (CA6 1989) (applying Michigan law).

**Michigan**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FLETCHER-CYC § 3844                                                                                   Page 5
8 Fletcher Cyc. Corp. § 3844

City Communications, Inc. v. City of Detroit, 888 F2d 1081 (CA6 1989) (corporation not losing standing).

**New York**
See Expomotion, Ltd. v. Heidepriem-Santandrea, Inc., 101 Misc 2d 593, 421 NYS2d 520.

**Ohio**
Ohio statutes relating to sanctions imposed on corporations delinquent in payment of taxes were construed to not extinguish corporate entity; accordingly, suspended corporation was given de facto status, and permitted to bring suit while under suspension. GMS Management Co. v. Axe, 5 Ohio Misc 2d 1, 449 NE2d 43.

Effect of reinstatement of corporations subject to administrative dissolution, see §§ 7998, 8112.30.

[FN12]

**New York**
Corporation dissolved by proclamation could not avoid its liability to creditors by claiming that it was a new corporation with no responsibility for preproclamation indebtedness. D&W Cent. Station Alarm Co., Inc. v. Copymasters, Inc., 122 Misc 2d 453, 471 NYS2d 463.

[FN13]

**Connecticut**
Clark-Franklin- Kingston Press, Inc. v. Romano, 12 Conn App 121, 529 A2d 240.

© 2007 Thomson/West

FLETCHER-CYC § 3844

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

AMJUR PLEADING § 806  
61B Am. Jur. 2d Pleading § 806

Page 1

American Jurisprudence, Second Edition  
Database updated July 2007

Pleading  
Laura Dietz, J.D., Rosemary Gregory, J.D., Gary A. Hughes, J.D., Theresa Leming, J.D., Lucas Martin, J.D., Jeanne Philbin, J.D., Kathleen Stratton, J.D., and Dag Ytreberg, J.D.

XIV. Amendments [§§ 745-880]  
D. Amendments Under 28 USCA § 1653 [§§ 801-808]

Topic Summary   Correlation Table   References

## § 806. Time for amending

28 USCA § 1653 does not impose any time limitations on the allowance of amendments correcting jurisdictional allegations, and in fact authorizes such amendments in the appellate courts.[FN40] As a general proposition, defective allegations of jurisdiction may be amended at any stage of the proceeding.[FN41] Amendments have been allowed in the District Courts even after the opposing party has moved to vacate and set aside the judgment on the ground of lack of jurisdiction.[FN42] However, a motion to amend a notice of removal pursuant to 28 USCA § 1653 will be denied if the District Court has already remanded the case to state court as a result of the defendant's failure to make the required jurisdictional allegations, since once the District Court remands a case to state court, it is wholly deprived of jurisdiction or the power to retrieve the case.[FN43]

**CUMULATIVE SUPPLEMENT**

Cases:

Hunting association could not amend complaint against Park District to add a claim that the District circumvented due process by regulating hunting and trapping on District land, as trial court concluded in its summary judgment ruling that the District was acting pursuant to its statutory authority to act as a landowner in posting its land against hunting and trapping, which precluded any claim that the District's actions were an attempt to circumvent due process. U.S.C.A. Const. Amend. 14. Hunters, Anglers and Trappers Ass'n of Vermont, Inc. v. Winooski Valley Park Dist., 913 A.2d 391 (Vt. 2006).

[END OF SUPPLEMENT]

EXHIBIT 4

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

AMJUR PLEADING § 806                                                         Page 2
61B Am. Jur. 2d Pleading § 806

[FN40] § 807.

[FN41] Cleveland Cliffs Iron Co. v. Village of Kinney, 262 F. 980 (D. Minn. 1919), appeal dismissed, 266 F. 888 (C.C.A. 8th Cir. 1920).

