TERRY ROSS, CASB No. 58171
terry.ross@kyl.com
AUDETTE PAUL MORALES, CASB No. 216631
audette.morales@kyl.com
KEESAL, YOUNG & LOGAN
A Professional Corporation
400 Oceangate, P.O. Box 1730
Long Beach, California 90801-1730
Telephone:  (562) 436-2000
Facsimile:  (562) 436-7416

Attorneys for Defendants
WACHOVIA SECURITIES, LLC and MARK WIELAND

GILBERT R. SEROTA, No. 75305
gserota@howardrice.com
HOWARD RICE NEMEROVSKI
    CANADY FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4024
Telephone:  (415) 434-1600
Facsimile:  (415) 217-5910

Attorneys for Defendants
JOSEPH E. BARATTA and TBIG FINANCIAL
SERVICES, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| VIOLETTA ETTARE,<br><br>      Plaintiff,<br><br>  vs.<br><br>JOSEPH E. BARATTA, an individual, TBIG FINANCIAL SERVICES, INC., form of business unknown, WACHOVIA SECURITIES, LLC, a Delaware Limited Liability Company, MARK WIELAND, an individual, and DOES 1-25,<br><br>      Defendants. | Case No. C-07-04429-JW (PVT)<br><br>**DEFENDANTS' JOINT REPLY BRIEF IN SUPPORT OF DEFENDANTS' JOINT MOTION FOR LEAVE TO AMEND NOTICE OF REMOVAL**<br><br>[F.R.C.P. 15(a); 28 U.S.C. § 1653]<br><br>Date:  Monday, December 3, 2007<br>Time:  9:00 a.m.<br>Place:  Courtroom 8, 4th Floor |

///

Defendants WACHOVIA SECURITIES, LLC ("Wachovia"), MARK WIELAND ("Wieland"), TBIG FINANCIAL SERVICES, INC. ("TBIG") and JOSEPH E. BARATTA ("Baratta") (collectively, "Defendants") respectfully submit the following Joint Reply Brief in support of Defendants' Joint Motion For Leave to Amend Notice of Removal (the "Motion").

## I.

## INTRODUCTION

Plaintiff VIOLETTA ETTARE's ("Plaintiff" or "Dr. Ettare") Opposition to the Motion provides no reasons why this Court should deny Defendants' request for leave to amend the Notice of Removal filed by Defendants on August 27, 2007 (the "Removal Notice"). First, Dr. Ettare does not even attempt to refute the fact that the Removal Notice's allegations of Wachovia's citizenship are merely defective jurisdictional allegations which can be amended under 28 U.S.C. § 1653. Second, TBIG had the capacity to join in and did join in the Removal Notice when it was filed on August 27, 2007. Finally, through the declarations of Paul Waldman, Kenneth Meister and Joseph Baratta, Defendants have met their burden of proving Dr. Ettare, Wachovia and TBIG[1] were in fact citizens of different states, and therefore completely diverse from one another, when Dr. Ettare filed her state court complaint and when Defendants filed the Removal Notice. For these reasons, this Court should grant Defendants' request for leave to amend the Removal Notice and deny Dr. Ettare's Motion to Remand.

## II.

## STATEMENT OF ISSUES TO BE DECIDED

1.   Whether Dr. Ettare has demonstrated the Removal Notice's allegations of

---

[1] As noted in the Motion, Dr. Ettare did not challenge the Removal Notice's allegations of Wieland and Baratta's citizenship. (Motion 1:27–28 n.1.) Furthermore, Dr. Ettare did not challenge the Removal Notice's allegation of the amount in controversy. Therefore, for the purposes of this Motion, the only issues before this Court relate to Wachovia and TBIG.

Wachovia's citizenship are not defective, jurisdictional allegations which can be amended under 28 U.S.C. § 1653;

2.  Whether Dr. Ettare has demonstrated that TBIG did not have the capacity to join in the Removal Notice;

3.  Whether Dr. Ettare has demonstrated that TBIG did not join in the Removal Notice or consent to removal;

4.  Whether Dr. Ettare has demonstrated Defendants did not meet their burden of proving Dr. Ettare, Wachovia and TBIG were citizens of different states, and therefore completely diverse from one another, when Dr. Ettare filed her complaint and when Defendants filed the Removal Notice.

## III.

## ARGUMENT

### A. PLAINTIFF EFFECTIVELY CONCEDES THE REMOVAL NOTICE'S ALLEGATIONS OF WACHOVIA'S CITIZENSHIP ARE CURABLE UNDER 28 U.S.C. § 1653.

