1  TERRY ROSS, CASB No. 58171
   terry.ross@kyl.com
2  AUDETTE PAUL MORALES, CASB No. 216631
   audette.morales@kyl.com
3  KEESAL, YOUNG & LOGAN
   A Professional Corporation
4  400 Oceangate, P.O. Box 1730
   Long Beach, California  90801-1730
5  Telephone:   (562) 436-2000
   Facsimile:    (562) 436-7416
6
7  Attorneys for Defendants
   WACHOVIA SECURITIES, LLC and MARK WIELAND
8
9              **UNITED STATES DISTRICT COURT**
10          **NORTHERN DISTRICT OF CALIFORNIA**
11                  **SAN JOSE DIVISION**
12
13  VIOLETTA ETTARE,                    ) Case No.: C-07-4429-JW (PVT)
                                        )
14                      Plaintiff,      )
                                        )
15          vs.                         ) **MEMORANDUM OF POINTS AND**
                                        ) **AUTHORITIES IN SUPPORT OF**
16  JOSEPH E. BARATTA, an individual,   ) **DEFENDANTS' MOTION TO COMPEL**
    TBIG FINANCIAL SERVICES, INC., form ) **ARBITRATION AND STAY**
17  of business unknown, WACHOVIA       ) **PROCEEDINGS**
    SECURITIES, LLC, a Delaware Limited )
18  Liability Company, MARK WIELAND, an ) Date:   Monday, May 5, 2008
    individual, and DOES 1-25,          ) Time:   9:00 a.m.
19                                      ) Place:  Courtroom 8, 4th Floor
                                        )
20                      Defendants.     )
                                        )
21  _____)
22  ///
23
24
25
26
27
28  ///

KYL_LB1109818

1

## TABLE OF CONTENTS

2

**Page**

3  TABLE OF AUTHORITIES ............................................................................. ii

4  I.      INTRODUCTION.............................................................................1

5  II.     STATEMENT OF FACTS..................................................................1

6          A.      PLAINTIFF DR. VIOLETTA ETTARE.........................................1

7          B.      PLAINTIFF EXECUTED ACCOUNT AGREEMENTS
                   CONTAINING ARBITRATION CLAUSES. ................................2
8
           C.      PLAINTIFF REFUSES TO VOLUNTARILY SUBMIT HER CLAIMS
9                  TO ARBITRATION. ...........................................................10

10         D.      ALL OF PLAINTIFF'S CLAIMS AGAINST DEFENDANTS
                   CONCERN OR ARISE FROM HER WACHOVIA ACCOUNT. ...................12
11
   III.    MOTION TO COMPEL ARBITRATION .................................................13
12
           A.      PLAINTIFF'S CLAIMS MUST BE COMPELLED TO
13                 ARBITRATION PURSUANT TO FEDERAL LAW AND THE
                   FEDERAL ARBITRATION ACT. ...........................................13
14
           B.      PLAINTIFF'S CLAIMS AGAINST *ALL* DEFENDANTS MUST BE
15                 COMPELLED TO ARBITRATION.............................................16

16                 1.      Non-Signatories Can Be Bound By the Terms of an
                           Arbitration Agreement. ...........................................16
17
                   2.      Agency and Equitable Estoppel Theories Bind All of
18                         the Parties to Arbitration. ......................................18

19         C.      THE EXISTENCE OF PARTIES OR CLAIMS NOT SUBJECT TO
                   AN ARBITRATION AGREEMENT DOES NOT DESTROY OTHER
20                 PARTIES' RIGHT TO ARBITRATE. .........................................19

21  IV.    MOTION FOR ORDER STAYING PROCEEDINGS .................................19

22  V.     CONCLUSION..................................................................................20

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS – Case No.: C-07-4429-JW (PVT)

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## FEDERAL CASES

<u>A/S Custodia v. Lessin International, Inc.</u>,
    503 F.2d 318 (2d Cir. 1974)......................................................................................16

<u>Barrowclough v. Kidder, Peabody & Co, Inc.</u>,
    752 F.2d 923 (3d Cir. 1985)........................................................................................17

<u>Bayma v. Smith Barney, Harris, Upham & Co., Inc.</u>,
    784 F.2d 1023 (9th Cir. 1986).....................................................................................14

<u>Bridas S.A.P.I.C. v. Government of Turkmenistan</u>,
    345 F.3d 347 (5th Cir. 2003).......................................................................................18

<u>Comer v. Micor, Inc.</u>,
    436 F.3d 1098 (9th Cir. 2006).....................................................................................18

<u>Dean Witter Reynolds, Inc. v Byrd</u>,
    470 U.S. 213 (1985) ....................................................................................13, 15, 19

<u>Fisher v. A.G. Becker Paribas Inc.</u>,
    791 F.2d 691 (9th Cir. 1986).......................................................................................13

<u>Fisser v. International Bank</u>,
    282 F.2d 231 (2d Cir. 1960)........................................................................................16

<u>Gilmer v. Interstate/Johnson Lane Corp.</u>,
    500 U.S. 20 (1991) ......................................................................................................14

<u>Hall v. Prudential-Bache Sec. Inc.</u>,
    662 F. Supp. 468 (C.D. Cal. 1987) .............................................................................14

<u>Letizia v. Prudential-Bache Sec. Inc.</u>,
    802 F.2d 1185 (9th Cir. 1986)...............................................................................14, 18

<u>Moses H. Cone Mem'l Hospital v. Mercury Construction Corp.</u>,
    460 U.S. 1 (1983) ........................................................................................................14

<u>Shearson/American Express Inc. v. McMahon</u>,
    482 U.S. 220 (1987) ..............................................................................................14, 15

<u>Simula, Inc. v. Autolive, Inc.</u>,
    175 F.3d 716 (9th Cir. 1999) ......................................................................................15

KYL_LB1109818

Subway Equip. Leasing Corp. v. Forte,
    169 F.3d 324 (5th Cir. 1999) ........................................................................20

Wagner v. Stratton Oakmont, Inc.,
    83 F.3d 1046 (9th Cir. 1996) .......................................................................20

Webb v. R. Rowland & Co., Inc.,
    800 F.2d 803 (8th Cir. 1986) .......................................................................14

**STATE CASES**

Berman v. Dean Witter & Co. Inc.,
    44 Cal. App. 3d 999 (1975) ....................................................................16, 17

Contra Costa v. Kaiser Foundation Health Plan Inc.,
    47 Cal. App. 4th 237 (1996) ........................................................................17

Metalclad Corp. v. Ventana Environmental Organization Partnership,
    109 Cal. App. 4th 1705 (2003) ....................................................................18

