GILBERT R. SEROTA (No. 75305)
Email: gserota@howardrice.com
DIANA C. CAMPBELL MILLER (No. 252055)
Email: dcampbell@howardrice.com
HOWARD RICE NEMEROVSKI CANADY
   FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4024
Telephone: 415/434-1600
Facsimile: 415/217-5910

Attorneys for Defendants
JOSEPH E. BARATTA AND TBIG FINANCIAL
SERVICES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VIOLETTA ETTARE,<br><br>    Plaintiff,<br><br>v.<br><br>JOSEPH E. BARATTA, an individual, TBIG FINANCIAL SERVICES, INC., form of business unknown, WACHOVIA SECURITIES, LLC, a Delaware Limited Liability Company, MARK WIELAND, and individual, and DOES 1-25,<br><br>    Defendants. | Case No. C-07-04429-JW<br><br>JOSEPH E. BARATTA AND TBIG FINANCIAL SERVICES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION<br><br>Date:   May 5, 2008<br>Time:   9:00 A.M.<br>Judge:  Hon. James Ware<br><br>Trial Date:   TBD |

# TABLE OF CONTENTS

| | Page(s) |
|---|---|
| INTRODUCTION AND SUMMARY OF ARGUMENT | 1 |
| STATEMENT OF FACTS | 1 |
|    A. Dr. Ettare Opens A Brokerage Account And Names Joseph Baratta And TBIG As Her Agents For Purposes Of Managing That Account. | 1 |
|    B. Plaintiff's Claims Against The TBIG Defendants Arise Out Of The Handling Of Her Account At First Union/Wachovia. | 3 |
|    C. Plaintiff Refuses To Arbitrate. | 3 |
| ARGUMENT | 4 |
|    I. THE TERMS OF THE ACCOUNT AGREEMENTS AND FEDERAL LAW ENTITLE TBIG AND MR. BARATTA TO AN ORDER COMPELLING ARBITRATION OF DR. ETTARE'S CLAIMS. | 4 |
|       A. Plaintiff's Claims Against TBIG And Baratta Should Be Compelled To Arbitration Under Basic Principles Of Agency Law. | 5 |
|          1. Plaintiff Alleges In The Complaint That All Defendants Acted As Agents Of Each Other. | 5 |
|          2. TBIG And Mr. Baratta Can Enforce The Arbitration Agreement Because They Were Acting As Plaintiff's Agents In Managing The Account At Issue. | 6 |
|       B. Equitable Estoppel Compels Dr. Ettare To Arbitrate Claims Against TBIG And Mr. Baratta. | 6 |
|       C. TBIG And Mr. Baratta Are Entitled To Arbitration Of The Claims Against Them Under The Doctrine Of Incorporation By Reference. | 8 |
|    II. ANY CLAIMS FOUND NOT SUBJECT TO ARBITRATION SHOULD BE STAYED PENDING RESOLUTION OF THE ARBITRATION. | 9 |
| CONCLUSION | 11 |

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097 (C.D. Cal. 2002) ............... 9, 10

*Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223 (9th Cir. 2000) ............... 5

*Comer v. Micor, Inc.* 436 F.3d 1098 (9th Cir. 2006) ............... 4, 6, 8

*Creative Telecomms., Inc. v. Breeden*, 120 F. Supp. 2d 1225 (1999) ............... 9

*Gray v. Conseco, Inc.*, No. SA-CV-00322-DOC (EEX), 2000 WL 1480273, (C.D. Cal. Sept. 29, 2000) ............... 9

*Lake Commc'ns, Inc. v. ICC Corp.*, 738 F.2d 1473 (9th Cir. 1984) ............... 9

*Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185 (9th Cir. 1986) ............... 5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ............... 9

*MS Dealer Service Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999) ............... 7, 8

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, 7 F.3d 1110 (3d Cir. 1993) ............... 5, 6