**Forms**

Motion and notice—For leave to file amended pleading or to amend pleading. 11 Am. Jur. Pleading and Practice Forms, Federal Practice and Procedure § 255.
Motion and notice—For leave to file amended pleading. Federal Procedural Forms, L. Ed. § 1:237.
Motion—For leave to file amended complaint—To show existence of jurisdictional amount. Federal Procedural Forms, L. Ed. § 1:1039.
Order—Granting leave to file amended pleading. Federal Procedural Forms, L. Ed. § 1:245; 11 Am. Jur. Pleading and Practice Forms, Federal Practice and Procedure § 260.

[FN42] Blanchard v. Terry & Wright, Inc., 331 F.2d 467 (6th Cir. 1964), cert. denied, 379 U.S. 831, 85 S. Ct. 62, 13 L. Ed. 2d 40 (1964).

[FN43] Stanley v. Kelly, 758 F. Supp. 1487 (S.D. Fla. 1991).

© 2007 Thomson/West

AMJUR PLEADING § 806

END OF DOCUMENT

Westlaw.

2007 NV S.B. 242 (NS)         FOR EDUCATIONAL USE ONLY         Page 1
2007 Nevada Senate Bill No. 242, Nevada Seventy-Fourth Regular Session (FULL TEXT - NETSCAN)

NEVADA BILL TEXT

VERSION: Adopted

June 13, 2007
Amodei Care

Senate Bill No. 242-Senators Amodei and Care
CHAPTER..........

AN ACT relating to business entities; enacting the Model Registered Agents Act; revising the provisions relating to the maintenance of a corporation's records at its registered office; establishing provisions relating to the judgment and execution of a stockholder's stock; requiring registered agents to verify certain information concerning the entities represented in certain circumstances; prohibiting registered agents from performing financial transactions in certain circumstances; and providing other matters properly relating thereto. Legislative Counsel's Digest: Existing law requires certain entities to appoint and maintain a resident agent who is located in this State and upon whom all legal process and any notice may be served. (NRS 14.020) This bill changes the term resident agent to registered agent and establishes two types of registered agent, which are called commercial registered agents and noncommercial registered agents.

Section 32 of this bill allows an individual or an entity to become listed as a commercial registered agent by filing with the Secretary of State a statement containing certain information. Under section 31 of this bill, when an entity files with the Secretary of State the document which creates the entity, the entity must include in that document the name of the entity's commercial registered agent, the name and address of the entity's noncommercial registered agent or the title of a position with the entity if service of process is to be sent to the person holding that position. In addition, section 31 requires the entity to file a certificate of acceptance of appointment signed by the registered agent.

Section 37 of this bill provides that any registered agent may resign from the representation of an entity by filing a statement of resignation for the entity and paying the fee required by section 29 of this bill. If a noncommercial registered agent wishes to resign from the representation of all entities, the agent must file a statement of resignation for each entity represented by the agent. However, under section 33 of this bill a commercial registered agent may resign from the representation of all entities by filing with the Secretary of State a termination statement and providing notice of the termination to each entity represented by the agent. Existing law provides that if the name of a resident agent is changed because of certain actions, the resident agent must file a certificate with the Secretary of State and pay a $100 fee. (NRS 78.110, 80.070, 82.193, 86.235, 87.490, 88.331, 88A.540) Section 36 of this bill provides that if a commercial registered agent changes its name, address or type or jurisdiction of organization, the agent must file with the Secretary of State a statement of change. The filing of this statement changes the registered agent information for each entity represented by the agent. Section 35 of this bill provides that if a noncommercial registered agent changes its name or address, the agent must file with the Secretary of State a statement of change for each entity represented by the agent.

Section 40.2 of this bill requires certain registered agents who represent entities that engage in business activities that are regulated pursuant to chapter 604A or 675 of NRS to verify that the entity they represent has the appropriate license from the Commissioner of Financial Institutions. In addition, section 40.2 prohibits a registered agent who represents such an entity from performing any financial transactions on behalf of the represented entity in his capacity as registered agent.

Section 40.4 of this bill authorizes the Commissioner of Financial Institutions to issue an order to a registered agent to cease and refrain from providing certain services if the represented entity does not have the required license. Section 40.4 further provides for an administrative fine of up to $1,000 against a registered agent who fails to

Copr. © West 2007 No Claim to Orig. Govt. Works