Critically, Dr. Ettare *agrees* defective allegations of jurisdiction are curable under 28 U.S.C. § 1653. (Opp. 3:4–7 (citing Barrow Dev. Co. v. Fulton Ins. Co., 418 F.2d 316, 318 (9th Cir. 1969)); Opp. 3:18–19.) Dr. Ettare recognizes the "pains" taken by Defendants' in emphasizing that the Removal Notice's allegations of Wachovia's citizenship are merely defective, yet makes no effort to oppose this argument. (See Opp. 4:23–26.) In the absence of any meaningful opposition, Dr. Ettare effectively concedes that the Removal Notice's allegations of Wachovia's citizenship are merely defective or technical and thus curable under 28 U.S.C. § 1653. Of course, this Court does not require Dr. Ettare's concession to reach this conclusion; case law such as Barrow (Motion 6:13–7:15) and Muhlenbeck v. KI, LLC, 304 F. Supp. 2d 797, 802 (E.D. Va. 2004) (discussed below), compel this Court to do so. Accordingly, the Defendants should be granted leave to amend the Removal Notice's allegations of Wachovia's citizenship.

**B.  PLAINTIFF DOES NOT OPPOSE DEFENDANTS' SUBMISSION OF PAUL WALDMAN'S, KENNETH MEISTER'S AND JOSEPH BARATTA'S DECLARATIONS IN SUPPORT OF THE MOTION.**

Dr. Ettare does not provide this Court with any reasons why it should not consider Paul Waldman's, Kenneth Meister's and Joseph Baratta's respective declarations in support of the Motion.  Rather, Dr. Ettare awkwardly suggests, "[e]ven if the Defendants have a right to file declarations after they filed [the Removal Notice] . . . these declarations are not relevant to whether [the Defendants] should be permitted leave to amend [the Removal Notice]."  (Opp. 5:5–8.)  In fact, Dr. Ettare has elected to withhold any arguments with respect to these declarations until her reply brief in support of the Motion to Remand.

Dr. Ettare's suggestion that the declarations are not relevant is incorrect for reasons set forth in the Motion.  First, case law clearly confers upon Defendants the right to file these declarations in connection with the Motion and after the Removal Notice's filing. See Harmon v. Oki Sys., 115 F.3d 477, 479–80 (7th Cir. 1997) (Motion 8:4–8); see also, Nat'l Audubon Soc'y v. Dep't of Water & Power of the City of L.A., 496 F. Supp. 499, 503 (E.D. Cal. 1980) (Motion 8:9–15). Second, these declarations are clearly "relevant" to the Motion. Again, whether diversity of citizenship between parties to an action *actually existed* at the time a plaintiff files a complaint and a defendant files a notice of removal is a critical consideration for a court tasked with determining whether a jurisdictional allegation is merely defective for the purposes of amendment under 28 U.S.C. § 1653. See Barrow, 418 F.2d at 318 (Motion 6:13–7:17); see also, Harmon, 115 F.3d at 479 (Motion 7:17–21). Therefore, courts should consider any evidence which "sheds light" on whether complete diversity amongst parties actually exists. See Harmon, 115 F.3d at 479-80 (Motion 8:4–8). Messrs. Waldman's, Meister's and Baratta's declarations illuminate the fact that at all times pertinent to this Court's determination on whether diversity of citizenship existed, Dr. Ettare, Wachovia and TBIG were, in fact, citizens of different states. (Motion 9:1–10:13 and 12:4–13:7.)

///

1  Consequently, Dr. Ettare's withholding her arguments with respect to these declarations until her reply brief in support of the Motion to Remand is a significant lapse. (Opp. 5:8–9.) Since, as demonstrated by these declarations, diversity of citizenship between Dr. Ettare, Wachovia and TBIG actually existed at all pertinent times, this Court should grant Defendants leave to amend the Removal Notice and deny Dr. Ettare's Motion to Remand.

C.  **PLAINTIFF HAS NOT ESTABLISHED THAT TBIG COULD NOT JOIN THE REMOVAL NOTICE, OR DID NOT CONSENT TO REMOVAL AS REQUIRED.**

Dr. Ettare concedes that TBIG reinstated its corporate charter on August 31, 2007, only four days after it joined Defendants' removal notice. She also concedes that Nevada law now expressly gives retroactive effect to the reinstatement of a corporation's charter. Nonetheless, Dr. Ettare is asking the court to ignore these facts, and to find that removal is not appropriate because on August 27, 2007 TBIG was still a revoked corporation. According to Dr. Ettare, TBIG could not have joined in the removal within thirty days of service on the first party.