Mormile v. Sinclair,
    21 Cal. App. 4th 1008 (1994) .....................................................................18

Tonetti v. Shirley,
    173 Cal. App. 3d 1144 (1985) .....................................................................14

**FEDERAL STATUTES**

9 U.S.C. §§ 1–16 .................................................................................................13

9 U.S.C. § 2 (1982) .............................................................................................14

9 U.S.C. § 3 ............................................................................................2, 19, 20

9 U.S.C. § 4 ...........................................................................................................2

**STATE STATUTES**

Code of Civil Procedure section 1281.2 ...........................................................13

KYL_LB1109818

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS – Case No.: C-07-4429-JW (PVT)

# I.

## INTRODUCTION

Defendants WACHOVIA SECURITIES, LLC ("Wachovia") and MARK WIELAND ("Mr. Wieland") (collectively, "Defendants") move this Court for an order compelling arbitration of all claims and issues asserted in the Complaint filed by Dr. VIOLETTA ETTARE ("Dr. Ettare" or "Plaintiff"), through her counsel, with the Santa Clara Superior Court on or about July 13, 2007 and pending before this Court.[1] Arbitration of this matter is proper before the Financial Industry Regulatory Authority ("FINRA") (formerly the National Association of Securities Dealers Dispute Resolution, Inc. ("NASD") and the member regulation, enforcement and arbitration functions of the New York Stock Exchange ("NYSE")).[2] Defendants specifically request that this Court compel Plaintiff's claims to binding arbitration before a panel of arbitrators appointed by FINRA.

Defendants file this Motion in lieu of filing an answer to the Complaint pursuant to section 4 of the Federal Arbitration Act, 9 U.S.C. § 4. The claims and issues presented in Plaintiff's Complaint must be arbitrated pursuant to the parties' agreement and applicable law. Further, Defendants move for an order staying these proceedings pursuant to section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, pending the outcome of the arbitration.

# II.

## STATEMENT OF FACTS

### A.    PLAINTIFF DR. VIOLETTA ETTARE.

Dr. Ettare is a 58-year-old doctor and, during the time she invested with

---

[1] Defendants removed the action to this Court on or about August 27, 2007.

[2] FINRA was formed in July 2007 through the consolidation of NASD and the member regulation, enforcement and arbitration functions of the NYSE.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS – Case No.: C-07-4429-JW (PVT)

1    Defendants, was owner of Ettare Pain Treatment Clinics in Pleasanton, California.

2    Dr. Ettare received a PhD in Architecture from the University of Florence, Italy in 1978.

3    She co-founded an organization, Biofeedback Associates of California, and developed

4    Muscle Learning Therapy.  Dr. Ettare has edited a chapter written for "Clinical EMG for

5    Surface Recordings: Volume 2" and also contributed to a 2001 study regarding muscle

6    learning therapy.  She is also an internationally known speaker and, in 2004, partici-

7    pated in several lecture tours in Europe.

8            Dr. Ettare's allegations against Defendants related to a trading account[3]

9    she opened with First Union Securities (which later merged with Wachovia Securities,

10   LLC (collectively, "First Union/Wachovia" or "Wachovia")) in November 2001.  See

11   Complaint; Declaration of Veronica T. Harnett ("Hartnett Decl."), ¶¶ 5–6, Exhibits "A"–

12   "D"; Declaration of Mark Wieland ("Wieland Decl."), ¶ 3, Exhibit "A."  Specifically,

13   Dr. Ettare alleges that her Registered Investment Advisor, Joseph Baratta

14   ("Mr. Baratta"), and his investment advisory firm called TBIG Financial Services, Inc.

15   ("TBIG"), invested in speculative and unsuitable trades and utilized risky strategies in

16   her account.  See Complaint.  Although Mr. Wieland had no discretionary authority over

17   Dr. Ettare's account, she alleges that Wachovia and Mr. Wieland assisted Mr. Baratta

18   and TBIG in these actions.  Id.

19   **B.    PLAINTIFF EXECUTED ACCOUNT AGREEMENTS CONTAINING**

20   **ARBITRATION CLAUSES.**

21           In connection with opening and maintaining her First Union/Wachovia

22   account, Dr. Ettare signed new account documents and client agreements, including a

23   First Union Account Application, a First Union Option Account Information and

24   Agreement, a Wachovia Account Application, and a Wachovia Option Account

25   Information and Agreement.  Hartnett Decl., ¶¶ 5–6, Exhibits "A"–"D"; Wieland Decl.,

26   ¶¶ 4–8, Exhibit "A."  Each of the customer agreements contains a clause requiring that

27   _____

28   [3] Dr. Ettare later opened a money market account with Defendants at Wachovia.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS – Case No.: C-07-4429-JW (PVT)

1   Dr. Ettare resolve "all claims" against First Union/Wachovia by arbitration.  Hartnett

2   Decl., ¶ 6, Exhibits "A"–"D"; Wieland Decl., Exhibit "A."

3           The arbitration clause in each agreement is plain, broadly worded and

4   clearly marked.  For instance, the First Union Account Application, which was signed by

5   Dr. Ettare on November 17, 2001, states, "I acknowledge that I have read, understand,

6   and agree to the terms in the [First Union] General Account Agreement and Disclosure

7   which contains a pre-dispute Arbitration clause."  Hartnett Decl., ¶ 6, Exhibit "A";

8   Wieland Decl., Exhibit "A."  Paragraph 17 of the First Union General Account

9   Agreement and Disclosure requires that Dr. Ettare arbitrate all controversies arising

10  out of Dr. Ettare's business with First Union/Wachovia or the First Union General

11  Account Agreement and Disclosure.  Specifically, paragraph 17 provides, in capital

12  letters and boldface type:

**17.   ARBITRATION**

**ARBITRATION - - THE FOLLOWING INFORMATION
CONCERNS ARBITRATION OF CONTROVERSIES
PROVIDED FOR IN THE NEXT PARAGRAPH:**

- **ARBITRATION IS FINAL AND BINDING ON THE
  PARTIES.**

- **THE PARTIES ARE WAIVING THEIR RIGHT TO
  SEEK REMEDIES IN COURT, INCLUDING THE
  RIGHT TO JURY.**

- **PRE-ARBITRATION DISCOVERY IS GENERALLY
  MORE LIMITED THAN AND DIFFERENT FROM
  COURT PROCEEDINGS.**

- **THE ARBITRATORS' AWARD IS NOT REQUIRED TO
  INCLUDE FACTUAL FINDINGS OR LEGAL REASON-
  ING AND ANY PARTY'S RIGHT TO APPEAL OR TO
  SEEK MODIFICATION OF RULINGS BY THE ARBI-
  TRATORS IS STRICTLY LIMITED.**