*Roe v. Gray*, 165 F. Supp. 2d 1164 (D. Colo. 2001) ............... 5, 6

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88 (2d Cir. 1999) ............... 5, 6

*Thomson-CFS, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773 (2d Cir. 1995) ............... 8

*Turtle Ridge Media Group, Inc. v. Pac. Bell Directory*, 140 Cal. App. 4th 828 (2006) ............... 7

*United States v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422 (9th Cir. 1985) ............... 9

**Statutes**

Federal Arbitration Act, 9 U.S.C.
  §1, *et seq.* ............... 1
  §3 ............... 1, 8
  §4 ............... 1

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants Joseph E. Baratta (Mr. Baratta) and TBIG Financial Services, Inc., ("TBIG") (collectively, the "TBIG Defendants") join Wachovia Securities, LLC, ("Wachovia") and Mark Wieland's ("Mr. Wieland") (collectively, the "Wachovia Defendants") Motion to Compel Arbitration of all claims brought by Plaintiff Violetta Ettare ("Plaintiff" or "Dr. Ettare"), and for a stay of the proceedings herein pending the conclusion of arbitration. As discussed in the Wachovia Defendants' Memorandum Of Points And Authorities In support Of The Motion To Compel Arbitration, which is hereby incorporated by reference, Plaintiff agreed to mandatory arbitration of claims arising from her brokerage account at Wachovia Securities. The TBIG Defendants also are entitled to arbitration of Plaintiff's claims against them under the doctrines of agency, estoppel, incorporation by reference, and because the claims against them are substantially intertwined with the claims against the Wachovia Defendants.

The Federal Arbitration Act ("FAA" or "Act"), 9 U.S.C. §1, *et seq.*—and dispositive rulings by the United States Supreme Court establish a strong federal policy favoring arbitration. This authority must be applied here to compel Plaintiff to arbitrate all claims arising from her Wachovia Account, including claims raised against the TBIG Defendants. The TBIG Defendants file this Motion in lieu of filing an answer to Plaintiff's Complaint (the "Complaint") pursuant to Section 4 of the Federal Arbitration Act. 9 U.S.C. §4. The claims and issues presented in Plaintiff's Complaint must be arbitrated pursuant to the parties' agreement and applicable law. Further, Defendants move for an order staying these proceedings pursuant to section 3 of the Federal Arbitration Act, pending the outcome of the arbitration. 9 U.S.C. §3.

## STATEMENT OF FACTS

### A. Dr. Ettare Opens A Brokerage Account And Names Joseph Baratta And TBIG As Her Agents For Purposes Of Managing That Account.

Dr. Ettare has known Mr. Baratta for approximately fifteen years, and has been a close friend of his sister-in-law for approximately twenty years. Declaration Of Joseph Baratta In

1  Support Of Defendants' Motion To Compel Arbitration And Stay Proceedings ("Baratta
2  Decl.") ¶3.  In or about 2001, Dr. Ettare's husband died, leaving her a $1 million life
3  insurance policy.  Baratta Decl. ¶4.  Knowing Mr. Baratta was an investment manager, Dr.
4  Ettare asked whether he would agree to manage her money with a view towards growing it
5  in the stock market.  Baratta Decl. ¶4.  Although Mr. Baratta was not accepting new clients
6  at that point, he agreed to manage Dr. Ettare's assets in consideration of their long-standing
7  family friendship.  Baratta Decl. ¶4.

8  In order to establish an investment management relationship with Mr. Baratta, Dr.
9  Ettare opened a brokerage account at First Union Securities (the "Account"), which later
10 came to be held at Wachovia Securities, where she deposited $900,000.  Baratta Decl. ¶5.  In
11 connection with opening the Account, Dr. Ettare executed several agreements (the
12 "Agreements") that required her to arbitrate "any controversy arising out of [her] business"
13 with First Union/Wachovia "or this Agreement."  Hartnett Decl. ¶6 & Exs. A-D; Wieland
14 Decl. ¶¶4-7.  These Agreements explicitly apply to "agents" of First Union/Wachovia.
15 Hartnett Decl. Ex. A, ¶1.  The Agreements also incorporate by reference Defendant TBIG as
16 Dr. Ettare's agent.  Hartnett Decl., Exs. A & B.