Dr. Ettare is mistaken for several reasons: (1) TBIG could join in the removal on August 27, 2007 because a corporation continues to exist even if its status is suspended or revoked; (2) TBIG's reinstatement on August 31, 2007 is retroactive to the date it was revoked and all acts during that period are validated; (3) even if TBIG could not have "joined" the removal, which it could, it clearly "consented" to it, as required by the Ninth Circuit; (4) TBIG's reinstatement was within thirty days of its service of Dr. Ettare's complaint, so its joinder at that point would still be timely; (5) Defendants had thirty days from the date removal was sought to cure defects concerning TBIG's joinder, and any defects were cured by TBIG's reinstatement just four days after removal; (6) as TBIG's sole officer and director, Baratta could consent to removal on behalf of TBIG while TBIG's status was revoked, which he did; and (7) to accept Plaintiff's arguments would create an avenue for

///

JT. REPLY BRIEF/SUP./MOT./LEAVE/AMEND NOT./REMOVAL – Case No. C-07-04429-JW (PVT)

plaintiffs to avoid removal simply by naming revoked or suspended companies in state court lawsuits.

### 1. TBIG Could Join Defendants' Removal Despite Its Revoked Status.

As Defendants explained in the Motion and their Opposition to Plaintiff's Motion to Remand, even though TBIG was a revoked corporation, it could join in the Removal Notice because a corporation continues to exist even if its status is suspended or revoked. See Wild v. Subscription Plus, Inc., 292 F.3d 526, 528–29 (7th Cir. 2002); see also Clipper Air Cargo Inc. v. Aviation Products Int'l, Inc., 981 F. Supp. 956 (D.S.C. 1997). Contrary to Dr. Ettare's arguments, Clipper does hold that a revoked corporation retains the right of "prosecuting and defending suits" under Nevada Revised Statute section 78.585. Clipper, 981 F. Supp. at 958–959. Clipper sued Aviation Products International ("API") and Union Bank in connection with a failed $30 million loan. Union Bank sought to remove the matter based on diversity jurisdiction. The court held that even though API's corporate charter had been revoked by the State of Nevada at the time suit was filed, and that according to Nevada law API no longer enjoyed the right to transact business in Nevada, it still had certain rights. In analyzing the rights of a dissolved company, the court found that "Nevada courts would apply section 78.585 to a corporation's post revocation rights," treating it like a dissolved corporation and allowing it to *prosecute and defend suits*. Clipper, 981 F. Supp. at 958–959.

Dr. Ettare has not cited a single case holding that a revoked corporation is prevented from appearing in court to defend itself. She relies on United States ex rel. Gordon Sel-way, Inc. v. Washtenaw County, from the Eastern District of Michigan, for the proposition that a delinquent corporation cannot *initiate* actions. Civil Action No. 95-40354, 1996 Dist. LEXIS 15537, at *4–5, 6–7 (E.D. Mich. Aug. 22, 1996). However, the case does not hold that a delinquent corporation cannot defend itself, and concedes that even an offensive suit can be maintained if the "corporate powers are restored or renewed before the defendant raises a motion to dismiss that action for lack of capacity." Id. at *8. Here, TBIG reinstated its corporate charter four days after it joined in the removal notice, and well before Plaintiff

raised the issue on its motion to remand filed on September 25, 2007. Thus, according to the case cited by Plaintiff, TBIG's reinstatement prior to Plaintiff's challenge makes the issue moot.

### 2. TBIG's Reinstatement Validated Its Acts While It Was A Revoked Corporation.

TBIG's reinstatement on August 31, 2007 is retroactive to the date it was revoked and all acts by TBIG while it was a revoked corporation are validated. NEV. REV. STAT. § 78.180. Nevada law was silent on the effects of reinstatement of a corporate charter until Nevada Revised Statute section 78.180 was amended this summer. While the amendment became effective on October 1, 2007, Nevada law prior to October did not bar retroactivity—it was merely silent—and nothing indicates that Nevada's prior practice was inconsistent with the statute as amended. Very much to the contrary. In Redl v. Secretary of State, the Supreme Court of Nevada discussed the differences between reinstatement of a corporation's charter, which is only available during five years after revocation, and revival of a corporation, which is available even after five years. 120 Nev. 75 (2004). The court held that "a corporation seeking revival may choose the date that the charter becomes effective, which may be any date between the original date of default to the date when the certificate if filed." Id. at 79. If the law in Nevada prior to the 2007 amendments already allowed retroactive effect to the revival of a corporation, it is extremely unlikely it would not allow the same effect to the reinstatement of a corporation—a more simple proceeding than revival. In short, even if TBIG did not have capacity to join Respondent's Removal Notice on August 27, 2007, its revival on August 31, 2007 is retroactive and validated its prior acts.