- **THE PANEL OF ARBITRATORS WILL TYPICALLY
  INCLUDE A MINORITY OF ARBITRATORS WHO
  WERE OR ARE AFFILIATED WITH THE SECURITIES
  INDUSTRY.**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

- **NO PERSON SHALL BRING A PUTATIVE OR CERTI-FIED CLASS ACTION TO ARBITRATION, NOR SEEK TO ENFORCE ANY PRE-DISPUTE ARBITRATION AGREEMENT AGAINST ANY PERSON WHO HAS INITIATED IN COURT A PUTATIVE CLASS ACTION; WHO IS A MEMBER OF A PUTATIVE CLASS WHO HAS NOT OPTED OUT OF THE CLASS WITH RESPECT TO ANY CLAIMS ENCOMPASSED BY THE PUTATIVE CLASS ACTION UNTIL:**

   **(I)   THE CLASS CERTIFICATION IS DENIED;**

   **(II)  THE CLASS IS DECERTIFIED; OR**

   **(III) THE CUSTOMER IS EXCLUDED FROM THE CLASS BY THE COURT.**

**SUCH FORBEARANCE TO ENFORCE AN AGREEMENT TO ARBITRATE SHALL NOT CONSTITUTE A WAIVER OF ANY RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT STATED HEREIN.**

**ARBITRATION AGREEMENT:  YOU AGREE THAT ANY CONTROVERSY ARISING OUT OF OUR BUSINESS OR THIS AGREEMENT SHALL BE SUBMITTED TO ARBI-TRATION CONDUCTED BEFORE THE NEW YORK STOCK EXCHANGE, INC. OR ANY OTHER NATIONAL SECURITIES EXCHANGE ON WHICH A TRANSAC-TION GIVING RISE TO THE CLAIM TOOK PLACE (AND ONLY BEFORE SUCH EXCHANGE) OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC., AS YOU MAY ELECT AND IN ACCORDANCE WITH THE RULES OBTAINING THE SELECTED ORGANIZATION.  ARBITRATION MUST BE COM-MENCED BY SERVICE UPOM THE OTHER PARTY OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE, THEREIN ELECTING THE ARBITRATION TRIBUNAL. IN THE EVENT YOU DO NOT MAKE SUCH ELECTION WITHIN FIVE (5) DAYS OF SUCH DEMAND OR NOTICE, YOU AUTHORIZE US TO DO SO ON YOUR BEHALF.  ANY ARBITRATION UNDER THIS AGREE-MENT SHALL BE CONDUCTED PURSUANT TO THE FEDERAL ARBITRATION ACT AND THE LAWS OF THE COMMONWEALTH OF VIRGINIA.**

25   (Emphasis in original.)  Hartnett Decl., ¶ 6, Exhibit "A"; Wieland Decl., Exhibit "A,"

26   copies of the First Union Account Application signed by Dr. Ettare and the First Union

27   General Account Agreement and Disclosure.

28   ///

KYL_LB1109818

1    Similarly, the First Union Option Account Information and Agreement,

2  which was also signed by Dr. Ettare on November 17, 2001, states the following just

3  above Plaintiff's signature:

**I/WE ACKNOWLEDGE THAT THIS AGREEMENT
CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE
AT PARAGRAPH 18 AND I/WE HAVE RECEIVED A
COPY OF THIS AGREEMENT.**

7  Hartnett Decl., ¶ 6, Exhibit "B"; Wieland Decl., Exhibit "A." Paragraph 18 of the First

8  Union Option Account Information and Agreement further requires that Dr. Ettare

9  arbitrate all controversies arising out of Dr. Ettare's dealings with First

10  Union/Wachovia. Paragraph 18 provides, in capital letters and boldface type:

**18.    ARBITRATION - THE FOLLOWING INFORMATION
CONCERNS ARBITRATION OF CONTROVERSIES
PROVIDED FOR IN THE NEXT PARAGRAPH:**

- **ARBITRATION IS FINAL AND BINDING ON THE PARTIES.**

- **THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY.**

- **PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.**

- **THE ARBITRATORS' AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASON-ING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBI-TRATORS IS STRICTLY LIMITED.**

- **THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.**

- **NO PERSON SHALL BRING A PUTATIVE OR CERTI-FIED CLASS ACTION TO ARBITRATION, NOR SEEK TO ENFORCE ANY PRE-DISPUTE ARBITRATION AGREEMENT AGAINST ANY PERSON WHO HAS**

- 5 -

KYL_LB1109818

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS – Case No.: C-07-4429-JW (PVT)

**INITIATED IN COURT A PUTATIVE CLASS ACTION; WHO IS A MEMBER OF A PUTATIVE CLASS WHO HAS NOT OPTED OUT OF THE CLASS WITH RESPECT TO ANY CLAIMS ENCOMPASSED BY THE PUTATIVE CLASS ACTION UNTIL:**

**(I)   THE CLASS CERTIFICATION IS DENIED;**

**(II)  THE CLASS IS DECERTIFIED; OR**

**(III) THE CUSTOMER IS EXCLUDED FROM THE CLASS BY THE COURT.**

**SUCH FORBEARANCE TO ENFORCE AN AGREEMENT TO ARBITRATE SHALL NOT CONSTITUTE A WAIVER OF ANY RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT STATED HEREIN.**

**ARBITRATION AGREEMENT:  YOU AGREE THAT ANY CONTROVERSY ARISING OUT OF OUR BUSINESS OR THIS AGREEMENT SHALL BE SUBMITTED TO ARBI-TRATION CONDUCTED BEFORE THE NEW YORK STOCK EXCHANGE, INC. OR ANY OTHER NATIONAL SECURITIES EXCHANGE ON WHICH A TRANSAC-TION GIVING RISE TO THE CLAIM TOOK PLACE (AND ONLY BEFORE SUCH EXCHANGE) OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC., AS YOU MAY ELECT AND IN ACCORDANCE WITH THE RULES OBTAINING THE SELECTED ORGANIZATION.  ARBITRATION MUST BE COM-MENCED BY SERVICE UPOM THE OTHER PARTY OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE, THEREIN ELECTING THE ARBITRATION TRIBUNAL. IN THE EVENT YOU DO NOT MAKE SUCH ELECTION WITHIN FIVE (5) DAYS OF SUCH DEMAND OR NOTICE, YOU AUTHORIZE US TO DO SO ON YOUR BEHALF.  ANY ARBITRATION UNDER THIS AGREE-MENT SHALL BE CONDUCTED PURSUANT TO THE FEDERAL ARBITRATION ACT AND THE LAWS OF THE COMMONWEALTH OF VIRGINIA.**

(Emphasis in original.)  Hartnett Decl., ¶ 6, Exhibit "B," a copy of the First Union Option

Account Information and Agreement signed by Dr. Ettare; Wieland Decl., Exhibit "A."