17 Dr. Ettare gave Mr. Baratta and TBIG authorization to manage her Account on a
18 discretionary basis, including authorizing them to act as her agents in purchasing and selling
19 investments in her Account.  Baratta Decl. ¶6.  A November 2001 First Union Securities
20 Third-Party Trading Authorization Form ("Trading Authorization"), bearing signatures of
21 Dr. Ettare, Mr. Baratta, and a First Union Securities branch manager, states that Dr. Ettare

> authorizes TBIG Financial Services … as his/her agent and attorney ("Authorized Agent") to buy, sell, … or trade in stocks, bonds, option contracts and any other securities on margin or otherwise in accordance with [First Union's] terms and conditions for my account and risk and in my name …. In all such purchases, sales or trades you are authorized to follow the instructions of the aforesaid agent in every respect concerning my account with you; and except as herein otherwise provided, he is authorized to act for me in the same manner and with the same force and effect as I might or could do with respect to such purchases, sales or trades. (Baratta Decl. Ex. A)

27 From the time the Account was opened through March 2007, TBIG and Mr. Baratta
28 acted as Dr. Ettare's agents in connection with her Account, purchasing and selling


HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

securities in accordance with Dr. Ettare's objectives and their agreed investment strategy. Baratta Decl. ¶8.

### B. Plaintiff's Claims Against The TBIG Defendants Arise Out Of The Handling Of Her Account At First Union/Wachovia.

Each of the causes of action contained in Dr. Ettare's Complaint relies on the same set of alleged facts, which are set forth in paragraphs 8 through 28 of the Complaint. In sum, Dr. Ettare alleges that in or around November 2001, she agreed to become a client of TBIG and Baratta, and transferred $900,000 to a brokerage account that Baratta allegedly opened for her at First Union/Wachovia. She claims that TBIG and Baratta, with Wachovia and Mr. Wieland's knowledge and consent, invested her Account in unsuitable securities, engaged in excessive trading, and caused her to incur losses in the Account. She alleges that the TBIG defendants and the Wachovia defendants acted as agents of each other.

Dr. Ettare raises the following causes of action: (1) Fraud (against all Defendants); (2) Breach of Fiduciary Duties (against all Defendants); (3) Breach of Oral Contract (against TBIG and Baratta); (4) Negligence (against all Defendants); (5) Violations of California Corporations Code Section 25,400, *et seq.* (against all Defendants); and (6) Violations of California Business & Professions Code Section 17,200, *et seq.* (against all Defendants).

### C. Plaintiff Refuses To Arbitrate.

Defendants have made various requests that Dr. Ettare voluntarily agree to submit the claims raised in her Complaint to binding arbitration with all Defendants. As set forth in detail in the Wachovia Defendants' Memorandum of Point And Authorities In Support of the Motion to Compel Arbitration And Stay Proceedings, Section II-C, starting in August 2007, and throughout February 2008, counsel for all Defendants have sent numerous emails to Plaintiff's counsel requesting that Dr. Ettare stipulate to arbitration of her claims. *See also*, Declaration Of Gilbert R. Serota In Support Of Defendants' Motion To Compel Arbitration And Stay Proceedings ("Serota Decl.") ¶¶2-6. Counsel for Defendants have stated they would file a motion to compel arbitration should Plaintiff refuse to voluntarily


HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

MPA IN SUPPORT OF MOTION TO COMPEL ARBITRATION    07-04429JW
-3-

agree to arbitration.  Serota Decl. ¶¶2-6.  Unfortunately, Plaintiff has refused to do so, forcing Defendants to file this Motion.  Serota Decl. ¶¶3 & 6.