### 3. TBIG "Consented" To Removal As Required By Law.

Even if TBIG could not have "joined" the removal, it clearly "consented" to it, as is required by the Ninth Circuit. The law in the Ninth Circuit is that all defendants must join *or consent* to removal, or the removing party must explain the absence of a co-defendant's joinder. See Prize Frize, Inc. v. Matrix, Inc., 167 F.3d 1261, 1266 (9th Cir. 1999) (overruled on other grounds by, Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676 (9th Cir. 2006))

(cited by Plaintiff); see also Hernandez v. Six Flags Magic Mountain, Inc., 688 F. Supp. 560, 562 (C.D. Cal. 1988). Even if Plaintiff were correct that TBIG did not "join" the removal on August 27, 2007 because it lacked capacity to sue, it would be hard pressed to claim TBIG did not *consent* to it. In Hernandez, the court held that: "every defendant need not actually sign the same petition. Non-petitioning defendants may simply consent to the removal of the action, thereby satisfying the substantive requirement that the defendants be unanimous in their choice of a federal forum." 688 F. Supp. at 562 (citations omitted). Here, Dr. Ettare cannot dispute that TBIG consented to the removal.

### 4. TBIG's Reinstatement And Joinder Were Timely.

TBIG's reinstatement was within thirty days it was served with Dr. Ettare's complaint, so its joinder at that point would still be timely. Dr. Ettare makes much of the fact that TBIG revived its status "four days after the Notice and Joinder and four days after the removal deadline." See Opp. at 2. But in Hernandez, the court also held that "[i]n accordance with 28 U.S.C. § 1446(b), that consent must be manifested within the thirty day period *beginning from the date upon which the non-petitioning defendant is served with the complaint.*" 688 F. Supp. at 562 (emphasis added and internal citations omitted).[2] Here, even if TBIG's joinder had not been effective on August 27, 2007, it became so on August 31, 2007, when it reinstated its corporate charter, within thirty days of being served with Dr. Ettare's complaint on August 3, 2007.

### 5. TBIG's Cured Any Deficiencies Timely.

Defendants had thirty days from the date removal was sought to cure defects concerning TBIG's joinder, which was accomplished by TBIG's reinstatement only four days after removal. See Fee v. Wal-Mart Stores, Inc., No. 2:06-CV-762-KJD-PAL, 2006 WL 3149366, at *3 (D. Nev. Nov. 2, 2006) (holding that "[i]f all the defendants have not joined in the removal action, and there has been no affirmative explanation for the absence of the

---

[2] Defendants recognize that courts are split on the issue of whether the thirty day period starts to run from service to the first defendant or the joining defendant.

other defendants, the removal notice is facially deficient, and defendants have a thirty day statutory period to cure this defect" and "the thirty-day statutory period begins with the filing of the Notice of Removal, instead of the date that it became apparent that removal was proper."), citing Prize Frize, 167 F.3d at 1266.

### 6. TBIG'S Sole Officer And Director, Baratta, Consented To Removal On Behalf Of TBIG.

Even if Plaintiff were correct, and TBIG could not timely consent to removal, Baratta, as TBIG's sole officer and director, could consent on behalf of the corporation while TBIG's status was revoked, which he did. See Nev. Rev. Stat. § 78.175(5) ("If the charter of a corporation is revoked and the right to transact business is forfeited as provided in subsection 2, all the property and assets of the defaulting domestic corporation must be held in trust by the directors of the corporation as for insolvent corporations")[3]; see also Nev. Rev. Stat. § 78.600 ("When any corporation organized under this chapter shall be dissolved *or cease to exist in any manner whatever*" the directors may be appointed trustees "with power to prosecute and defend, in the name of the corporation . . . and to do all other acts which might be done by the corporation. . . .") (emphasis added).