In March 2006, Dr. Ettare executed a Wachovia Account Application

relating to her First Union/Wachovia account.  Hartnett Decl., ¶ 6, Exhibit "C"; Wieland

Decl., Exhibit "A."  The following statement appears on page 3 of the Wachovia Account

Application, just above Plaintiff's signature:

- 6 -

KYL_LB1109818

1 **THIS AGREEMENT CONTAINS A PREDISPUTE**
**ARBITRATION CLAUSE LOCATED ON PAGE 3 UNDER**
2 **THE HEADER "ARBITRATION," AND BY REFERENCE,**
**ON PAGE 1 OF THE <u>WS GENERAL ACCOUNT</u>**
3 **<u>AGREEMENT AND DISCLOSURE DOCUMENT</u>. THE**
**UNDERSIGNED HEREBY ACKNOWLEDGES RECEIPT**
4 **OF THIS AGREEMENT AND THE <u>WS GENERAL</u>**
**<u>ACCOUNT AGREEMENT AND DISCLOSURE</u>**
5 **<u>DOCUMENT</u>.**

6 (Emphasis in original.)  Hartnett Decl., ¶ 6, Exhibit "C"; Wieland Decl., Exhibit "A."

7  The pre-dispute arbitration clause and agreement in the Wachovia Account

8 Application states, in boldface type:

9 **ARBITRATION**

10 **ARBITRATION DISCLOSURES:**
**This Agreement contains a predispute arbitration**
11 **clause.  By signing an arbitration agreement, the**
**parties agree as follows:**
12

13  • **All of the parties to this Agreement are giving up the**
  **right to sue each other in court, including the right to**
14  **a trial by jury, except as provided by the rules of the**
  **arbitration forum in which the claim is filed.**

15  • **Arbitration awards are generally final and binding; a**
  **party's ability to reverse or modify an arbitration**
16  **award is very limited.**

17  • **The ability of the parties to obtain documents, witness**
  **statements and other discovery is generally more**
18  **limited in arbitration than in court proceedings.**

19  • **The arbitrators do not have to explain the reason(s)**
  **for their award.**
20

21  • **The panel of arbitrators will typically include a**
  **minority of arbitrators who were or are affiliated with**
22  **the securities industry.**

23  • **The rules of some arbitration forums may impose time**
  **limits for brining a claim in arbitration.  In some**
24  **cases, a claim that is ineligible for arbitration may be**
  **brought in court.**

25  • **The rules of the arbitration forum in which the claim**
  **is filed, and any amendments thereto, shall be incor-**
26  **porated into this Agreement.**

27 **No person shall bring a putative or certified class**
**action to arbitration, nor seek to enforce any pre-**
28 **dispute arbitration agreement against any person who**

1    **has initiated in court a putative class action; or who is a**
2    **member of a putative class who has not opted out of the**
     **class with respect to any claims encompassed by the**
     **putative class action until:**
3
4    **(i)    the class certification is denied; or**

5    **(ii)   the class is decertified; or**

6    **(iii)  the client is excluded from the class by the court.**

7    **Such forbearance to enforce an agreement to arbitrate**
     **shall not constitute a waiver of any rights under this**
     **Agreement except to the extent stated herein.**
8
     **Arbitration Provision:**
9
     **It is agreed that all controversies or disputes which**
10   **may arise between you and WSLLC (including contro-**
     **versies or disputes with WSLLC's clearing agent),**
11   **(collectively, "us") concerning any transaction or the**
     **construction, performance or breach of this Agreement**
12   **or any other agreement between us, whether entered**
     **into prior to, on, or subsequent to the date of this**
13   **Agreement, including any controversy concerning**
     **whether an issue is arbitrable, shall be determined by**
14   **arbitration conducted before, and only before, an arbi-**
     **tration panel set up by either the National Association**
15   **of Securities Dealers, Inc. ("NASD") or the New York**
     **Stock Exchange, Inc. ("NYSE"), in accordance with**
16   **their respective arbitration procedures.  Any of us may**
     **initiate arbitration by filing a written claim with the**
17   **NASD or the NYSE.  Any arbitration under this**
     **Agreement will be conducted pursuant to the Federal**
18   **Arbitration Act and the Laws of the Commonwealth of**
     **Virginia.**
19

20   (Emphasis in original.)  Hartnett Decl., ¶ 6, Exhibit "C"; Wieland Decl., Exhibit "A," a

21   copy of the Wachovia Account Application signed by Dr. Ettare.

22          Finally, Dr. Ettare signed a Wachovia Option Account Information and

23   Agreement in June 2006.  Hartnett Decl., ¶ 6, Exhibit "D"; Wieland Decl., Exhibit "A."

24   The following statement appears on the front page of the Wachovia Option Account

25   Information and Agreement, just above Dr. Ettare's signature:

26          **THIS AGREEMENT CONTAINS A PREDISPUTE**
            **ARBITRATION CLAUSE LOCATED ON PAGE 2,**
27          **PARAGRAPH 18.  THE UNDERSIGNED HEREBY**
            **ACKNOWLEDGES RECEIPT OF A COPY OF THIS**
28          **AGREEMENT.**

1    (Emphasis in original.)  Hartnett Decl., ¶ 6, Exhibit "D"; Wieland Decl., Exhibit "A."