## ARGUMENT

### I.

### THE TERMS OF THE ACCOUNT AGREEMENTS AND FEDERAL LAW ENTITLE TBIG AND MR. BARATTA TO AN ORDER COMPELLING ARBITRATION OF DR. ETTARE'S CLAIMS.

Dr. Ettare agreed to mandatory arbitration of "any controversy arising out of [her] business" with First Union/Wachovia "or this Agreement." Hartnett Decl. Ex. A, ¶17.  As set forth in the Complaint, all six causes of action raised by Dr. Ettare relate to losses she allegedly suffered in her Wachovia Account, and all are premised on allegations that TBIG and Baratta, with Wachovia's and Wieland's knowledge and consent, invested her Account in unsuitable securities and engaged in excessive trading.  Because the alleged mismanagement of Dr. Ettare's Wachovia Account is the sole basis of her claim for relief and damages, all claims in her Complaint "arise out" of Dr. Ettare's business with Wachovia, and are subject to binding arbitration.

TBIG and Mr. Baratta are entitled to participate in any arbitration involving Dr. Ettare's claims concerning the Wachovia Account, regardless of the fact they were not required to sign the agreements containing arbitration clauses.  As we discuss in the subsections below, courts recognize that non-signatories may enforce, or be bound by arbitration clauses under theories of agency, estoppel, incorporation by reference, assumption, veil-piercing/alter ego, and third-party beneficiaries.  *See Comer v. Micor, Inc.* 436 F.3d 1098, 1101 (9th Cir. 2006) (citations omitted).  Several of those principles apply here.

A. **Plaintiff's Claims Against TBIG And Baratta Should Be Compelled to Arbitration Under Basic Principles Of Agency Law.**

1. **Plaintiff Alleges In The Complaint That All Defendants Acted As Agents Of Each Other.**

Dr. Ettare alleges in her complaint that "at all times herein mentioned, each Defendant was an agent, servant, franchisee, joint venturer, partner, employee, and/or co-conspirator of the other Defendants herein named . . . ." Compl. ¶7. Plaintiff is bound by the allegations in her complaint. *See Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1232 (9th Cir. 2000). Because "a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements." *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, 7 F.3d 1110, 1121 (3d Cir. 1993) (finding claims against non-signatory sister corporation were within the scope of arbitration agreement); *see also Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986) ("nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles.").

Courts have found that non-signatories can compel arbitration where plaintiff alleges that the non-signatory defendants were "agents, joint venturers, partners or representatives" of the signatory defendants. *See Roe v. Gray,* 165 F. Supp. 2d 1164, 1175 (D. Colo. 2001). Where a plaintiff treated the non-signatory and signatory defendants as an affiliated group of defendants, a non-signatory to an arbitration agreement could compel arbitration under the FAA. *See Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97-98 (2d Cir. 1999).

These principles apply to the facts in this case. In opening her account with Wachovia, Dr. Ettare entered into several agreements with First Union/Wachovia that required the parties to arbitrate "any controversy arising out of [Dr. Ettare's and First Union's] business or this Agreement." Hartnett Decl. Exs. A-D. The First Union Securities General Account Agreement and Disclosure further states, in plain terms, that it applies to "agents" of First Union/Wachovia — which is what Dr. Ettare alleges the TBIG Defendants to be. *See id.*, Ex. A, ¶1.

Dr. Ettare pleads that TBIG and Mr. Baratta were agents of Wachovia and Wieland (*See Roe,* 165 F. Supp. 2d at 1175), and she treats all Defendants as an "affiliated group." *See Smith/Enron*, 198 F.3d at 97-98. She alleges that the wrongdoings by all Defendants are intertwined, arising from the management of her Wachovia Account.