### 7. Plaintiff's Theory Would Create An Avenue For Avoiding Removal By Naming Revoked Corporations As Defendants.

Finally, should Plaintiff's theories be given credit, this Court would create an avenue for plaintiffs to avoid removal of state actions to federal courts simply by naming a suspended or revoked corporation as a co-defendant, and then arguing that the corporation had no way of consenting to removal. Such a practice would be contrary to sound public policy.

---

[3] Certain subsections of Nevada Revised Statute section 78.178 were recently amended by Nevada Senate Bill No. 402 (2007). However, this bill did not amend subsection (5) of Nevada Revised Statute section 78.178. Since this bill is a voluminous document, Defendants counsel will bring copies to the hearing on the Motion rather than append it to Defendants Notice of Lodgment of Authorities filed concurrently with this reply.

D.  **IF THIS COURT GRANTS DEFENDANTS LEAVE TO AMEND THE REMOVAL NOTICE, IT SHOULD DENY PLAINTIFF'S MOTION TO REMAND.**

When a court is faced with a plaintiff's motion to remand and a defendant's motion for leave to amend a notice of removal, the court should deny the plaintiff's motion if the court grants the defendant leave to amend. See Muhlenbeck v. KI, LLC, 304 F. Supp. 2d 797, 802 (E.D. Va. 2004). In Muhlenbeck, a limited liability company defendant's notice of removal only alleged it was an Alaskan native limited liability company with its principal place of business in Colorado Springs, Colorado. 304 F. Supp. 2d at 798. In moving to remand, the plaintiff argued the defendant failed to allege the citizenship of each of the defendant's owners. Id. The defendant filed both a motion for leave to amend under 28 U.S.C. § 1653 and an opposition to the plaintiff's motion to remand. Id. at 798–99. In the defendant's amended notice of removal, it alleged its two owners were Alaskan corporations with Alaskan principal places of business. Id. at 799. The court held a hearing on both motions. Id.

The Muhlenbeck court determined the correction of the defendant's notice of removal's defect "required only a technical amendment, because the undisputed citizenship of the two entities which comprise [the defendant] is Alaska." 304 F. Supp. 2d at 802. In light of this determination, the court granted the defendant leave to amend its notice of removal under 28 U.S.C. § 1653 and *denied* the plaintiff's motion to remand. Id.

Therefore, if this Court grants Defendants leave to amend the Removal Notice, then this Court's should deny Dr. Ettare's Motion to Remand. This Court should grant Defendants leave to amend the Removal Notice because: (1) the Removal Notice's allegations of Wachovia's citizenship are allegations which can be amended under 28 U.S.C. § 1653, (2) TBIG had the capacity to join in the Removal Notice, (3) TBIG did join in the Removal Notice, and (4) Defendants have met their burden of proving Dr. Ettare, Wachovia and TBIG were citizens of different states, and therefore, completely diverse at all pertinent

///

times. Accordingly, this Court should grant Defendants leave to amend the Removal Notice and deny Dr. Ettare's Motion to Remand.

## IV.

## CONCLUSION

Dr. Ettare's opposition to the Motion provides this Court with absolutely no reasons to deny Defendants' request for leave to amend the Removal Notice. It is undisputed that the Removal Notice's allegations of Wachovia's citizenship are merely defective jurisdictional allegations which can be amended under 28 U.S.C. § 1653. Additionally, TBIG had the capacity to join in and did join in the Removal Notice when it was filed on August 27, 2007. Furthermore, Defendants have met their burden of proving Dr. Ettare, Wachovia and TBIG were citizens of different states at all pertinent times. Finally, Dr. Ettare challenges neither the Removal Notice's allegations of Wieland's and Baratta's citizenship nor its allegations of the amount in controversy. Therefore, this Court should grant Defendants' request for leave to amend the Removal Notice and deny Dr. Ettare's Motion to Remand.

Respectfully submitted,

DATED: November ____, 2007

/s/ Terry Ross
TERRY ROSS
AUDETTE PAUL MORALES
KEESAL, YOUNG & LOGAN
Attorneys for Defendants
WACHOVIA SECURITIES, LLC and
MARK WIELAND

DATED: November ____, 2007

/s/
GILBERT R. SEROTA
HOWARD RICE NEMEROVSKI CANADY
  FALK & RABKIN
Attorneys for Defendants
JOSEPH E. BARATTA and TBIG
FINANCIAL SERVICES, INC.