2           Paragraph 18 of the Wachovia Option Account Information and Agreement

3    provides as follows, in boldface type:

4        **18.    ARBITRATION**

5        **ARBITRATION DISCLOSURES:**
6        **This Agreement contains a predispute arbitration
    clause.  By signing an arbitration agreement, the
    parties agree as follows:**
7

8        •  **All of the parties to this Agreement are giving up the
      right to sue each other in court, including the right to
9          a trial by jury, except as provided by the rules of the
      arbitration forum in which the claim is filed.**

10       •  **Arbitration awards are generally final and binding; a
      party's ability to reverse or modify an arbitration
11         award is very limited.**

12       •  **The ability of the parties to obtain documents, witness
      statements and other discovery is generally more
13         limited in arbitration than in court proceedings.**

14       •  **The arbitrators do not have to explain the reason(s)
      for their award.**
15

16       •  **The panel of arbitrators will typically include a
      minority of arbitrators who were or are affiliated with
      the securities industry.**
17

18       •  **The rules of some arbitration forums may impose time
      limits for brining a claim in arbitration.  In some
19         cases, a claim that is ineligible for arbitration may be
      brought in court.**

20       •  **The rules of the arbitration forum in which the claim
      is filed, and any amendments thereto, shall be incor-
21         porated into this Agreement.**

22       **No person shall bring a putative or certified class
    action to arbitration, nor seek to enforce any pre-
23       dispute arbitration agreement against any person who
    has initiated in court a putative class action; or who is a
24       member of a putative class who has not opted out of the
    class with respect to any claims encompassed by the
25       putative class action until:**

26       **(i)     the class certification is denied; or**

27       **(ii)    the class is decertified; or**

28       **(iii)   the client is excluded from the class by the court.**

                        KYL_LB1109818

1    **Such forbearance to enforce an agreement to arbitrate
     shall not constitute a waiver of any rights under this**
2    **Agreement except to the extent stated herein.**

3    **Arbitration Provision:**

4    **It is agreed that all controversies or disputes which
     may arise between you and WSLLC[,] including contro-**
5    **versies or disputes with WSLLC's clearing agent
     (collectively, "us") concerning any transaction or the**
6    **construction, performance or breach of this Agreement
     or any other agreement between us, whether entered**
7    **into prior to, on, or subsequent to the date of this
     Agreement, including any controversy concerning**
8    **whether an issue is arbitrable, shall be determined by
     arbitration conducted before, and only before, an arbi-**
9    **tration panel set up by either the National Association
     of Securities Dealers, Inc. ("NASD") or the New York**
10   **Stock Exchange, Inc. ("NYSE"), in accordance with
     their respective arbitration procedures.  Any of us may**
11   **initiate arbitration by filing a written claim with the
     NASD or the NYSE.  Any arbitration under this**
12   **Agreement will be conducted pursuant to the Federal
     Arbitration Act and the Laws of the Commonwealth of**
13   **Virginia.**

14   (Emphasis in original.)  Hartnett Decl., ¶ 6, Exhibit "D"; Wieland Decl., Exhibit "A."

15        As illustrated above, Dr. Ettare signed *multiple* account agreements, each

16   of which contained an agreement to arbitrate any and all claims against Defendants.

17   Plaintiff's claims therefore must be compelled to arbitration before FINRA.  See

18   Hartnett Decl., ¶¶ 5–6, Exhibits "A"–"D," copies of the new account documents and client

19   agreements signed by Dr. Ettare; Wieland Decl., Exhibit "A."

20   C.    **PLAINTIFF REFUSES TO VOLUNTARILY SUBMIT HER CLAIMS**

21        **TO ARBITRATION.**

22        Despite many requests by Defendants to do so, Dr. Ettare has refused to

23   voluntarily submit her claims to arbitration.  On August 24, 2007, Terry Ross, a member

24   of Keesal, Young & Logan and lead counsel for Defendants Wachovia and Mr. Wieland,

25   spoke with counsel for Dr. Ettare, Christopher Cooke of Cooke Kobrick & Wu LLP, and

26   requested that Dr. Ettare stipulate to proceeding with this matter in arbitration.

27   Declaration of Terry Ross ("Ross Decl."), ¶ 2.  Mr. Cooke indicated he would consider

28   Mr. Ross' proposal.  Id.  On August 28, 2007, Mr. Ross provided Mr. Cooke with

1  Dr. Ettare's signed client agreements containing an arbitration clause and further sug-

2  gested the parties proceed with this matter in arbitration.  Ross Decl., ¶ 3; Declaration of

3  Audette Paul Morales ("Morales Decl."), ¶ 2.  Also on August 28, 2007, Mr. Cooke

4  responded to Mr. Ross' email correspondence and stated that he would confer with

5  Dr. Ettare regarding stipulating to arbitration.  Ross Decl., ¶ 4; Morales Decl., ¶ 3.

6         On August 29, 2007, Mr. Ross sent a further email to Mr. Cooke presenting

7  the benefits of proceeding with all parties in a single forum.  Ross Decl., ¶ 5.  Thereafter,

8  counsel for Defendants Mr. Baratta and TBIG, Gilbert R. Serota, sent Mr. Cooke an

9  email requesting Dr. Ettare stipulate to a joint arbitration and stating Mr. Baratta and

10  TBIG's intention to join in any motion to compel filed by Wachovia and Mr. Wieland.

11  Morales Decl., ¶ 4.

12         On August 30, 2007, counsel for all parties engaged in an email exchange

13  wherein Mr. Ross and Mr. Serota provided Mr. Cooke with information regarding the

14  arbitration agreements signed by Dr. Ettare and again requested she stipulate to bind-

15  ing arbitration.  Ross Decl., ¶ 6; Morales Decl., ¶ 5.  Mr. Cooke promptly responded that

16  he would consider the information, but he ultimately did not agree to stipulate to

17  arbitration.  Id.

18         On September 6, 2007, counsel for all parties again engaged in multiple

19  email exchanges wherein defense counsel reiterated their request that Dr. Ettare

20  stipulate to binding arbitration.  Ross Decl., ¶ 7; Morales Decl., ¶ 6.  On September 17,

21  2007, Mr. Cooke informed counsel for all Defendants via email that he was inclined to

22  recommend Dr. Ettare stipulate to arbitration with Defendants Wachovia and

23  Mr. Wieland, but that Dr. Ettare would make no final decisions regarding arbitration

24  until after this Court ruled on Plaintiff's Motion to Remand the case to Superior Court.

25  Ross Decl., ¶ 8; Morales Decl., ¶ 7.

26         On November 8, 2007, Audette Paul Morales, an associate of Keesal, Young

27  & Logan and counsel for Defendants Wachovia and Mr. Wieland, called Mr. Cooke and

28  again suggested that the parties stipulate to binding arbitration before FINRA.  Morales

- 11 -

1   Decl., ¶ 8; see also Ross Decl., ¶ 9.  Pursuant to Mr. Cooke's request, Ms. Morales pro-

2   vided him with additional copies of Dr. Ettare's signed new account documentation,

3   which contains an arbitration clause.  Morales Decl., ¶ 8.

4           On February 14, 2008, Ms. Morales contacted Mr. Cooke via email and

5   again requested that Dr. Ettare stipulate to binding arbitration.  Morales Decl., ¶ 9.