Given Dr. Ettare's theory of the case, the TBIG Defendants are agents of Wachovia and are bound by, and can enforce, the arbitration agreement entered into by the Wachovia. *See* Hartnett Decl. Ex. A, ¶1; *Pritzker*, 7 F.3d at 1121.

### 2. TBIG And Mr. Baratta Can Enforce The Arbitration Agreement Because They Were Acting As Plaintiff's Agents In Managing The Account At Issue.

Even if Dr. Ettare had not plead that each of the Defendants were agents of one another, agency principles would still hold TBIG and Mr. Baratta to the arbitration agreements because they acted as Dr. Ettare's agents in managing her Account. *See Pritzker*, 7 F.3d at 1121.

In or about November 2001, Dr. Ettare opened the First Union/Wachovia Account, and retained TBIG and Mr. Baratta to manage her assets. Compl. ¶12; Baratta Decl. ¶¶4-6. The written Trading Authorization states that Dr. Ettare is authorizing TBIG to act as her "agent and attorney . . . to buy, sell, . . . or trade in stocks, bonds, option contracts and any other securities on margin or otherwise" in her Account. Baratta Decl. Ex. A. For the next five and a half years, TBIG and Mr. Baratta managed Dr. Ettare's portfolio, acting as her agents, and making purchases and sales of securities for her Account. Baratta Decl. ¶8.

Dr. Ettare is bound by the arbitration clauses in the Account Agreements she entered into and enjoyed for several years. Her agents also are covered by those agreements. *See Pritzker*, 7 F.3d at 1121.

### B. Equitable Estoppel Compels Dr. Ettare To Arbitrate Claims Against TBIG And Mr. Baratta.

Equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Comer v. Micor*, 436 F.3d 1098, 1101 (9th Cir. 2006). In the arbitration context, it can require a signatory to an

agreement to "arbitrate claims brought by nonsignatories at the nonsignatory's insistence because of the close relationship between the entities involved." *Id.* (internal citations and quotations omitted). Those principles apply here. Dr. Ettare initiated this matter in Santa Clara Superior Court on or about July 13, 2007, ignoring the mandatory arbitration clauses in the agreements concerning her Wachovia Account. She asserts claims that Defendants have acted inappropriately in the handling her account, breached a contract with her, and breached a fiduciary duty owed to her.

Because Dr. Ettare claims damages from the handling of her Wachovia Account and because she alleges losses incurred in her Account, she cannot be allowed to sue TBIG and Mr. Baratta for those losses, while at the same time denying them the benefit to arbitrate under the Wachovia Account Agreements. *Turtle Ridge Media Group, Inc. v. Pac. Bell Directory*, 140 Cal. App. 4th 828, 835 (2006) ("[plaintiff] cannot play fast and loose with its contractual obligations by selectively enforcing" the terms of the contract).[1]

Equitable estoppel also applies where the claims against signatory and non-signatory defendants are based on the same facts and are substantially intertwined. *See MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947-948 (11th Cir. 1999). Here, Dr. Ettare's allegations against the Wachovia Defendants are based on the exact same set of facts as her allegations against the TBIG Defendants. She alleges interdependent and concerted misconduct by all Defendants. *See* Compl. ¶¶8-28. In fact, it is impossible the segregate the sets of facts and allegations in the Complaint that potentially create liability to the TBIG

---

[1] In *Turtle Ridge Media*, the California Court of Appeal, relying on the equitable estoppel theory, reversed an order denying arbitration. In that case, plaintiff Turtle Ridge subcontracted with Clientlogic, a company that had a phonebook distribution contract with Defendant SBC. Turtle Ridge later sued SBC for claims of fraud and unfair business practices, among others. SBC moved to compel arbitration based on arbitration clauses in its contract with Clientlogic, and in the subcontract between Clientlogic and Turtle Ridge. The Court held that even though Turtle Ridge was not a signatory of the contract with SBC, it was estopped from evading the arbitration clauses in the contracts, since its "claims against SBC arose from its business dealings with SBC and Clientlogic, which the contract and subcontract governed." 140 Cal. App. 4th at 833. The Court further held that "the test for applying equitable estoppel to an arbitration agreement is whether the causes of action are intertwined with the contract containing the agreement." *Id.* at 835.