6   Ms. Morales followed her email with a voice message to Mr. Cooke requesting that

7   Dr. Ettare stipulate to arbitration.  Id.

8           On February 21, 2008, Mr. Cooke responded to Ms. Morales' February 14,

9   2008 email correspondence requesting arbitration.  Morales Decl., ¶ 10.  In his email,

10  Mr. Cooke requested additional copies of Dr. Ettare's signed account agreements con-

11  taining arbitration clauses and agreements.  Id.  Ms. Morales provided the same to

12  Mr. Cooke via email on February 22, 2008 and requested a telephone conference to dis-

13  cuss stipulating to arbitration.  Id.  Later that day, Mr. Cooke advised he would speak to

14  Plaintiff regarding stipulating to arbitration.  Id.

15          On February 27, 2008, Ms. Morales sent Mr. Cooke a follow up email again

16  requesting Plaintiff's position on stipulating to binding arbitration.  Morales Decl., ¶ 11.

17  Mr. Cooke responded to Ms. Morales the same day indicating Plaintiff would not stipu-

18  late to arbitration and stating he may have questions or concerns regarding the

19  authenticity of Dr. Ettare's signature on the Wachovia account documentation.  Id.

20          In the days following Ms. Morales' February 27, 2008 email exchange with

21  Mr. Cooke, counsel for all parties had further detailed discussions regarding whether

22  Plaintiff would stipulate to arbitration.  Morales Dec., ¶ 12.  However, as of the date of

23  this Motion to Compel, Dr. Ettare has not voluntarily agreed to proceed with this matter

24  in binding arbitration before FINRA.  Morales Dec., ¶ 12; Ross Decl., ¶ 10.

25      **D.    ALL OF PLAINTIFF'S CLAIMS AGAINST DEFENDANTS**

26          **CONCERN OR ARISE FROM HER WACHOVIA ACCOUNT.**

27          The account documentation and client agreements signed by Dr. Ettare

28  contain unambiguous language in bold-face type stating that *all* claims against

- 12 -

KYL_LB1109818

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS – Case No.: C-07-4429-JW (PVT)

1  Defendants *must* be brought in arbitration.  See Hartnett Decl., at ¶ 6, Exhibits "A"–"D";

2  Wieland Decl., Exhibit "A."  Here, Dr. Ettare's claims against Defendants as pled in the

3  Complaint all arise out of her trading account at First Union/Wachovia.  Specifically,

4  Dr. Ettare asserts causes of action for fraud, breach of fiduciary duty, breach of oral con-

5  tract, negligence, securities fraud and unfair business practices, against all Defendants

6  in this case and alleges that Mr. Baratta and TBIG invested her account in speculative

7  and unsuitable trades and utilized risky strategies in her account.  See Complaint.

8  Clearly these claims allegedly concern or arise out of the account Dr. Ettare maintained

9  with Defendants, and/or concern or arise out of transactions with Defendants.  The

10  broad and plain language of the arbitration agreements clearly requires that *all* of

11  Dr. Ettare's claims against Defendants be resolved through binding arbitration.

12

13  ### III.

14  ### MOTION TO COMPEL ARBITRATION

15  A.    **PLAINTIFF'S CLAIMS MUST BE COMPELLED TO ARBITRATION**

16       **PURSUANT TO FEDERAL LAW AND THE FEDERAL**

17       **ARBITRATION ACT.**

18       All of Dr. Ettare's claims against Defendants are subject to arbitration

19  pursuant to the contracts entered into between the parties.  Federal law strongly

20  supports arbitration of securities claims where the parties have contractually agreed to

21  arbitrate their claims.  Dean Witter Reynolds, Inc. v Byrd, 470 U.S. 213, 219 (1985) (The

22  primary congressional purpose of the Federal Arbitration Act ("FAA") is "to ensure

23  judicial enforcement of privately made agreements to arbitrate."); Fisher v. A.G. Becker

24  Paribas Inc., 791 F.2d 691, 694 (9th Cir. 1986) [quoting Byrd].  Indeed, the FAA *requires*

25  enforcement of arbitration agreements pursuant to the terms of those agreements.  See,

26  9 U.S.C. §§ 1-16.  Plaintiff agreed to submit "any" claims against Defendants to binding

27  arbitration and now must be compelled to conform to that agreement.

28  ///

- 13 -

KYL_LB1109818

1    Federal law governs the validity of arbitration agreements.[4] Hall v.

2  Prudential-Bache Sec. Inc., 662 F. Supp. 468, 470 (C.D. Cal. 1987); see also

3  Shearson/Am. Express Inc. v. McMahon, 482 U.S. 220 (1987); Gilmer v.

4  Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991); Letizia v. Prudential-Bache Sec.

5  Inc., 802 F.2d 1185, 1187 (9th Cir. 1986); Bayma v. Smith Barney, Harris Upham & Co.,

6  784 F.2d 1023, 1025 (9th Cir. 1986). Specifically, section 2 of the Federal Arbitration Act

7  ("FAA") provides:

8  >   A written provision in any . . . contract evidencing a transac-
9  >   tion involving commerce to settle by arbitration a controversy
>   thereafter arising out of such contract . . . *shall be valid,*
10  >   *irrevocable and enforceable,* save upon such grounds as exist at
>   law or in equity for the revocation of any contract.

11  9 U.S.C. § 2 (1982) (emphasis added).

12    The Supreme Court has long supported the diligent enforcement of

13  securities arbitration contracts. In Moses H. Cone Hospital v. Mercury Construction

14  Corp., the Court interpreted the FAA to uphold arbitration agreements, stating:

15  >   Section 2 [of the FAA] is a congressional declaration of a lib-
>   eral federal policy favoring arbitration agreements, notwith-
16  >   standing any state substantive or procedural policies to the
>   contrary. *The effect of the section is to create a body of federal*
17  >   *substantive law of arbitrability, applicable to any arbitration*
>   *agreement with the coverage of the Act,* . . . The Arbitration
18  >   Act establishes that, as a matter of federal law, *any doubts*
>   *concerning the scope of arbitrable issues should be resolved in*
19  >   *favor of arbitration,* whether the problem at hand is the con-
>   struction of the contract language itself or an allegation of
20  >   waiver, delay or like defense to arbitrability.