MPA IN SUPPORT OF MOTION TO COMPEL ARBITRATION   07-04429JW
-7-

Defendants from those that potentially create liability to the Wachovia Defendants.

Allowing an arbitration to proceed solely between Dr. Ettare and the Wachovia Defendants, when those claims are interdependent to her claims against the TBIG Defendants, would render the arbitration process meaningless "and the federal policy in favor of arbitration effectively thwarted." See *MS Dealer*, 177 F.3d at 947.

### C. TBIG And Mr. Baratta Are Entitled To Arbitration Of The Claims Against Them Under The Doctrine Of Incorporation By Reference.

The TBIG Defendants also are entitled to arbitration of Dr. Ettare's claims under the doctrine of incorporation by reference. See *Comer*, 436 F.3d at 1101. Under this theory, "a nonsignatory may compel arbitration against a party to an arbitration agreement when that party has entered into a separate contractual relationship with the nonsignatory which incorporates the existing arbitration clause." *Thomson-CFS, S.A. v. Amer. Arbitration Ass'n*, 64 F.3d 773, 777 (2nd Cir. 1995).

Here, Dr. Ettare and the TBIG Defendants entered into an agency relationship, whereby she gave the TBIG Defendants authority to direct trading in her account. She gave them a written trading authorization, which incorporated the "terms and conditions" of the First Union/Wachovia Account Agreement:

> "The undersigned . . . authorizes TBIG Financial Services . . . as his/her agent and attorney ("Authorized Agent") to buy, sell, . . . or trade in stocks, bonds, option contracts and any other securities on margin or otherwise **in accordance with [First Union's] terms and conditions for my account** and risk and in my name . . . . In all such purchases, sales or trades you are authorized to follow the instructions of the aforesaid agent in every respect concerning my account with you; and except as herein otherwise provided, he is authorized to act for me in the same manner and with the same force and effect as I might or could do with respect to such purchases, sales or trades." Baratta Decl. Ex. A (emphasis added).

Separate from the trading authorization, the Account Agreements that Dr. Ettare entered into with First Union/Wachovia that contain the arbitration clauses, incorporate TBIG by reference. This is accomplished by naming TBIG as a party with "Additional Account Control" on the 2001 Account Application, and as a party with "Discretionary or Third-Party Authorization" on the 2001 Option Agreement. Hartnett Decl. Exs. A & B. By

MPA IN SUPPORT OF MOTION TO COMPEL ARBITRATION   07-04429JW
-8-

incorporating TBIG into the same Account Agreements that provide for arbitration of the parties' disputes, Dr. Ettare and Wachovia extended to TBIG the right to demand arbitration under the Agreement.

## II.

### ANY CLAIMS FOUND NOT SUBJECT TO ARBITRATION SHOULD BE STAYED PENDING RESOLUTION OF THE ARBITRATION.

Should the Court determine that Dr. Ettare's claims against the TBIG Defendants are not arbitrable, such claims should be stayed until the conclusion of the arbitration against the Wachovia Defendants because (1) the arbitral and non-arbitral claims are interdependent since all of Dr. Ettare's claims arise from a common nucleus of operative facts, (2) resolution of arbitral issues may influence the outcome of the non-arbitrable issues, and (3) to proceed otherwise would risk judicial inefficiency and inconsistent findings of fact and law.