21  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. at 24–25 (emphasis

22  added); see also Hall, 662 F. Supp. at 470. The Court affirmed its support for arbitration

23  ─────────────────────

24  [4] To the extent Plaintiff may contend that California state law controls here, that argu-
ment is unavailing. Federal law clearly preempts state law on issues of arbitrability.
25  Hall v. Prudential-Bache Sec. Inc., 662 F. Supp. at 470, citing Moses H. Cone Mem'l
Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983); Bayma v. Smith Barney,
26  Harris, Upham & Co., Inc., 784 F.2d 1023, 1025 (9th Cir. 1986); Webb v. R. Rowland &
Co., Inc., 800 F.2d 803 (8th Cir. 1986); Tonetti v. Shirley, 173 Cal. App. 3d 1144, 1148–
27  50 (1985). Even if California law applied, arbitration nevertheless would be required
under California Code of Civil Procedure section 1281.2.
28

1    in a case which, like the instant case, involved a dispute between an investor and a

2    broker. <u>McMahon</u>, 482 U.S. 220. In that case, the investor sought to avoid arbitration

3    despite having signed a customer agreement with an arbitration clause. After reviewing

4    the pertinent sections of the FAA, the United States Supreme Court stated that "[t]he

5    Arbitration Act thus establishes a federal policy favoring arbitration, requiring that we

6    rigorously enforce agreements to arbitrate." <u>Id.</u> at 226 (citations omitted).

7         Further, the Supreme Court recognized that the Federal Arbitration Act

8    *requires* a district court to compel arbitration of all issues encompassed by the arbitra-

9    tion clause, despite that arbitration of some issues may result in piecemeal proceedings

10   in different forums. <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 217 (1985). A

11   unanimous Supreme Court in <u>Dean Witter Reynolds</u> ruled emphatically that there was

12   *no room for discretion* in compelling arbitration of arbitrable issues, even where both

13   arbitrable and non-arbitrable claims are present. <u>Id.</u> at 217. In this case, all of

14   Plaintiff's claims against Defendants fall within the scope of the arbitration agreements,

15   and as a result, all of Plaintiff's claims *must* be compelled to binding arbitration.

16        Similarly, in the case of <u>Simula, Inc. v. Autolive, Inc.</u>, the court stated:

> The standard for demonstrating arbitrability is not high. The
> Supreme Court has held that the FAA leaves no place for the
> exercise of discretion by a district court, but instead mandates
> that district courts direct the parties to proceed to arbitration
> on issues as to which an arbitration agreement has been
> signed. Such agreements are to be rigorously enforced . . . the
> district court can determine only whether an arbitration
> agreement exists, and if it does, enforce it in accordance with
> its terms.

22   <u>Simula, Inc. v. Autolive, Inc.</u>, 175 F.3d 716, 719–720 (9th Cir. 1999) (internal citations

23   omitted).

24        Pursuant to the Federal Arbitration Act and the controlling federal authori-

25   ties, Dr. Ettare's claims, and all of them, must be compelled to arbitration. Defendants

26   have not waived their right to compel arbitration, and no grounds exist for the revoca-

27   tion of the arbitration agreements controlling this relationship. Therefore, Dr. Ettare's

28   claims against Defendants should be compelled to binding arbitration before FINRA.

- 15 -

KYL_LB1109818

B.    **PLAINTIFF'S CLAIMS AGAINST *ALL* DEFENDANTS MUST BE COMPELLED TO ARBITRATION.**

     The new account documents and client agreements governing Dr. Ettare's Wachovia account specifically require *all* claims or controversies arising out of Dr. Ettare's business with Wachovia or her client agreements be resolved by binding arbitration. Hartnett Decl., ¶¶ 5–6, Exhibits "A"–"D"; Wieland Decl., Exhibit "A." The fact that Defendants Mr. Baratta and TBIG are not signatories to the client agreements does not obviate the requirement that Dr. Ettare arbitrate her claims relating to her Wachovia account.

1.    **Non-Signatories Can Be Bound By the Terms of an Arbitration Agreement.**

     The law is well-settled under the FAA that a non-signatory to an arbitration agreement may nonetheless be bound by its terms. <u>A/S Custodia v. Lessin International, Inc.</u>, 503 F.2d 318, 320 (2d Cir. 1974); <u>Fisser v. International Bank</u>, 282 F.2d 231, 233 (2d Cir. 1960). In <u>A/S Custodia</u>, the Second Circuit quoted from <u>Fisser</u> as follows:

> It does not follow . . . that under the [Federal Arbitration] Act an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision. For the Act contains no built-in Statute of Frauds provision but merely requires that the arbitration provision itself be in writing. Ordinary contract principles determine who is bound by such written provisions and of course parties can become contractually bound absent their signatures. . . .

     In <u>Berman v. Dean Witter & Co. Inc.</u>, 44 Cal. App. 3d 999 (1975), the appellate court directed the trial court to compel arbitration of non-signatories' claims pursuant to a broad arbitration clause. In <u>Berman</u>, a married couple sued a brokerage firm for negligence and breach of fiduciary duty arising out of a purchase of securities in the wife's account. <u>Id.</u> at 1001. Only the wife was a party to the agreement containing the arbitration clause. <u>Id.</u> Similar to the arbitration provision in the agreement signed

KYL_LB1109818

1 | by Dr. Ettare, the arbitration clause in the <u>Berman</u> agreement stated that "[a]ny
2 | controversy between [the brokerage firm and the wife] arising out of or relating to this
3 | contract or the breach thereof, shall be settled by arbitration." <u>Id.</u> at 1002.

4 | The court reasoned that the purchase of securities arose out of and was
5 | related to the customer agreement and, therefore, any dispute concerning that purchase
6 | arose out of and was related to the agreement. <u>Id.</u> The court held that the husband,
7 | who ordered the purchase, was the wife's agent and that he was "not entitled to any
8 | greater right than his principal [wife]." <u>Id.</u> Therefore, the appellate court directed the
9 | trial court to issue an order compelling arbitration of all claims and staying all further
10 | proceedings. <u>Id.</u> at 1006.

11 | In <u>Barrowclough v. Kidder, Peabody & Co., Inc.</u>, 752 F.2d 923, 938–39 (3d
12 | Cir. 1985) (reversed on other grounds), the court concluded that the arbitration agree-
13 | ment was valid and binding on non-signatories because the non-signatories joined in the
14 | signatory's claims and did not present any separate claims. The court held that their
15 | claims were derivative and did not entitle them to maintain separate litigation in
16 | another forum.

17 | In <u>Contra Costa v. Kaiser Foundation Health Plan Inc.</u>, 47 Cal. App. 4th
18 | 237, 242 (1996) the Court stated that:

19 | Appellate courts have stated that arbitration agreements are
20 | enforced with regularity against non-signatories. [citation omitted]. However, a pre-existing relationship between the non-signatory and one of the parties to the arbitration
21 | agreement is the common factor in these cases.