When a court finds certain claims to be arbitrable under the FAA, the court must stay litigation of those claims until the arbitration has resolved. *See* 9 U.S.C. §3; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 at 22 (1983); *Gray v. Conseco, Inc.*, No. SA-CV-00322-DOC(EEX), 2000 WL 1480273, *8 (C.D. Cal. Sept. 29, 2000). Therefore, "if non-arbitrable issues depend on arbitrable issues, or if resolution of arbitrable issues would render the district court's ruling on the non-arbitrable issues unnecessary, litigation on the non-arbitrable issues should be stayed pending arbitration." *Creative Telecomms., Inc. v. Breeden*, 120 F. Supp. 2d 1225 at 1242 (1999) (quotations and citations omitted). Courts may stay claims in light of their "interdependence with claims properly referred to arbitration" (*Lake Commc'ns, Inc. v. ICC Corp.*, 738 F.2d 1473, 1477 (9th Cir. 1984) (citation omitted)), and should consider whether "a failure to stay the action may lead to inconsistent findings which will hinder the pursuit of judicial efficiency." *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1114 (C.D. Cal. 2002) (citations omitted). This principle also is true when the non-arbitrable claims are asserted against parties not bound by the arbitration provision. *Id.*; *Gray*, 2000 WL 1480273 at *8.

    In deciding whether to stay non-arbitrable claims courts look at whether both the arbitrable and non-arbitrable claims are based on common questions of fact or are otherwise interdependent, whether continuing with litigation would result in a duplication of effort or otherwise fail to conserve judicial resources, and whether simultaneously proceeding with litigation and arbitration could result in inconsistent findings. *See Bischoff,* 180 F. Supp. 2d at 1114-15; *United States v. Neumann Caribbean Int'l, Ltd.,* 750 F.2d 1422, 1426-27 (9th Cir. 1985). In *Bischoff,* the court ordered a stay of all issues in an antitrust case brought by customers against a provider of television programming pending the arbitration of one customer's claims, even though some of the parties were not signatories to the arbitration agreement; the court found that the issues of law and fact for the non-arbitrable claims were similar to those that would be considered during arbitration, and that failure to stay the non-arbitrable claims could lead to inconsistent findings, hindering the pursuit of judicial economy. *See Bischoff,* 180 F. Supp. 2d at 1114-15.

    The *Bischoff* analysis applies here, where all of Dr. Ettare's claims are based on the same set of operative facts, as set forth in paragraphs 8 through 28 of the Complaint. Each of her causes of action rely on the same allegations that TBIG and Baratta, with Wachovia's and Wieland's knowledge and consent, invested her Account in unsuitable securities, engaged in excessive trading, and caused her to incur monetary losses. Any findings of fact concerning Dr. Ettare or any defendant, would be extremely relevant to all claims against the other defendants. Therefore, even if the Court determines that the TBIG Defendants are not subject to arbitration, the claims against them will nevertheless overlap with the remaining claims before arbitration. So if the Court does not stay any non-arbitrable claims pending resolution of the arbitrable claims, it will risk a duplication of effort and inconsistent findings of fact.

    Thus, if Dr. Ettare's claims against Mr. Baratta and TBIG are considered non-arbitrable, those claims should be stayed until the conclusion of the arbitration against the Wachovia Defendants.

# CONCLUSION

Plaintiff's claims against the TBIG Defendants concern transactions in her brokerage account at First Union/Wachovia. These transactions clearly fall within the scope of the arbitration provision set forth in her Agreement to Arbitrate with the Wachovia Defendants. For the reasons set forth above, and given the strong and controlling federal policy favoring arbitration, this Court should order this entire controversy to binding arbitration. In addition, this Court must stay all further proceedings in this action pending a final arbitration ruling.

DATED: March 6, 2008.

Respectfully,

GILBERT R. SEROTA
DIANA C. CAMPBELL MILLER
HOWARD, RICE, NEMEROVSKI, CANADY,
   FALK & RABKIN
A Professional Corporation

By: /s/
_____
GILBERT R. SEROTA

Attorneys for Defendants JOSEPH E. BARATTA
AND TBIG FINANCIAL SERVICES, INC.