22 | It is clear that Dr. Ettare is contractually bound to arbitrate all of her
23 | claims against Defendants. The arbitration agreements signed by Dr. Ettare all state in
24 | similar terms that any and all controversies that arise between her and Defendants
25 | must be arbitrated. The fact that Defendants Mr. Baratta and TBIG were not signa-
26 | tories to the new account documents and client agreement is of no consequence. A pre-
27 | existing relationship clearly exists between Dr. Ettare and Defendants Mr. Baratta and
28 | TBIG. Mr. Baratta was acting as Dr. Ettare's agent in placing trades for her with

1    Defendants. Additionally, the allegations Dr. Ettare asserts in her Complaint relate to

2    *all* Defendants. Therefore, this Court should issue an order compelling *all* of

3    Dr. Ettare's claims against *all* Defendants to arbitration.

4    2.    **Agency and Equitable Estoppel Theories Bind All of the**

5    **Parties to Arbitration.**

6    Agency and equitable estoppel theories support binding *all* parties to the

7    new account documents and client agreements even if certain parties, who have indi-

8    cated their intent and desire to arbitrate this case on numerous occasions, are not

9    directly subject to the terms of those documents and agreements. Both federal and

10   California law holds that the basic tenets of contract and agency law can bind a non-

11   signatory to an arbitration agreement. Letizia v. Prudential-Bache Sec., Inc., 802 F.2d

12   1185, 1187 (9th Cir. 1986); Metalclad Corp. v. Ventana Environmental Org. P'ship, 109

13   Cal. App. 4th 1705 (2003) ("In the arbitration context, one who has not signed a contract

14   containing an arbitration clause may nonetheless be compelled to arbitration when he

15   seeks enforcement of other provisions of the same contract that benefit him"); see also

16   Mormile v. Sinclair, 21 Cal. App. 4th 1008, 1511 (1994) (noting that arbitration agree-

17   ments are regularly enforced against non-signatory parties [citations omitted]). Other

18   Circuits have gone further, defining six categories of non-signatories who may be bound

19   to an arbitration agreement. See, e.g., Bridas S.A.P.I.C. v. Gov't of Turkmenistan,

20   345 F.3d 347, 356 (5th Cir. 2003). These theories include: (1) incorporation by refer-

21   ence; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third-party

22   beneficiary. Bridas, 345 F.3d at 356; see also Comer v. Micor, Inc., 436 F.3d 1098 (9th

23   Cir. 2006) (citations omitted) (courts recognize that non-signatories may enforce, or be

24   bound by arbitration clauses under theories of agency, estoppel, incorporation by refer-

25   ence, assumption, veil-piercing/alter ego, and third-party beneficiaries). The parties

26   here may be subject to several of these categories, but agency and equitable estoppel are

27   most relevant. Although touched upon above, these theories are set forth in further

28   detail in Joseph E. Baratta and TBIG Financial Services, Inc.'s Memorandum of Points

- 18 -

1 and Authorities in Support of Joinder in Defendants' Motion to Compel Arbitration and

2 are not reiterated herein.

3     **C.**    **THE EXISTENCE OF PARTIES OR CLAIMS NOT SUBJECT TO AN**

4          **ARBITRATION AGREEMENT DOES NOT DESTROY OTHER**

5          **PARTIES' RIGHT TO ARBITRATE.**

6       The United States Supreme Court has recognized that the FAA *requires* a

7 district court to compel arbitration of all issues encompassed by an arbitration clause,

8 despite that arbitration of some issues may result in piecemeal proceedings in different

9 forums. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217 (1985). A unanimous

10 Supreme Court in Dean Witter Reynolds ruled emphatically that there was *no room for*

11 *discretion* in compelling arbitration of arbitrable issues, even where both arbitrable and

12 non-arbitrable claims are present. Id. At 217. In this case, Dr. Ettare's claims against

13 *all* Defendants fall within the scope of the arbitration agreements, and as a result, all of

14 her claims *must* be compelled to binding arbitration. However, even if this Court were to

15 determine that Dr. Ettare's claims against certain Defendants are not arbitrable, which

16 they are, her claims against Defendants Wachovia and Mr. Wieland are subject to

17 arbitration and those matters *must* be compelled to binding arbitration.

18

19                           **IV.**

20           **MOTION FOR ORDER STAYING PROCEEDINGS**

21       Defendants also move this Court for an order staying the entire action

22 pending arbitration pursuant to Section 3 of the Federal Arbitration Act, the effect of

23 which is to stay the Court proceeding pending outcome of the arbitration. Section 3 of

24 the Federal Arbitration Act specifically states:

25         If any suit or proceeding be brought in any of the courts of the
        United States upon any issue referable to arbitration under an
26         agreement in writing for such arbitration, the court in which
        such suit is pending, upon being satisfied that the issue
27         involved in such suit or proceeding is referable to arbitration
        under such an agreement, ***shall on application of one of***

28

1            ***the parties stay the trial of the action until such arbitra-***
2            ***tion has been had*** in accordance with the terms of the agree-
3            ment, providing the applicant for the stay is not in default in proceeding with such arbitration.

4 (Emphasis added.)

5       Where, as here, there is a dispute involving multiple parties, but only some

6 of the parties have executed or are bound by arbitration agreements and other parties

7 are not bound by such agreements, under the FAA, the court has the authority to stay

8 all litigation and require the parties to the agreement to arbitrate their disputes.

9 9 U.S.C. § 3; <u>Wagner v. Stratton Oakmont, Inc.</u>, 83 F.3d 1046, 1048 (9th Cir. 1996);

10 <u>Subway Equip. Leasing Corp. v. Forte</u>, 169 F.3d 324, 329 (5th Cir. 1999).

11       As such, Defendants request that this Court compel Plaintiff to pursue her

12 claims against Defendants, if at all, in arbitration and that the instant court action be

13 stayed pending the outcome of the litigation.

14

15                                 **V.**

16                         **<u>CONCLUSION</u>**

17       Based on the foregoing, Defendants respectfully request that this Court

18 issue an order compelling the entire matter, as to all Defendants, to binding arbitration

19 before FINRA and that all further Court proceedings in this action be stayed pending

20 the outcome of that litigation.

21

22 DATED: March 6 , 2008

23                          _____
                                TERRY ROSS

24                                 AUDETTE PAUL MORALES
                                KEESAL, YOUNG & LOGAN

25                                 Attorneys for Defendants
                                WACHOVIA SECURITIES, LLC and

26                                 MARK WIELAND

27

28

          KYL_LB1109818

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS – Case No.: C-07-4429-JW (PVT)